United States Bankruptcy Court
Southern District of Texas

**ENTERED**

June 03, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| SHANNON WIND, LLC, | Case No. 26-90124 (ARP) |
| Debtor.[1] | |

**ORDER APPROVING THE DISCLOSURE STATEMENT ON A FINAL BASIS
AND CONFIRMING THE PLAN**

(Related to Docket Nos. 128, 129, 130, 138, 140, 141, 142, 159, 182, 187, 202, 205, 204, 209)

The above-captioned debtor and debtor in possession (the "**Debtor**") having:[2]

a. commenced, on January 25, 2026 (the "**Petition Date**"), the chapter 11 case (the "**Chapter 11 Case**") by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**");

b. continued to operate its business and manage its properties during the Chapter 11 Case as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c. filed on April 10, 2026,

   i. the *Combined Disclosure Statement and Chapter 11 Plan of Reorganization* [Docket No. 128]

   ii. *Emergency Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation Procedures and Solicitation Packages, (III) Scheduling a Confirmation Hearing, (IV) Establishing Procedures for Objecting to the Plan and Final Approval of the Disclosure Statement, (V) Approving the Form, Manner, and Sufficiency of Notice of the*

---

[1] The last four digits of the Debtor's federal tax identification number are 3562. For the purpose of this chapter 11 case, the Debtor's address is 1920 McKinney Ave, Suite 950, Dallas, TX, 75201. Additional information regarding the Debtor's case can be found on the website of the Debtor's claims and noticing agent at https://www.veritaglobal.net/shannon.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Debtor's Plan, Disclosure Statement, or Conditional Approval and Procedures Order (each as defined below), as applicable. The rules of interpretation set forth in Section I.B of the Plan shall apply herein.

*Confirmation Hearing, and (VI) Granting Related Relief* [Docket No. 129] (the "**Solicitation Procedures Motion**");

n.  obtained, on April 22, 2026, the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation Procedures and Solicitation Packages, (III) Scheduling a Combined Hearing, (IV) Establishing Procedures for Objecting to the Plan, (V) Approving the Form, Manner, and Sufficiency of Notice of the Combined Hearing, and (VI) Granting Related Relief* [Docket No. 138] (the **"Conditional Approval and Procedures Order"**);

o.  filed on April 27, 2026, *Amended Combined Disclosure Statement and Chapter 11 Plan* [Docket No. 141];

p.  filed, on April 27, 2026, *Notice of Filing Amended Combined Disclosure Statement and Chapter 11 Plan* [Docket No. 142];

q.  filed, on May 6, 2026, *Affidavit of Publication of the Notice of (I) Combined Hearing on Final Approval of the Disclosure Statement and Confirmation of the Plan, (II) Deadline to Cast Votes to Accept or Reject the Plan, and (III) Notice of Objection and Opt-Out Rights in the Houston Chronicle, The New York Times, and Wichita Falls Times Record News* [Docket No. 159] (the "**Publication Affidavit**");

r.  filed on May 14, 2026, the *Certificate of Service of Scott M. Ewing, re: Solicitation Materials Served* [Docket No. 182] (the "**Solicitation Affidavit**");

s.  filed, on May 20, 2026, the *Notice of Filing of Plan Supplement* [Docket No. 187] (the "**First Plan Supplement**");

t.  filed, on June 1, 2026, the *Notice of Filing Second Plan Supplement* [Docket No. 202] (together with the First Plan Supplement, and as may be amended, amended and restated, modified, or supplemented, the "**Plan Supplement**" and which, for purposes of the Plan and the Confirmation Order, is included in the definition of "**Plan**");

u.  filed, on June 1, 2026, the *Declaration of Adam J. Gorman With Respect to the Tabulation of Votes on the Amended Combined Disclosure Statement and Chapter 11 Plan* [Docket No. 205] (the "**Voting Declaration**");

v.  filed, on June 1, 2026, the *Declaration of John Shepherd in Support of (I) Final Approval of the Disclosure Statement and (II) Confirmation of the Plan* [Docket No. 204] (the "**Shepherd Declaration**");

w.  filed on June 2, 2026, a corrected *Amended Combined Disclosure Statement and Chapter 11 Plan* [Docket No. 209] (as the same may be altered, amended, or modified from time to time, the "**Combined Disclosure Statement and Plan**")

x.  filed on June 2, 2026, a *Notice of Filing Corrected Amended Combined Disclosure Statement and Chapter 11 Plan* [Docket No. 210]; and

2

y. filed, on June 2, 2026, the *Debtor's Memorandum of Law in Support of (I) Final Approval of the Disclosure Statement, and (II) Confirmation of the Plan* (the "**Confirmation Brief**").

And the Bankruptcy Court having:

y. entered the Conditional Approval and Procedures Order on April 22, 2026;

z. set May 27, 2026, at 4:00 p.m. (prevailing Central Time), as the deadline for Holders of Claims in Classes 3, 4, 5, and 6 to accept or reject the Plan (the "**Voting Deadline**");

aa. set May 27, 2026, at 4:00 p.m. (prevailing Central Time), as the deadline to file and serve objections to the confirmation of the Plan (the "**Plan Objection Deadline**");

bb. set June 3, 2026, at 9:00 a.m. (prevailing Central Time), as the date and time for the commencement of the Confirmation Hearing;

cc. reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Voting Declaration, Solicitation Affidavit, the Shepherd Declaration, the Confirmation Brief, the Combined Hearing Notice, and all Filed pleadings, exhibits, statements, responses, and comments regarding approval of the Disclosure Statement and confirmation of the Plan, including all objections, statements, and reservations of rights filed by parties in interest on the docket in the Chapter 11 Case;

dd. held the Confirmation Hearing on June 3, 2026;

ee. considered all oral representations, live testimony, written direct testimony, exhibits, documents, filings, and other evidence presented at the Confirmation Hearing;

ff. overruled any and all objections to approval of the Disclosure Statement, the Plan, Confirmation, and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated;

gg. taken judicial notice of all papers and pleadings filed in the Chapter 11 Case, all evidence proffered or adduced in the Chapter 11 Case, and all arguments made at hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Case; and

hh. entered rulings on the record at the Confirmation Hearing.

NOW THEREFORE, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the legal and factual bases set forth in the documents filed in support of final approval of the Disclosure

Statement and confirmation of the Plan and other evidence presented at the Confirmation Hearing and the record in this Chapter 11 Case establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders:

<u>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**</u>

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A.    Findings and Conclusions.**

1.    The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.    Jurisdiction, Venue, and Core Proceeding.**

2.    This Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). This Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

**C.    Eligibility for Relief.**

3.    The Debtor was and is an entity eligible for relief under section 109 of the Bankruptcy Code.

**D.    Burden of Proof—Confirmation of the Plan**

4.      The Debtor, as proponent of the Plan, has met its burden of proving the applicable elements under sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard for confirmation of a plan. In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

**E.      Judicial Notice.**

5.      The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for purposes of confirmation of the Plan) the docket of the Chapter 11 Case maintained by the clerk of the Bankruptcy Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Case.

**F.      Notice.**

6.      As evidenced by the Solicitation Affidavit and the Voting Declaration, the Debtor provided due, adequate, and sufficient notice of the commencement of the Chapter 11 Case, the Disclosure Statement, the Plan, the Confirmation Hearing, and the opportunity to opt-out of the Third-Party Release, together with all deadlines for voting to accept or reject the Plan as well as objecting to the Disclosure Statement and the Plan, to the full creditor matrix. Further, the Combined Hearing Notice was published in the *Houston Chronicle, The New York Times* and in the *Wichita Falls Times Record News*, in compliance with Bankruptcy Rule 2002(l), as evidenced by the Publication Affidavit. Such notice was adequate and sufficient under the facts and circumstances of the Chapter 11 Case in compliance with the Bankruptcy Code, the Bankruptcy

Rules, including Bankruptcy Rules 2002 and 3017, the Bankruptcy Local Rules, and the Conditional Approval and Procedures Order. No other or further notice is or shall be required.

**G.     Disclosure Statement.**

7.     The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan, and the transactions contemplated therein. The filing of the Disclosure Statement with the clerk of the Bankruptcy Court satisfied Bankruptcy Rule 3016(b).

**H.     Ballots.**

8.     Holders of Claims and Interests in Classes 3, 4, 5, and 6 are entitled to vote to accept or reject the Plan (collectively, the "**Impaired Classes**" and "**Voting Classes**").

9.     The forms of ballots attached as **Exhibit D** and **Exhibit E** to the Conditional Approval and Procedures Order (the "**Ballots**") that the Debtor used to solicit votes to accept or reject the Plan from Holders in the Voting Classes adequately addressed the particular needs of the Chapter 11 Case and were appropriate for Holders in the Voting Classes to vote to accept or reject the Plan.

**I.     Solicitation.**

10.     As described in the Voting Declaration, the solicitation of votes on the Plan complied with the Solicitation Procedures set forth in the Conditional Approval and Procedures Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the

6

Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including the registration requirements under the Securities Act.

11.     As described in the Voting Declaration and the Solicitation Affidavit, as applicable, the Solicitation Packages, including the Plan, the Disclosure Statement, the Confirmation Hearing Notice, and the Ballots were transmitted and served, including to all Holders in the Voting Classes, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Bankruptcy Local Rules, the Conditional Approval and Procedures Order, and any applicable nonbankruptcy law. Transmission and service of the Solicitation Packages was timely, adequate, and sufficient under the facts and circumstances of the Chapter 11 Case. No further notice is required.

12.     As set forth in the Voting Declaration and the Solicitation Affidavit, the Solicitation Packages were distributed to the Holders in the Voting Classes that held a Claim as of April 24, 2026 (the "**Voting Record Date**"). The establishment and notice of the Voting Record Date were reasonable and sufficient.

13.     The period during which the Debtor solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for each Holder in a Voting Class to make an informed decision to accept or reject the Plan.

14.     Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Classes 1 (Priority Non-Tax Claims) and 2 (Other Secured Claims) (collectively, the "**Unimpaired Classes**" and "**Non-Voting Classes**") are unimpaired and conclusively presumed to have accepted the Plan.

15.     The Debtor served the Notice of Non-Voting Status and Third-Party Release Opt-Out Form contained therein on all Holders of Claims in the Non-Voting Classes. The Notice of Non-Voting Status and Third-Party Release Opt-Out Form contained therein informed recipients

7

of (i) their status as holders or potential holders of Claims in Non-Voting Classes, (ii) provided the full text of the Third-Party Release set forth in the Plan, and (iii) included a form (or instructions to access a form) by which holders could elect to opt-out of the Third-Party Release.

16. The solicitation-related notices adequately summarized the material terms of the Plan, including classification and treatment of claims and the Third-Party Release. Further, because the opt-out form was included in both the Ballots and the solicitation-related notices, every known stakeholder, including Holders in Non-Voting Classes, was provided with the means by which to opt-out of the Third-Party Release.

**J.     Voting.**

17. As evidenced by the Voting Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Disclosure Statement, and any applicable non-bankruptcy law. Class 3 (Prepetition Secured Obligations Claims) and Class 4 (General Unsecured Claims) voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code. Based on the foregoing, and as evidenced by the Voting Declaration, at least one impaired Class of Claims (not including acceptance by any insiders of the Debtor) has voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

**K.     Plan Supplement.**

18. On May 20, 2026 and June 1, 2026, the Debtor filed the Plan Supplement with the Bankruptcy Court. The Plan Supplement (including as it may be subsequently modified, supplemented, or otherwise amended pursuant to its terms), complies with the Bankruptcy Code and the terms of the Plan, and the Debtor provided good and proper notice of the filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and

the facts and circumstances of the Chapter 11 Case. The notice parties and Holders of Claims and Interests were provided due, adequate, and sufficient notice of the Plan Supplement. No other or further notice is or will be required with respect to the Plan Supplement. The Plan Supplement consists of the following documents: (a) Schedule of Retained Causes of Action, (b) Plan Assumed Contracts List; (c) Wind Down Budget; (d) Liquidation Analysis; and (e) Liquidation Trust Agreement. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan and the Confirmation Order, the Debtor shall have the right to alter, amend, update, or modify the Plan Supplement through the Effective Date.

**L.     Plan Modifications.**

19.     Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan, including those set forth in the amended Plan, filed on April 27, 2026 [Docket No. 141], and the corrected Plan, filed on June 2, 2026 [Docket No. 209], and any additional modifications to the Plan set forth in the Confirmation Order or in any Plan filed prior to the entry of the Confirmation Order (collectively, the "**Plan Modifications**") constitute technical or clarifying changes. These Plan Modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and Solicitation Packages served pursuant to the Conditional Approval and Procedures Order, and notice of the Plan Modifications was adequate and appropriate under the facts and circumstances of the Chapter 11 Case.

20.     In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

Accordingly, the Plan, as modified, is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

**M.    Objections Overruled.**

21.     Any resolution or disposition of objections to approval of the Disclosure Statement and/or confirmation of the Plan that have not been withdrawn, waived, or settled are hereby **OVERRULED** and **DENIED** on the merits, with prejudice.

**N.    The Plan Complies with Bankruptcy Code Requirements—Section 1129(a)(1).**

22.     The Plan complies with all applicable provisions of the Bankruptcy Code, as required by Section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 thereof. Additionally, the Plan and all modifications thereto are dated and identify the entity submitting them, thereby satisfying Bankruptcy Rule 3016(a).

**(a)    Proper Classification—Sections 1122 and 1123.**

23.     The Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code. Article III of the Plan provides for the separate classification of Claims and Interests into six (6) Classes. Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests. The classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

**(b)    Specified Unimpaired Classes—Section 1123(a)(2).**

24.     The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Class 1 (Priority Non-Tax Claims) and Class 2 (Other

Secured Claims) are unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, are conclusively presumed to have accepted the Plan, and are not entitled to vote to accept or reject the Plan.

25.     Additionally, Article II of the Plan specifies that Allowed Administrative Expense Claims, Allowed Fee Claims, Allowed Priority Tax Claims, and U.S. Trustee Fees will be paid in full (unless a Holder of such Claim consents to alternative treatment) in accordance with the terms of the Plan, although the Claims are not separately classified under the Plan.

**(c)     Specified Treatment of Impaired Classes—Section 1123(a)(3).**

26.     The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes: Class 3 (Prepetition Secured Obligations Claims), Class 4 (General Unsecured Claims), Class 5 (Section 510(b) Claims), and Class 6 (Existing Equity Interests) (the "**Impaired Classes**") are impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Classes.[3]

**(d)     No Discrimination—Section 1123(a)(4).**

27.     The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtor for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

**(e)     Adequate Means for Implementation—Section 1123(a)(5).**

---

[3]     Class 5 is vacant and, pursuant to Section 6.3 of the Plan is eliminated for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class.

28.     The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The provisions in Article VIII and elsewhere in the Plan provide in detail adequate and proper means for the Plan's implementation, including regarding: (a) the Sale Transaction; (b) vesting of the Liquidation Trust Assets in the Liquidation Trust; (c) the sources of consideration for Plan distributions, including the Net Restructuring Transaction Proceeds, funding of the Wind-Down Budget, funding the Professional Fee Escrow Account; (d) the appointment of the Plan Administrator to Wind Down the Wind Down Debtor and serve as trustee of the Liquidation Trust; (e) the authorization for the Debtor, the Wind Down Debtor and/or the Plan Administrator, as applicable, to take all actions contemplated under or necessary, advisable, or appropriate to implement or effectuate the Plan; (f) the creation and governance of the Liquidation Trust; (g) the settlement and discharge of Claims and Interests as set forth in the Plan; (h) the good faith compromise and settlement of claims or controversies held by the Debtor and the Releasing Parties; (i) the preservation and vesting of certain Retained Causes of Action in the Liquidation Trust; (j) the treatment of Executory Contracts and Unexpired Leases; (k) the dissolution of the Wind Down Debtor; (l) the effectuation and implementation of documents and further transactions; (m) the cancellation of existing securities and agreements; and (n) the authorization, approval, and entry of corporate actions under the Plan.

**(f)      Non-Voting Equity Securities—Section 1123(a)(6).**

29.     The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code. The Debtor is proceeding with a Sale Transaction and, therefore, the Plan does not provide for the issuance of equity or other securities of the Debtor, including non-voting equity securities.

**(g)      Directors and Officers—Section 1123(a)(7).**

12

30.     The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. In accordance with Section 8.12 of the Plan, as of the Effective Date, the Plan Administrator shall be the sole manager of the Wind Down Debtor.  Accordingly, the Plan Administrator shall be authorized to act on behalf of the Wind Down Debtor and the Estate, provided that the Plan Administrator shall have no duties other than as expressly set forth in the Plan, the Confirmation Order, or any agreement governing the Plan Administrator's duties and responsibilities, as applicable. The identity of the Plan Administrator is disclosed in the Plan. The appointment of the Plan Administrator is consistent with the interests of creditors and with public policy.

**(h)     Debtor Is Not an Individual—Section 1123(a)(8) and 1123(c).**

31.     The Debtor is not an individual. Accordingly, the requirements of sections 1123(a)(8) and 1123(c) of the Bankruptcy Code are inapplicable.

**(i)     Impairment / Unimpairment of Classes—Section 1123(b)(1).**

32.     The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Article III of the Plan designates each Class of Claims and Interests as either impaired or unimpaired.

**(j)     Treatment of Executory Contracts and Unexpired Leases—Section 1123(b)(2).**

33.     The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code. Article XI of the Plan provides procedures for the assumption, assignment, and rejection of the Debtor's Executory Contracts and Unexpired Leases, including pursuant to the Bidding Procedures Order, Sale Order, and applicable Sale Documents.

34.     The Debtor's determinations regarding the assumption and rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtor, are necessary to the implementation of the Plan, and are in the best interests of the Debtor, its Estate, and other parties in interest in the Chapter 11 Case.

(k)     **Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).**

35.     In accordance with section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan. In addition, the compromises and settlements embodied in the Plan preserve value by enabling the Debtor to avoid extended, value-eroding litigation that could delay the Debtor's emergence from chapter 11.

36.     **Debtor Release.** The release of Claims and Causes of Action by the Debtor, as described in Section 13.2 of the Plan in accordance with section 1123(b) of the Bankruptcy Code (the "**Debtor Release**"), represents a valid exercise of the Debtor's business judgment. The Debtor Release is integral to the Plan and is fair, reasonable, and in the best interests of the Debtor, the Estate and Holders of Claims and Interests. Also, the Debtor Release is: (a) in exchange for good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the claims or Causes of Action released by the Debtor Releases; (c) in the best interests of the Debtor, the Estate, and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after reasonable investigation by the Debtor and after due notice and opportunity for a hearing; and (f) a bar to any of the Debtor, its Estate, the Wind Down Debtor, Plan Administrator, or Liquidation Trust as applicable, asserting a Claim or Cause of Action released pursuant to the Debtor Release. The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Case. Moreover, the Debtor Release is

14

appropriate in light of, among other things, the value provided by the Released Parties to the Debtor's Estate and the critical nature of the Debtor Release to the Plan.

37.    The Debtor Release appropriately offers protection to parties that participated in the Debtor's restructuring process. The Released Parties made significant concessions and/or contributions to the Chapter 11 Case. The Debtor Release for the CRO, Independent Manager, and Professional Persons retained by the Debtor, are appropriate because these parties share an identity of interest with the Debtor, supported the Debtor through the bankruptcy process, actively participated in meetings and negotiations during the Chapter 11 Case, and have provided other valuable consideration to the Debtor.  Similarly, the Prepetition Secured Parties supported the Debtor through the Chapter 11 Case by, among other things, consenting to use of cash collateral and supporting the Debtor's sale process, and otherwise made concessions to facilitate the negotiation and consummation of the transactions contemplated by the Plan.  For these reasons, the Debtor Release is reasonable, appropriate, and consistent with the provisions of the Bankruptcy Code and applicable law.

38.    **Third-Party Release.** The release of Claims and Causes of Action by the Non-Debtor Releasing Parties, as described in Section 13.3 of the Plan (the "**Third-Party Release**"), was consensually provided after due notice and an opportunity for a hearing and is an essential provision of the Plan. The Third-Party Release is a critical and integral component of the Released Parties' agreement to support the Plan. The Third-Party Release was negotiated as a result of arms' length and good faith negotiations among parties. It provides finality for the Debtor, its Estate, the Plan Administrator, and the other Released Parties regarding the parties' respective obligations under the Plan and the transactions contemplated therein. As such, the Third-Party Release appropriately offers certain protections to parties who constructively participated in the Debtor's

15

chapter 11 process by, among other things, supporting the Plan. Notice of the Third-Party Release was provided to all Holders of Claims and Interests and such notice was adequate and appropriate under the facts and circumstances of the Chapter 11 Case. The Combined Hearing Notice was sent to Holders of Claims and Interests and published in the *Houston Chronicle*, *The New York Times* and in *Wichita Falls Times Record News*, and the Ballots and solicitation-related notices, as applicable, sent to Holders of Claims and Interests unambiguously stated that the Plan contains the Third-Party Release and that each such Holder of Claims or Interests may elect not to grant such Third-Party Release. The Debtor received at least three opt-out elections, all of whom shall be recognized as not granting the Third-Party Releases. The release provisions of the Plan were conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, the Notice of Non-Voting Status and Third-Party Release Opt-Out Form, and the solicitation-related notices. The Third-Party Release provides appropriate and specific disclosure with respect to the Claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure or notice is necessary.

39.     The Third-Party Release is: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Actions released by the Third-Party Release; (e) in the best interests of the Debtor and its Estate; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; (h) a bar to any of the Releasing Parties' asserting any Claim or Cause of Action released pursuant to the Third-Party Release; (i) specific in language and scope; (j) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code. Therefore, the

Third-Party Release is reasonable, appropriate, and consistent with the provisions of the Bankruptcy Code and applicable law.

40. **Exculpation.** The exculpation provision described in 13.4 of the Plan (the "**Exculpation**") is necessary and appropriate to the Plan. The Exculpation is narrowly tailored to protect the Debtor (as the Exculpated Party) from inappropriate litigation and to exclude actions found to have constituted bad faith, fraud, willful misconduct, or gross negligence. The Debtor participated in good faith and in compliance with all applicable laws with regard to the administration of the Chapter 11 Case, commencement of the Chapter 11 Case, pursuit of confirmation and consummation of the Plan, making distributions under the Plan, the Disclosure Statement, the Sale Transaction, the Sale Process, the Sale Order, or the solicitation of votes for, or confirmation of, the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtor; or the transactions or documentation in furtherance of any of the foregoing; or any other postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor, the approval of the Disclosure Statement or confirmation or consummation of the Plan.

41. The Exculpation provision does not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party; and/or (ii) the rights of any Person or Entity to enforce the Plan or Final Order of the Bankruptcy Court.   These carve-outs are consistent with established practice in this jurisdiction and others.

42.     **Injunction and Gatekeeper Provision.** The injunction provision set forth in Section 13.5 of the Plan and Gatekeeper provision in Section 13.6 (the "**Gatekeeper Provision**") are essential to the Plan and necessary to preserve and enforce the settlement of Claims and Interests in the Plan, the Debtor Release, the Third-Party Release, and the Exculpation, as set forth in Article XIII of the Plan. In particular, the Gatekeeper Provision is limited in scope to matters directly related to the Chapter 11 Case and necessary and appropriate to ensure finality to the Chapter 11 Case and the matters resolved by the Plan.

43.     In accordance with section 1123(b) of the Bankruptcy Code, and as more particularly provided in the Plan, including in Article VIII, with respect to any Causes of Action that are Liquidation Trust Assets (including, for the avoidance of doubt, the Avoidance Actions), the Plan Administrator shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any Avoidance Actions not otherwise released under the Plan and any other actions specifically enumerated in the Schedule of Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Plan Administrator may pursue such Causes of Action in accordance with the best interests of the Liquidation Trust.  For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to the Plan include any claim or Cause of Action released pursuant to Article XIII.

44.     No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Plan Administrator will not pursue any and all available Causes of Action of the Debtor against it.

45.     The release and discharge of mortgages, deeds of trust, Liens, pledges, or other security interest against any property of the Estate, as described in Section 13.8 of the Plan (the "**Lien Release**") is also necessary to implement the Plan. The provisions of the Lien Release are appropriate, fair, equitable, reasonable, and in the best interests of the Debtor, the Estate, and Holders of Claim and Interests.

46.     The settlement, releases, injunctions, and exculpations set forth in the Plan, as implemented by the Confirmation Order, are fair, equitable, reasonable, and in the best interests of the Debtor, its Estate, and all Holders of Claims or Interests. The record at the Confirmation Hearing and in the Chapter 11 Case is sufficient to support the settlement, releases, injunctions, and exculpations provided for in Article XIII of the Plan. Accordingly, the Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.

### (l)     Treatment of Rights of Holders of Claims—1123(b)(5)

47.     The Plan is consistent with section 1123(b)(5) of the Bankruptcy Code. Article IV of the Plan modifies or leaves unaffected, as is applicable, the rights of certain Holders of Claims, as permitted by section 1123(b)(5) of the Bankruptcy Code.

### (m)     Additional Plan Provisions—Section 1123(b)(6).

48.     The other discretionary provisions in the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

### O.     Debtor Complied with Bankruptcy Code Requirements—Section 1129(a)(2).

49.     The Debtor complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court, and thus satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, the Debtor:

a. is an eligible debtor under section 109 of the Bankruptcy Code and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

b. has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

c. complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Bankruptcy Local Rules, any applicable non-bankruptcy law, rule and regulation, the Conditional Approval and Procedures Order, and all other applicable law, in transmitting the Solicitation Packages and the Notice of Non-Voting Status and Third-Party Release Opt-Out Forms, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**P.      Plan Proposed in Good Faith—Section 1129(a)(3).**

50.      The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtor proposed the Plan in good faith and not by any means forbidden by law. In so determining, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Case, the Plan, the Sale Transaction, and the process leading to confirmation of the Plan, including the support of Holders of Claims for the Plan, and the transactions to be implemented pursuant thereto.

**Q.      Payment for Services or for Costs and Expenses—Section 1129(a)(4).**

51.      The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtor in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**R.      Directors, Officers, and Insiders—Section 1129(a)(5).**

52.      The Plan provides that Accordion Partners, LLC will be the Plan Administrator and sole manager of the Wind Down Debtor, as well as trustee for the Liquidation Trust. Accordingly, the Plan satisfies the requirements under section 1129(a)(5) of the Bankruptcy Code.

**S.      No Rate Change—Section 1129(a)(6).**

20

53. Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Case. The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**T.     Best Interest of the Creditors—Section 1129(a)(7).**

54. The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The Liquidation Analysis, as supported by the Shepherd Declaration: (a) is reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that Holders of Allowed Claims and Interests in each Class will recover more under the Plan on account of such Claim or Interest, as of the Effective Date, than such Holder would receive if the Debtor were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

**U.     Acceptance by Certain Classes—Section 1129(a)(8).**

55. Classes 1 and 2 are unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Class 3 (Prepetition Secured Obligations Claims) and Class 4 (General Unsecured Claims) are impaired and voted to accept the Plan. Class 6 (Existing Equity Interests) abstained from voting. Class 5 (510(b) Claims) is vacant and, pursuant to Section 6.3 of the Plan is eliminated for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class. Accordingly, because the Plan has not been accepted by all Classes, the Debtor seeks confirmation of the Plan under section 1129(b), solely with respect to Class 6 (Existing Equity Interests), rather than section 1129(a)(8) of the Bankruptcy Code. Although section 1129(a)(8) has not been satisfied with respect to the Voting Classes, the Plan is confirmable because the Plan does not discriminate

unfairly and is fair and equitable with respect to all Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below. As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

**V.      Treatment of Claims Entitled to Priority under Section 507(a)—1129(a)(9).**

56.      The Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code. The treatment of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, U.S Trustee Fees, and Priority Tax Claims under Article II of the Plan and of Priority Non-Tax Claims under Article III of the Plan satisfies the requirements of, and complies in all respects with the treatment required by section 1129(a)(9) of the Bankruptcy Code for each of the various claims specified in sections 507(a)(1)–(8) of the Bankruptcy Code.

**W.      Acceptance by at Least One Impaired Class—Section 1129(a)(10).**

57.      The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced in the Voting Declaration, Class 3 (Prepetition Secured Obligations Claims) and Class 4 (General Unsecured Claims) voted to accept the Plan by the requisite numbers and amounts of Claims specified under section 1126(c) of the Bankruptcy Code, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**X.      Feasibility—Section 1129(a)(11).**

58.      The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Debtor at or before the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and confirmation of the Plan is not likely to be followed by a further

liquidation or the need for further financial reorganization; (d) establishes that the Plan may be implemented and has a reasonable likelihood of success; (e) establishes that the Debtor, Wind Down Debtor, or Liquidation Trust, as applicable, will have sufficient funds available to meet its obligations under the Plan; and (f) establishes that the Liquidation Trust will have the financial wherewithal to satisfy its obligations following the Effective Date.

**Y.      Payment of Statutory Fees—Section 1129(a)(12).**

59.      The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article II of the Plan provides for the payment of all U.S. Trustee Fees.

**Z.      Continuation of Employee Benefits—Section 1129(a)(13).**

60.      The Debtor does not have any obligation to pay retiree benefits as defined in section 1114 of the Bankruptcy Code. Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Chapter 11 Case or the Plan.

**AA.    Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).**

61.      Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Case. The Debtor owes no domestic support obligations, is not an individual, and is not a nonprofit corporation.

**BB.    "Cram Down" Requirements—Section 1129(b).**

62.      The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that Class 6 (Existing Equity Interests) has not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. First, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. Second, the Plan is fair and equitable with respect to the Classes that did not Accept the Plan. The Plan has been proposed in good faith, is reasonable and meets the requirements that no Holder

of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest. Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in the classes that have not accepted the Plan. *Third,* the Plan does not discriminate unfairly with respect to any Class because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in each Class. Therefore, the Plan may be confirmed despite the fact that not all impaired Classes have voted to accept the Plan.

**CC.    Only One Plan—Section 1129(c).**

63.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in the Chapter 11 Case.

**DD.    Principal Purpose of the Plan—Section 1129(d).**

64.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**EE.    No Small Business Case—Section 1129(e).**

65.    The Chapter 11 Case is not a small business case and, accordingly, section 1129(e) of the Bankruptcy Code does not apply.

**FF.    Good Faith Solicitation—Section 1125(e).**

66.    The Debtor acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in connection with all of its activities relating to support and consummation

24

of the Plan, including the solicitation and receipt of acceptances of the Plan, and it is entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**GG.   Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

67.   Each of the conditions precedent to the Effective Date, as set forth in Article XII of the Plan, has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with Article XII of the Plan.

**HH.   Implementation.**

68.   All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arms' length, are in the best interests of the Debtor and its Estate, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal, state, or local law. The Debtor, the Wind Down Debtor, and the Plan Administrator are authorized to take any action reasonably necessary, advisable, or appropriate to consummate such agreements and the transactions contemplated thereby.

**II.   Disclosure of All Material Facts.**

69.   The Debtor disclosed all material facts regarding the Disclosure Statement, the Plan, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtor or the Plan Administrator, as applicable.

**JJ.   Satisfaction of Confirmation Requirements.**

70.   Based on the foregoing, the declarations submitted in support of approval of the Disclosure Statement and confirmation of the Plan, and all other pleadings and evidence proffered

or adduced at or prior to the Confirmation Hearing, the Plan satisfies the requirements of section 1129 of the Bankruptcy Code.

## ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

71.     **Findings of Fact and Conclusions of Law.** The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

72.     **Disclosure Statement, Solicitation Packages, and Solicitation Procedures**. The Disclosure Statement, the Solicitation Packages, and the Solicitation Procedures are **APPROVED** on a final basis in all respects pursuant to section 1125 of the Bankruptcy Code.

73.     **Confirmation of the Plan.** The Plan, attached hereto as **Exhibit A**, as and to the extent modified by this Confirmation Order, is approved and **CONFIRMED** in its entirety pursuant to section 1129 of the Bankruptcy Code. All Plan documents necessary for implementation of the Plan, including those in the Plan Supplement, are hereby approved and incorporated herein by reference as an integral part of this Confirmation Order. The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision, it being the intent of the Confirmation Order that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

26

74.     **Headings**. Headings utilized in this Confirmation Order are for convenience of reference only and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

75.     **Objections**. All objections (including any reservations of rights contained therein) to approval of confirmation of the Plan that have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured by the relief granted herein, or are not otherwise resolved as stated by the Debtor on the record of the Confirmation Hearing, are **OVERRULED** and **DENIED** on the merits and in their entirety, and all withdrawn objections are deemed withdrawn with prejudice.

76.     **Deemed Acceptance of Plan.** In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan, as modified by the Plan Modifications and this Confirmation Order. No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

77.     **No Action Required**. Under section 1142(b) of the Bankruptcy Code and any other comparable provisions under applicable law, no action of the respective directors, equity holders, managers, or members of the Debtor is required to authorize the Debtor to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

78.     **Immediate Binding Effect**. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 6006(d), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the

Debtor, the Plan Administrator, the Liquidation Trust, the Holders of Claims and Interests, the Released Parties, and each of their respective successors and assigns. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

79.     Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in the Chapter 11 Case, all documents and agreements executed by the Debtor as authorized and directed thereunder, and all motions or requests for relief by the Debtor pending before this Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtor, the Plan Administrator, and the Liquidation Trust, as applicable, and their respective successors and assigns.

80.     **Classification and Treatment.** The Plan's classification scheme is approved. The terms of the Plan shall govern the classification and treatment of Claims and Interests for purposes of the distributions to be made thereunder.

81.     **Subordination of Claims.** The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtor, Wind Down Debtor, and Plan Administrator (as applicable) reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

82.     **General Settlement of Claims and Interests.** In consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of this Confirmation Order constitutes the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.

83.     **Sources of Consideration for Plan Distributions.** Subject to the provisions of the Plan concerning the Professional Fee Escrow Account and Wind Down Account, distributions under the Plan shall be funded by, among other things (a) Cash on hand; (b) proceeds from the Sale Transaction; (c) the proceeds, if any, from prosecution or settlement of the Retained Causes of Action, and (d) proceeds from any other assets of the Debtor's estate or the Liquidation Trust.

84.     **Vesting of the Assets in the Liquidation Trust.** Except as otherwise provided in the Sale Order, the Plan, the Sale Documents, or the other Definitive Documents, or any agreement, instrument, or other document incorporated herein or therein, upon the closing of the Sale Transaction except as provided in the Plan, the Liquidation Trust Assets shall vest in the Liquidation Trust, free and clear of all Liens, Claims, charges, setoff rights, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Plan Administrator may operate the Wind Down Debtor's business and may use, acquire, or dispose of the Wind Down Debtor's property, if any, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

85.     **Retained Causes of Action.** In accordance with section 1123(b) of the Bankruptcy Code, the Liquidation Trust shall retain and the Plan Administrator may enforce all rights to commence and pursue as appropriate, any and all Retained Causes of Action and Causes of Action of the Debtor that are not otherwise transferred or sold pursuant to the Sale Transaction, whether arising before or after the Petition Date, and the Liquidation Trust's and Plan Administrator's rights to commence, prosecute, or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtor pursuant to the releases and exculpations contained in the Plan, including Article XIII thereof, which shall be deemed released and waived by the Debtor, the Plan Administrator, and the Liquidation Trust as of the Effective Date. No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Plan Administrator or Liquidation Trust, will not pursue any and all available Causes of Action of the Debtor against it.

86.     **Corporate Action.** On the Effective Date and following satisfaction of the Debtor's distribution and funding requirements set forth in the Plan, and any obligations under the Sale Documents, the Debtor and Wind Down Debtor shall have no further duties or responsibilities in connection with implementation of the Plan.  Following the Effective Date, the Plan Administrator shall be the sole manager of the Wind Down Debtor, subject to the terms of the Liquidation Trust Agreement. The managers of the Debtor prior to the Effective Date shall have no continuing obligations to the Debtor or Wind Down Debtor on and after the Effective Date and each such manager shall be deemed to have resigned or shall otherwise cease to be a manager of the Debtor on the Effective Date.  On or as soon as reasonably practicable after the Effective Date, the Plan Administrator shall be authorized to commence the Wind Down and administer the Wind Down

Debtor until such time as the Plan Administrator determines to dissolve and/or wind down the Wind Down Debtor under applicable law; provided that, notwithstanding such dissolution, the Plan Administrator shall remain authorized to continue the Wind Down, including filing any necessary documents with the appropriate authorities, including any tax returns, and to facilitate the closing of the Chapter 11 Case as to the Debtor.

87.     **Cancellation of Existing Securities and Agreements.** Except for the purpose of evidencing a right to distribution under the Plan, and except as otherwise set forth in the Plan, on the Effective Date, all agreements, including all intercreditor agreements, instruments, and other documents directly or indirectly evidencing, related to or connected with any Claim, and any rights of any Holder in respect thereof, shall be deemed cancelled, discharged and of no force or effect without further act or action under any applicable agreement, law, regulation, order, or rule. The holders of or parties to such cancelled instruments, securities and other documentation will have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan. Notwithstanding anything to the contrary herein, the Credit Documents shall continue in effect solely to the extent necessary to permit Holders of the Prepetition Secured Obligations Claims to receive distributions under the Plan on account of such Claims.  On the Effective Date, except as otherwise specifically provided for in the Plan: (i) the obligations of the Debtor under any certificate, share, note, bond, agreement, indenture, purchase right, option, warrant, call, put, award, commitment, registration rights, preemptive right, right of first refusal, right of first offer, co-sale right, investor rights, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Interest shall be cancelled, terminated and of no further force or effect solely as to the Debtor, without further act or action,

and the Debtor, Wind Down Debtor, Liquidation Trust, and Plan Administrator shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, calls, puts, awards, commitments, registration rights, preemptive rights, rights of first refusal, rights of first offer, co-sale rights, investor rights, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor shall be automatically and fully released and discharged.

88.    **Effectuating Documents; Further Transactions.** Upon entry of this Confirmation Order, the Debtor, the Wind Down Debtor, The Liquidation Trust, or the Plan Administrator (as applicable) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonably necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan. The Debtor, the Wind Down Debtor, Liquidation Trust, the Plan Administrator, all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

89.    **Section 1146 Exemption from Certain Taxes and Fees.** To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any **transfer** from the Debtor to any Entity pursuant to or in connection with the Plan (including the Sale Transaction), including: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtor;

32

(2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan (including the Sale Transaction), including, without limitation, any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any U.S. federal, state or local document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and this Confirmation Order directs the appropriate U.S. federal, state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. All sales, transfers, and assignments of owned and leased property approved by the Bankruptcy Court on or before the Effective Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

90.      **Sale Order.** Notwithstanding anything to the contrary herein, nothing in the Plan or this Confirmation Order shall affect, impair or supersede the Sale Order or Sale Documents, each of which remains in full force and effect and governs in the event of any inconsistency with the Plan.

91.      **Authority to Act**. Prior to, on, or after the Effective Date (as appropriate) all matters expressly provided for under the Plan that would otherwise require approval of the stockholders, security holders, officers, directors, or other owners of the Debtor shall be deemed

33

to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state in which the Debtor is formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the Debtor or notice to, order of, nor hearing before the Bankruptcy Court.

92.     **Assumption and Rejection of Executory Contracts and Unexpired Leases.** The provisions of Article XI regarding assumption, assignment, and rejection of Executory Contracts or Unexpired Leases are approved.  Assumption of any Executory Contract or Unexpired Lease pursuant to the Sale Documents, Sale Order, or the Plan, and payment of any cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases under the Plan must be filed with the Claims Agent within thirty (30) days after the date of the effectiveness of the rejection of the applicable Executory Contract or Unexpired Lease.**

93.     **Insurance Policies.** All of the Debtor's insurance policies (including all D&O Liability Insurance Policies) and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, the Debtor shall be deemed to have assumed for the benefit of the Estate and the Liquidation Trust all insurance policies and any agreements, documents, and instruments related thereto that have not

34

been previously rejected or the subject of a motion to reject. Following the Effective Date, the Plan Administrator shall have all rights to enforce the terms of any of the Debtor's insurance policies. For the avoidance of doubt, coverage for defense and indemnity under the Insurance Policies shall remain available to all individuals within the definition of "Insured" in the Insurance Policies. In addition, after the Effective Date, all officers, directors, agents, or employees of the Debtor who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the Insurance Policies (including any "tail" policy) in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date to the extent set forth in the Insurance Policies.

94. **Distributions.** The procedures governing distributions contained in Article X of the Plan shall be, and hereby are, approved in their entirety. Except as otherwise set forth in the Plan or in this Confirmation Order, the timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan, the Plan Supplement, or this Confirmation Order, as applicable.

95. Notwithstanding any other provision of the Plan, the Plan Supplement, or this Confirmation Order to the contrary, no distributions shall be made on account of Allowed Claims in any Class entitled to receive Pro Rata distributions until all Claims in such Class have been Allowed or Disallowed by Final Order, unless the Plan Administrator (or Disbursing Agent charged with making distributions under the Plan) has established and is maintaining a reserve (the "**Disputed Claims Reserve**") in an amount sufficient to pay Holders of Disputed Claims in such Class the distributions to which such Holders would be entitled if their Disputed Claims were Allowed in their full asserted amounts (or in such amount as estimated by the Bankruptcy Court

pursuant to section 502(c) of the Bankruptcy Code). Upon the establishment and funding of the Disputed Claims Reserve in accordance with this provision, the Plan Administrator or Disbursing Agent shall be authorized to commence Pro Rata distributions to Holders of Allowed Claims in the applicable Class as if all Disputed Claims in such Class had been Disallowed, with such distributions subject to adjustment upon the subsequent Allowance or Disallowance of Disputed Claims.

96.     Upon the Allowance of any Disputed Claim for which a reserve has been maintained, the Plan Administrator or Disbursing Agent shall distribute to the Holder of such newly Allowed Claim, from the Disputed Claims Reserve, the Pro Rata distribution to which such Holder is entitled, together with any earnings or interest thereon to the extent provided by the Plan. Upon the Disallowance of any Disputed Claim by Final Order, the portion of the Disputed Claims Reserve attributable to such Disallowed Claim shall be released from the Disputed Claims Reserve and redistributed to Holders of Allowed Claims in the applicable Class in accordance with the distribution provisions of the Plan. The Plan Administrator may seek further relief from the Bankruptcy Court with respect to estimation of Claims or interim or partial distributions on account of Allowed Claims.

97.     To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim.

No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

98.     **Claims Register.** Any Claim that has been paid, satisfied, or assumed by the Successful Bidder in the Sale Transaction, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtor or the Plan Administrator, as applicable, without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

99.     **Professional Compensation.** Any Professional Person seeking allowance of a Professional Fee Claim shall file with the Bankruptcy Court its final application for allowance of compensation for services rendered and reimbursement of expenses incurred on and prior to the Effective Date and in connection with the preparation and prosecution of such final application no later than forty-five (45) calendar days after the Effective Date or such other date as established by the Bankruptcy Court. Objections to Professional Fee Claims must be filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim. All requests for payment of professional fee claims of ordinary course professionals shall be made pursuant to the *Order Approving Procedures for the Retention and Compensation of Ordinary Course Professionals* [Docket No. 98] (the "**OCP Order**"). To the extent any professional fee claims of the ordinary course professionals governed by the OCP Order have not been allowed or paid pursuant to the OCP Order on or before the Effective Date, the amount of Professional Fee Claims owing to the OCPs shall be paid in Cash to such OCPs by the Debtor or Plan Administrator, as applicable, as soon as reasonably practicable after such professional fee claims are allowed pursuant to the OCP Order.

100.     **Compliance with Tax Requirements.** Without limitation to the terms of the Plan, in connection with the Plan and all distributions under the Plan, the Plan Administrator, the Disbursing Agent, and any Claims Agent shall comply with all withholding and reporting requirements imposed by any U.S. federal, state, provincial, local or foreign tax law, and all distributions under the Plan shall be subject to any such withholding and reporting requirements. The Plan Administrator, the Disbursing Agent and any Claims Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including requiring a Holder of a Claim to submit appropriate tax and withholding certifications. Notwithstanding any other provision of the Plan or this Confirmation Order: (a) each Holder of an Allowed Claim that is to receive a distribution under the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations on account of such distribution; and (b) no distributions under the Plan shall be required to be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Plan Administrator, the Disbursing Agent or the Claims Agent, as applicable, for the payment and satisfaction of such tax obligations or has, to their satisfaction, established an exemption therefrom.

101.     Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the withholding agent or such other Person designated by the Debtor or Plan Administrator the appropriate Internal Revenue Service Form or other tax forms or documentation requested by the Debtor or Plan Administrator to reduce or eliminate any required federal, state, or local withholding. If the party entitled to receive such property as an issuance or distribution fails to comply with any such request for a one hundred eighty (180) day period

beginning on the date after the date such request is made, the amount of such issuance or distribution shall irrevocably revert to the Liquidation Trust and any Claim in respect of such distribution under the Plan shall be forever barred from assertion against the Debtor, the Wind Down Debtor, the Liquidation Trust, the Plan Administrator, or their respective property.

102.    **Waiver or Estoppel.** Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, as an Other Secured Claim, or not subordinated, by virtue of an agreement made with the Debtor or its counsel (or any other Entity), if such agreement was not disclosed in the Plan, the Sale Orders, the Plan Supplement, the Disclosure Statement, or other papers filed with the Bankruptcy Court or evidenced by a written instrument acknowledged by the Debtor or its counsel before the Confirmation Date.

103.    **Debtor Releases, Third-Party Release, Exculpations, Injunction, and Related Provisions under the Plan.** The discharge, releases, injunctions, exculpations, and related provisions set forth in Article XIII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party.

104.    **Discharge of Claims and Termination of Equity Interests; Compromise and Settlement of Claims, Equity Interests, and Controversies. Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Equity Interests and Claims of any nature whatsoever,**

39

**including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against the Debtor, the Reorganized Debtor or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim is Allowed; or (3) the Holder of such Claim or Equity Interest has accepted the Plan. Except as otherwise provided herein, any default by the Debtor with respect to any Claim that existed immediately prior to or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan. For the avoidance of doubt, (i) nothing in Section 13.1 shall affect the rights of Holders of Claims to seek to enforce the Plan, including the distributions to which Holders of Allowed Claims are entitled under the Plan, and (ii) notwithstanding any other Plan provision to the contrary, in the event a Sale Transaction is consummated, the Debtor shall not receive a discharge, pursuant to section 1141(d)(3) of the Bankruptcy Code.**

105.    **In consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that**

a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle any Claims against the Debtor and its Estate, as well as claims and Causes of Action against other Entities.

106. **Releases by the Debtor.** Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor) and their respective assets and properties (the "Debtor Release") from any and all claims, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common

**laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtor, including, without limitation, (i) the Chapter 11 Case, the Combined Disclosure Statement and Plan, the Definitive Documents, the New Equity Transaction, the Sale Transaction, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan; (iii) the business or contractual arrangements between the Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Combined Disclosure Statement and Plan, the Plan Supplement, the Definitive Documents, any Sale Documents, any New Equity Documents, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Case; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtor or the Reorganized Debtor; (vii) any actions taken against the Debtor or any of its Affiliates prior to the Effective Date to recover on any Claim against the Debtor or any Equity Interest in the Debtor; and/or (viii) the confirmation or consummation of the Plan or the solicitation of votes on the Plan, in each case, that the Debtor would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, the Debtor, its Estate or the Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; provided, however, that the foregoing provisions of this Debtor Release shall not operate to waive or**

release: (x) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party; and/or (y) the rights of the Debtor, Reorganized Debtor, Wind Down Debtor, or Plan Administrator to enforce the Plan, any New Equity Documents, any Sale Documents, and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan or any Restructuring Transactions or assumed pursuant to the Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and this Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release. Notwithstanding the foregoing, nothing in Section 13.2 of the Plan shall or shall be deemed to prohibit the Debtor, Reorganized Debtor, Wind Down Debtor, or Plan Administrator from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non- compete obligation owed to the Debtor or the Reorganized Debtor. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement)

executed to implement the Plan as set forth herein; and (2) all Retained Causes of Action set forth in the Schedule of Retained Causes of Action.

107.    **Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtor and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after consideration of the likelihood of success of any Claims released by the Debtor; and (6) a bar to any of the Debtor, its Estate, the Reorganized Debtor, the Wind Down Debtor, or the Plan Administrator from asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.**

108.    **Third-Party Release. Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any Affiliates, heirs, executors, administrators, successors,**

44

**assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third-Party Release") from any and all Claims, Interests, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to the Debtor, including, without limitation, (i) the Chapter 11 Case, the Combined Disclosure Statement and Plan, the Definitive Documents, the New Equity Transaction, the Sale Transaction, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan; (iii) the business or contractual arrangements between the Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Combined Disclosure Statement and Plan, the Plan Supplement, the Definitive Documents, any Sale Documents, any New Equity Documents, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Case; (vi) the purchase, sale, or**

rescission of the purchase or sale of any Equity Interest of the Debtor or the Reorganized Debtor; (vii) any actions taken against the Debtor or any of its Affiliates prior to the Effective Date to recover on any Claim against the Debtor or any Equity Interest in the Debtor; and/or (viii) the confirmation or consummation of the Plan or the solicitation of votes on the Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (x) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party; and/or (y) the rights of such Non-Debtor Releasing Party to enforce the Plan, any Sale Documents, any New Equity Documents, and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan or any Sale Transaction or assumed pursuant to the Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth

therein; or (2) any retained Causes of Action, including, without limitation, as set forth on the Schedule of Retained Causes of Action.

109.    **Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtor and its Estate; (6) fair, equitable, and reasonable; (7) given and made after consideration of the likelihood of success of any Claims released pursuant to the Third-Party Release and after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.**

110.    **For the avoidance of doubt, neither the Third-Party Release nor any other provision of Section 13.3 of the Plan shall apply to any Person or Entity that makes the Third-Party Release Opt-Out Election.**

111.    **Exculpation. Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan, the Exculpated Party shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition**

47

**Date and prior to or on the Effective Date in connection with, or related to: the administration of the Chapter 11 Case, commencement of the Chapter 11 Case, pursuit of confirmation and consummation of the Plan, making distributions under the Plan, the Disclosure Statement, the New Equity Transaction, the Sale Transaction, the Sale Process, the Sale Order, or the solicitation of votes for, or confirmation of, the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtor; or the transactions or documentation in furtherance of any of the foregoing; or any other postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor, the approval of the Disclosure Statement or confirmation or consummation of the Plan; provided, however, that the foregoing provisions of this Exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party; and/or (ii) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel, to the extent otherwise permitted under applicable non-bankruptcy law, concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions. The foregoing Exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.**

**Notwithstanding the foregoing, nothing in Section 13.4 of the Plan shall or shall be deemed to prohibit the Debtor, the Reorganized Debtor, or the Plan Administrator from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtor or the Reorganized Debtor, in each case unless otherwise expressly provided for in this Plan. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Party from liability.**

112.    **Injunction. Except as otherwise provided in the Plan or for obligations issued pursuant to the Plan, all Persons or Entities that have held, hold, or may hold (i) Claims or Interests in or against the Debtor, its property, or the Estate, or (ii) any claims or Causes of Action that have been settled, released, discharged, or are subject to Exculpation pursuant to Article XIII of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Plan Administrator, the Liquidation Trust, the Wind Down Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Party: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, claims, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor, the Plan Administrator, the Liquidation Trust, the Wind Down Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Party on account of or in connection with or with respect to any such Claims, Interests, claims, or Causes of Action; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the**

**Plan Administrator, the Liquidation Trust, the Wind Down Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Party or the property or Estate of the Debtor, the Plan Administrator, the Liquidation Trust, the Wind Down Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Party on account of or in connection with or with respect to any such Claims, Interests, claims, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estate of the Debtor, the Plan Administrator, the Liquidation Trust, the Wind Down Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Party on account of or in connection with or with respect to any such Claims, Interests, claims, or Causes of Action unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims, Interests, claims, or Causes of Action released, discharged, exculpated, or settled pursuant to the Plan.**

113.   **Gatekeeper Provision**.  No party may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a Cause of Action of any kind against the Released Parties or the Exculpated Party that relates to, or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, a Cause of Action subject to Section 13.2, Section 13.3, or Section 13.4 of the Plan related to the Chapter 11 Case and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Chapter 11 Case, the Combined Disclosure Statement and Plan (including, for the avoidance of doubt, the Plan Supplement), the Sale Order, the Definitive Documents, or any transaction, contract, instrument,

50

release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the pursuit of confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date without first (1) requesting a determination from the Bankruptcy Court, after notice and a hearing, that such Cause of Action represents a colorable claim against a Released Party or Exculpated Party, and is not a Claim that the Debtor released under the Plan, which request must attach the complaint or petition proposed to be filed by the requesting party; and (2) obtaining from the Bankruptcy Court specific authorization for such party to bring such Cause of Action against any such Released Party or Exculpated Party. Any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Cause of Action is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable Cause of Action.

114. **Release of Liens**. Except as otherwise provided in this Confirmation Order, the Plan, or in any contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made

51

pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtor elects to reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns or the Wind Down Debtor, Liquidation Trust, or Plan Administrator, as applicable. Any Holder of a Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtor, Wind Down Debtor, Liquidation Trust, or Plan Administrator, as applicable to release any Collateral or other property of the Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtor, Wind Down Debtor, Liquidation Trust, or Plan Administrator, as applicable, to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases. The presentation or filing of this Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

115. To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, after such indefeasible payment in full, such Holder (or the agent for such Holder) shall take any and all steps requested by the Reorganized Debtor, the Wind Down Debtor, or the Plan Administrator (at the expense of the Debtor, Reorganized Debtor,

Wind Down Debtor, or Plan Administrator, as applicable) that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of Uniform Commercial Code termination statements, deposit account control agreement terminations, and any other applicable filings or recordings, and the Reorganized Debtor, the Wind Down Debtor, or the Plan Administrator, as applicable, shall be entitled to file Uniform Commercial Code terminations or to make any other such filings or recordings on such Holder's behalf.

116. ***Claims of Governmental Units.*** Nothing in the Confirmation Order or the Plan regarding the Third-Party Release or Exculpation shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person. For the avoidance of doubt, nothing in this paragraph shall alter, limit, or otherwise affect the classification, allowance, or treatment of any Claim by a Governmental Unit or any other party

53

against the Debtor, its Estate, the Wind Down Debtor, or Liquidation Trust, or any distributions or payments to be made on account of any such Claims, in each case as provided under the Plan.

117.    *Clay County Appraisal District*.  Notwithstanding anything in Plan or Confirmation Order, pursuant to the Sale Order, the secured taxes for tax years 2025 and 2026 (the "**Clay CAD Tax Claims**") owing to Clay County Appraisal District ("**Clay CAD**") shall remain attached to the taxable property until the Clay CAD Tax Claims are paid in full. The Debtor shall pay the 2025 taxes in full at closing of the Sale Transaction together with applicable statutory interest. In the event that any of the 2025 Clay CAD Tax Claims are disputed, funds sufficient to pay the disputed Clay CAD Tax Claims, along with applicable interest, shall be placed in a segregated account and shall not be paid to any other party until the dispute is resolved by agreement of the parties or by order of this Court.  The Purchaser shall assume full responsibility for the 2026 taxes and shall pay the 2026 taxes in full when due.  If not timely paid, the Clay CAD may proceed with non-bankruptcy collections against the Purchaser and the property, without leave or approval of the Court. All parties' rights to object to the priority, validity, amount and extent of the Clay CAD Tax Claims and the asserted liens are fully preserved.

118.    **Term of Injunctions or Stays.** Except as otherwise provided in the Plan or in this Confirmation Order, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under the Plan, (1) all injunctions with respect to or stays against an action against property of the Debtor or the Debtor's Estate arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtor or the Debtor's Estate; and (2) all other injunctions and stays arising under or entered during the Chapter

11 Case under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that the Chapter 11 Case is closed pursuant to a final order of the Bankruptcy Court, or (b) the date that the Chapter 11 Case is dismissed pursuant to a final order of the Bankruptcy Court. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect indefinitely.

119.    **Nonseverability of Plan Provisions.** Each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtor or Plan Administrator, as applicable; and (c) nonseverable and mutually dependent.

120.    **Post-Confirmation Reports.** The Debtor shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Debtor and the Plan Administrator, as applicable, shall remain obligated to file post-confirmation quarterly reports and to pay quarterly fees to the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to file a Proof of Claim or any other request for payment of quarterly fees.

121.    **Sale Transaction Closing Payment**. On the closing date of the Sale Transaction, the Debtor shall satisfy the Allowed Prepetition Secured Obligations from the proceeds of the Sale Transaction.

122.    **Amendments.** Following the entry of this Confirmation Order, and as more particularly provided in Section 15.2 of the Plan, the Debtor may amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or

reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

123.     **Applicable Non-Bankruptcy Law.** The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law or any requirements related thereto.

124.     **Government Approvals Not Required.** This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

125.     **Reporting.** After entry of this Confirmation Order, the Debtor or the Plan Administrator, as applicable, shall have no obligation to file with the Bankruptcy Court, serve on any parties, or otherwise provide any party with any other report that the Debtor were obligated to provide under the Bankruptcy Code or an order of the Bankruptcy Court, including obligations to provide (a) any reports to any parties otherwise required under the "first" and "second" day orders entered in this Chapter 11 Case and (b) monthly operating reports (even for those periods for which a monthly operating report was not filed before the Effective Date); *provided* that the Debtor or Plan Administrator, as applicable, will comply with the U.S. Trustee's quarterly reporting requirements and any reporting requirements under the Liquidation Trust Agreement.

126.     **Notice of Effective Date.** The Debtor or the Plan Administrator, as applicable, shall serve notice of entry of this Confirmation Order, of the occurrence of the Effective Date, and of

applicable deadlines in the form attached as **Exhibit B** hereto (the "**Notice of Effective Date**") in accordance with Bankruptcy Rules 2002 and 3020(c) on all parties served with notice of the Confirmation Hearing within seven (7) Business Days after the Effective Date; *provided* that no notice of any kind shall be required to be mailed or made upon any Entity to whom the Debtor mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtor has been informed in writing by such Entity, or is otherwise aware, of that Entity's new address. For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

127.    The Notice of Effective Date will have the effect of an order of the Bankruptcy Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law. The above-referenced notices are adequate under the particular circumstances of this Chapter 11 Case and no other or further notice is necessary.

128.    **Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

129.    **Effect of Conflict.** This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

130.    **Final Order.** For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable

immediately upon its entry by this Court. This Confirmation Order is a Final Order and shall be effective and enforceable immediately upon entry, and its provisions shall be self-executing.

131.    **Retention of Jurisdiction.** The Bankruptcy Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Case, including the matters set forth in Article XIV of the Plan and section 1142 of the Bankruptcy Code.

Signed: June 03, 2026

_____
Alfredo R Pérez
United States Bankruptcy Judge

**Exhibit A**
**Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| SHANNON WIND, LLC, | ) Case No. 26-90124 (ARP) |
|  | ) |
| Debtor.[1] | ) |
|  | ) |

## AMENDED COMBINED DISCLOSURE STATEMENT
## AND CHAPTER 11 PLAN

**BRADLEY ARANT BOULT**
**CUMMINGS LLP**
Jarrod B. Martin (TX Bar No.  24070221)
Michael K. Riordan (TX Bar No. 24070502)
600 Travis Street, Suite 5600
Houston, TX 77002
Telephone:     (713) 576-0300
Facsimile:     (713) 547-0301
Email: jbmartin@bradley.com
           mriordan@bradley.com

-and-

James B.  Bailey (TX Bar No.  24108289)
1819 Fifth Avenue N.
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 488-6913
Email: jbailey@bradley.com

---

[1]  The last four digits of the Debtor's federal tax identification number are 3562. For the purpose of this chapter 11 case, the Debtor's address is 1920 McKinney Ave, Suite 950, Dallas, TX, 75201. Additional information regarding the Debtor's case can be found on the website of the Debtor's claims and noticing agent at https://www.veritaglobal.net/shannon.

**TABLE OF CONTENTS**

**Page(s)**

ARTICLE I. DEFINITIONS AND INTERPRETATION ................................................. 5

    A.    Definitions. ................................................................................................... 5

    B.    Interpretation; Application of Definitions and Rules of Construction. ............. 20

    C.    Appendices and Plan Documents. ............................................................... 20

ARTICLE II. ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, U.S. TRUSTEE
        FEES AND PRIORITY TAX CLAIMS ................................................... 21

    2.1.    Administrative Expense Claims. ............................................................... 21

    2.2.    Fee Claims. ............................................................................................... 22

    2.3.    Priority Tax Claims. ................................................................................. 24

    2.4.    U.S. Trustee Fees and Related Reporting Obligations. ............................... 25

ARTICLE III. CLASSIFICATION OF CLAIMS AND INTERESTS ............................... 25

    3.1.    Classification of Claims and Interests and Projected Recoveries. ............... 25

    3.2.    Unimpaired Classes of Claims. ............................................................... 27

    3.3.    Impaired Classes of Claims and Interests. ............................................... 27

    3.4.    Separate Classification of Other Secured Claims. ...................................... 27

ARTICLE IV. TREATMENT OF CLAIMS AND INTERESTS ....................................... 27

    4.1.    Priority Non-Tax Claims (Class 1). ........................................................... 27

    4.2.    Other Secured Claims (Class 2). ............................................................... 28

    4.3.    Prepetition Secured Obligations Claims (Class 3). ..................................... 29

    4.4.    General Unsecured Claims (Class 4). ......................................................... 30

    4.5.    510(b) Claims (Class 5). ........................................................................... 30

    4.6.    Existing Equity Interests (Class 6). ........................................................... 31

ARTICLE V. BACKGROUND AND DISCLOSURES ................................................... 31

    5.1.    General Background. ................................................................................. 31

    5.2.    The Debtor's Corporate Structure. ........................................................... 32

    5.3.    The Debtor's Prepetition Capital Structure. ............................................... 32

    5.4.    Events Leading to Chapter 11. ................................................................. 33

    5.5.    The Chapter 11 Case. ............................................................................... 36

ARTICLE VI. CONFIRMATION AND VOTING PROCEDURES ................................... 39

    6.1.    Confirmation Procedure. ........................................................................... 39

    6.2.    Procedure for Objections. ......................................................................... 39

i

6.3. Requirements for Confirmation. ....................................................40

6.4. Classification of Claims and Interests. ..........................................40

6.5. Impaired Claims or Interests. .......................................................42

6.6. Confirmation without Necessary Acceptances. ...............................42

6.7. Best Interests Test and Liquidation Analysis. ................................43

6.8. Financial Feasibility. ..................................................................43

6.9. Releases and Exculpation. ..........................................................44

6.10. Acceptance of the Plan. .............................................................44

ARTICLE VII. CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING ....................................................................................45

7.1. The Plan May Not Be Accepted. ..................................................45

7.2. The Plan May Not Be Confirmed. ................................................45

7.3. Failure to Receive Bankruptcy Court Approval of the Compromises and Settlements Contemplated by the Plan. ..................................45

7.4. Distributions to Holders of Allowed Claims under the Plan May Be Inconsistent with Projections. ......................................................46

7.5. Objections to Classification of Claims. .........................................46

7.6. Failure to Consummate the Plan. .................................................47

7.7. Risks Associated with the Debtor's Business. ...............................47

7.8. Extended Stay in Chapter 11. ......................................................48

7.9. Allowance of Claims May Substantially Dilute the Recovery to Holders of Claims under the Plan. ................................................49

7.10. Certain Tax Considerations. ........................................................49

ARTICLE VIII. MEANS FOR IMPLEMENTATION .............................................49

8.1. Sources for Cash Distributions under this Plan. .............................49

8.2. Designation of the Successful Bid. ...............................................49

8.3. New Equity Transaction. .............................................................50

8.4. Exemption from Registration Requirements. ..................................51

8.5. Sale Transaction. .......................................................................52

8.6. Authority to Effectuate Restructuring Transactions ........................53

8.7. Plan Administrator and Liquidation Trust. .....................................53

8.8. U.S. Federal Income Tax Treatment of the Liquidation Trust for the Liquidation Trust Assets; Tax Reporting and Tax Payment Obligations. ...............................................................................56

8.9. Indemnification Provisions. .........................................................57

8.10. Exemption from Certain Transfer Taxes and Recording Fees. ..........58

ii

8.11. Cancellation of Existing Securities and Agreements. 58

8.12. Management. 59

8.13. D&O Liability Insurance Policies 59

8.14. Corporate Action. 60

8.15. Ability to Seek and Obtain Discovery 60

8.16. Cash Investments in the Liquidation Trust. 61

8.17. Dissolution of the Liquidation Trust. 61

8.18. Control Provisions. 61

8.19. Limitation of Liability; Indemnification 61

8.20. Preservation of Causes of Action 62

ARTICLE IX. DISTRIBUTIONS 63

9.1. Distributions. 63

9.2. No Postpetition Interest on Claims. 63

9.3. Date of Distributions. 63

9.4. Distribution Record Date. 64

9.5. Disbursing Agent. 64

9.6. Delivery of Distribution. 65

9.7. Unclaimed Property. 65

9.8. Satisfaction of Claims. 65

9.9. Manner of Payment Under Plan. 65

9.10. De Minimis Cash Distributions. 66

9.11. Distributions on Account of Allowed Claims Only. 66

9.12. No Distribution in Excess of Amount of Allowed Claim. 66

9.13. Withholding and Reporting Requirements. 66

9.14. Claims Paid or Payable by Third Parties 66

ARTICLE X. PROCEDURES FOR RESOLVING CLAIMS 67

10.1. Claims Process. 67

10.2. Objections to Claims. 67

10.3. Payments and Distributions with Respect to Disputed Claims. 68

ARTICLE XI. EXECUTORY CONTRACTS AND UNEXPIRED LEASES 68

11.1. Assumption and Assignment Procedures in the Bidding Procedures Order. 68

11.2. Assumption and Rejection of Executory Contracts and Unexpired Leases. 68

11.3. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. 70

11.4. Claims Based on Rejection of Executory Contracts and Unexpired Leases. 71

iii

11.5.    Reservation of Rights. ........................................................................... 71

11.6.    Insurance Policies. ................................................................................ 72

11.7.    Modifications, Amendments, Supplements, Restatements, or Other Agreements. .... 72

11.8.    Nonoccurrence of Effective Date. ........................................................ 72

ARTICLE XII. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ............ 72

12.1.    Conditions Precedent to Confirmation. ................................................ 72

12.2.    Conditions Precedent to the Effective Date. ........................................ 73

12.3.    Satisfaction and Waiver of Conditions Precedent. .............................. 75

12.4.    Effect of Failure of Conditions. ........................................................... 75

12.5.    Binding Effect. ...................................................................................... 75

12.6.    Substantial Consummation. .................................................................. 75

ARTICLE XIII. RELEASE, INJUNCTION, AND RELATED PROVISIONS ........................ 76

13.1.    Discharge of Claims and Termination of Equity Interests; Compromise and
          Settlement of Claims, Equity Interests, and Controversies. .................. 76

13.2.    Releases by the Debtor. ........................................................................ 77

13.3.    Third-Party Release. ............................................................................. 78

13.4.    Exculpation. .......................................................................................... 80

13.5.    Injunction. ............................................................................................. 81

13.6.    Gatekeeper Provision. ........................................................................... 81

13.7.    Setoffs and Recoupment. ...................................................................... 82

13.8.    Release of Liens. ................................................................................... 82

ARTICLE XIV. RETENTION OF JURISDICTION ...................................................... 83

ARTICLE XV. MISCELLANEOUS PROVISIONS ........................................................ 85

15.1.    Termination of Professional Persons. ................................................... 85

15.2.    Amendments. ......................................................................................... 85

15.3.    Revocation or Withdrawal of this Plan. ................................................ 86

15.4.    Allocation of Distributions under this Plan Between Principal and Interest. ..... 86

15.5.    Severability. .......................................................................................... 86

15.6.    Governing Law. ..................................................................................... 86

15.7.    Section 1125(e) of the Bankruptcy Code. ............................................ 87

15.8.    Inconsistency. ........................................................................................ 87

15.9.    Time. ...................................................................................................... 87

15.10.   Exhibits. ................................................................................................. 87

15.11.   Notices. .................................................................................................. 87

iv

v

15.12.  Filing of Additional Documents. ................................................................ 88

15.13.  Reservation of Rights. ................................................................................. 88

15.14.  Tax Matters. ................................................................................................ 88

**DISCLAIMER**

THIS COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION, AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE (I) DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, (II) ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR, OR (III) DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS OR INTERESTS.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF. HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.

THE COMBINED DISCLOSURE STATEMENT AND PLAN CONTEMPLATES THE REORGANIZATION OF THE DEBTOR AND DISTRIBUTIONS TO CREDITORS.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN WHAT IS CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. NO REPRESENTATIONS CONCERNING THE DEBTOR, OR THE VALUE OF ITS PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN AND THE DEBTOR'S SCHEDULES. ANY INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN AND THEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR INTEREST. THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b).

1

**Special Notice Regarding Federal and State Securities Laws**

This Combined Disclosure Statement and Plan and the securities that may be issued pursuant to the Plan have not been approved or disapproved by the Securities and Exchange Commission (the "SEC") or by any state securities commission or similar public, governmental, or regulatory authority, and neither the SEC nor any such authority has passed upon the accuracy or adequacy of the information contained in this Combined Disclosure Statement and Plan or upon the merits of the Plan.  No such authority, other than the Bankruptcy Court, has made or will make any finding or determination relating to the fairness or feasibility of the Plan.  Any representation to the contrary is a criminal offense.

The Debtor intends to rely on one or more exemptions from registration under the Securities Act and Blue Sky Laws with respect to the offer, issuance, and distribution of any New Equity under the Plan.

To the extent applicable, the offer, issuance and distribution of any New Equity under the Plan shall be made pursuant to section 1145(a) of the Bankruptcy Code. Any securities issued in reliance on section 1145 of the Bankruptcy Code will not constitute "restricted securities" under the Securities Act and may be freely transferable by the recipients thereof, subject to (a) applicable securities laws relating to the transfer of securities by affiliates of the issuer, (b) any applicable contractual restrictions on transfer, and (c) any applicable provisions of the Plan or the organizational documents of the issuer. For the avoidance of doubt, any Person that is deemed an "underwriter" within the meaning of section 1145(b) of the Bankruptcy Code shall not be entitled to freely transfer securities issued pursuant to section 1145 of the Bankruptcy Code except in compliance with the Securities Act.

To the extent that the exemption provided by section 1145 of the Bankruptcy Code is unavailable with respect to any New Equity issued under the Plan, the Debtor intends to rely on other available exemptions from registration under the Securities Act, including section 4(a)(2) thereof or Regulation D promulgated thereunder. Any securities issued in reliance on such exemptions shall constitute "restricted securities" within the meaning of the Securities Act and may not be offered, sold, exchanged, assigned, or otherwise transferred unless such securities are registered under the Securities Act or an exemption from registration is available, and in each case in compliance with any applicable state or foreign securities laws (including Blue Sky Laws).  Certificates or other instruments evidencing such securities (or book-entry positions representing such securities) may bear a legend or other notation reflecting such transfer restrictions. Holders of such securities should be aware that they may be required to bear the financial risk of their investment for an indefinite period of time.

This Combined Disclosure Statement and Plan does not constitute an offer to sell or the solicitation of an offer to buy securities in any state or jurisdiction in which such offer or solicitation is not authorized or to any person to whom it is unlawful to make such offer or solicitation.  This Combined Disclosure Statement and Plan has been prepared in

2

accordance with section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016(b). Dissemination of this Combined Disclosure Statement and Plan is controlled by Bankruptcy Rule 3017. This Combined Disclosure Statement and Plan was prepared to provide parties in interest in the Chapter 11 Case with "adequate information" (as defined in section 1125 of the Bankruptcy Code) so that those creditors who are entitled to vote with respect to the Plan can make an informed judgment regarding such vote on the Plan. Nothing herein should be construed as legal, tax, financial, or investment advice.

Information contained herein is subject to completion or amendment. The Debtor reserves the right to file an amended Plan and related disclosure statement from time to time, subject to the terms of the Plan, the Bankruptcy Code and applicable Bankruptcy Rules. The effectiveness of the Plan is subject to several conditions precedent. There is no assurance that these conditions will be satisfied or waived. The Debtor expressly disclaims any obligation to update or revise any information contained herein, except as required by applicable law or order of the Bankruptcy Court. No person has been authorized by the Debtor in connection with the Plan or the solicitation thereof to give any information or to make any representation other than as contained in this Combined Disclosure Statement and Plan and the Exhibits, notices and schedules attached to or incorporated by reference or referred to in this Combined Disclosure Statement and Plan, and, if given or made, such information or representation may not be relied upon as having been authorized by the Debtor.

Except where specifically noted, the financial information contained herein has not been audited by a certified public accountant and has not been prepared in accordance with generally accepted accounting principles. Any financial projections, while presented with numerical specificity, necessarily were based on a variety of estimates and assumptions that are inherently uncertain and may be beyond the control of the Debtor's management. Actual results may differ materially from those set forth in such projections, and no representation or warranty is made as to the achievability of such projections. Certain information contained herein may constitute forward-looking statements within the meaning of applicable securities laws, which are subject to risks and uncertainties. Important factors that may affect actual results and cause the management forecasts not to be achieved include, but are not limited to, risks and uncertainties relating to the Debtor's business (including its ability to achieve strategic goals, objectives, and targets over applicable periods), industry performance, the regulatory environment, general business and economic conditions, the effects of the Chapter 11 Case (including the Debtor's ability to confirm and consummate the Plan), the availability of financing, liquidity constraints, changes in applicable law, and other factors, many of which are beyond the Debtor's control and other factors. The Debtor cautions that no representations are made as to the accuracy, completeness, or reliability of these projections, or to the Debtor's ultimate performance compared to the information contained in the forecasts, and the forecasted results will be achieved. Therefore, any financial projections are provided for illustrative purposes only and may not be relied upon as a guarantee, assurance, or representation that actual results will occur or be realized.

This Combined Disclosure Statement and Plan may include "forward-looking statements," all of which are based on various estimates and assumptions that, while

considered reasonable by the Debtor as of the date hereof, are inherently subject to significant business, economic, competitive, regulatory, and other risks and contingencies. Such forward-looking statements are subject to inherent uncertainties. When used in this Combined Disclosure Statement and Plan, the words "may," "will," "could," "expect," "anticipate," "believe," "estimate," "plan," "intend," "aim" and similar expressions generally identify forward-looking statements. The Debtor has based these forward-looking statements on its current views with respect to future events and financial performance as of the date hereof. Actual results could differ materially from those projected in the forward-looking statements for any number of reasons, including those described herein. Although the Debtor believes that its plans, intentions, and expectations reflected in the forward-looking statements are reasonable, it cannot be sure that they will be achieved. These statements are only predictions and are not guarantees of future performance or results. Forward-looking statements are subject to known and unknown risks, uncertainties, and other factors that could cause actual results and performance to differ materially from any future results or performance contemplated by a forward-looking statement, including under the heading "Certain Risk Factors to be Considered Prior To Voting" below and elsewhere in this Combined Disclosure Statement and Plan. Accordingly, the Debtor does not undertake any obligation to, and expressly disclaims any duty to, provide any assurances that its expectations will be realized and cautions that actual results may differ materially from those in the forward-looking statements. All forward-looking statements attributable to the Debtor or persons or Entities acting on its behalf are expressly qualified in their entirety by the cautionary statements set forth in this Combined Disclosure Statement and Plan and the documents incorporated by reference herein. Forward-looking statements speak only as of the date on which they are made. Except as required by law, the Debtor expressly disclaims any obligation to revise or update any forward-looking statement, or to make any other forward-looking statements, whether as a result of new information, future events, or otherwise and undertakes no duty to publicly announce any such changes.

## INTRODUCTION

Shannon Wind, LLC hereby proposes this Plan for, among other things, the resolution of the outstanding Claims against, and Existing Equity Interests in, the Debtor. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. This Combined Disclosure Statement and Plan contains, among other things, a discussion of the Debtor's history, business, assets, events leading up to this Chapter 11 Case, treatment under the Plan, risk factors, projections, and certain other related matters. The Debtor urges all Holders of Claims entitled to vote on the Plan to review this Combined Disclosure Statement and the Plan in full before voting to accept or reject the Plan. There may be other agreements and documents that will be filed with the Bankruptcy Court that are referenced in the Plan and the Plan Supplement as Exhibits. All such Exhibits are incorporated into and are a part of the Plan as if set forth in full herein. Subject to the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to amend, supplement, amend and restate, modify, revoke or withdraw the Plan prior to the Effective Date.

Pursuant to Bankruptcy Court approved Bidding Procedures, the Debtor is soliciting offers for either (a) all or substantially all of the Debtor's assets pursuant to a

4

**Sale Transaction or (b) the Debtor's New Equity to be acquired pursuant to a New Equity Transaction, all as described in further detail in this Combined Disclosure Statement and Plan.  The Debtor reserves the right, in accordance with the Bidding Procedures and subject to Bankruptcy Court approval, to select the highest or otherwise best offer as the Successful Bid (as defined herein) and to proceed with and consummate a Sale Transaction, a New Equity Transaction, or any alternative restructuring transaction, or to abandon any such transaction, in each case as the Debtor determines in the exercise of its business judgment is in the best interests of its estate and stakeholders. No assurance can be given that any transaction will be consummated, or, if consummated, on the terms contemplated herein, and any such transaction may be modified at any time prior to consummation. Proceeds of any such transaction, if consummated, are expected to be used to fund distributions under the Plan, subject to the terms and conditions thereof.**

**ALL  HOLDERS  OF  CLAIMS  ENTITLED  TO  VOTE  ON  THE  PLAN  ARE ENCOURAGED  TO  READ  THIS  COMBINED  DISCLOSURE  STATEMENT  AND PLAN  IN  ITS  ENTIRETY,  AND  TO  CONSULT  WITH  AN  ATTORNEY,  BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I.
## DEFINITIONS AND INTERPRETATION

### A.     *Definitions.*

The  following  terms  shall  have  the  meanings  set  forth  below  (such  meanings  to  be equally applicable to both the singular and plural):

**1.1.**     "***510(b) Claim***" means any prepetition Claim that is subject to subordination pursuant to section 510(b) of the Bankruptcy Code or otherwise.

**1.2.**     "***Administrative Bar Date***" means the deadline for filing all requests for allowance and payment of Administrative Expense Claims, other than claims under section 503(b)(9) of the Bankruptcy Code, which, except in the case of Professional Fee Claims, shall be thirty (30) days after the Effective Date.  Professional Fee Claims shall be filed in accordance with the provisions of Section 2.2 herein.

**1.3.**     "***Administrative Expense Claim***" means a Claim for costs and expenses of administration of the Chapter 11 Case Allowed under Bankruptcy Code sections 503(b), 507(a)(2), 507(b), or, if applicable, 1114(e)(2), including, but not limited to: (a) any actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estate and operating the business of the Debtor; (b) compensation for legal, financial, advisory, accounting, and other services and reimbursement of expenses Allowed by the Bankruptcy Court under Bankruptcy Code sections 328, 330, 331, 363, or 503(b) to the extent incurred on or before the Effective Date; (c) all U.S. Trustee Fees; (d) any 503(b)(9) Claims; and (e) any Claims that have been designated "Administrative Claims" by Final Order of the Bankruptcy Court.

**1.4.**     "***Administrative Expense Claim Objection Deadline***" has the meaning set forth in Section 2.1 herein.

**1.5.** "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if such Entity were a debtor in a case under the Bankruptcy Code.

**1.6.** "*Allowed*" means, with respect to a Claim under this Plan, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim or Proof of Interest filed by the Bar Date or a request for payment of an Administrative Expense Claim filed by the Administrative Bar Date, as applicable (or for which Claim a Proof of Claim or Proof of Interest is not required under the Plan, the Bankruptcy Code, or a Final Order); (b) a Claim that is scheduled by the Debtor as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim or Proof of Interest, as applicable, has been timely filed; or (c) a Claim allowed for purposes of distributions in this Bankruptcy Case pursuant to the Plan or a Final Order; provided, that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no contrary or superseding Proof of Claim or Proof of Interest is or has been timely filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court. Unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtor or Reorganized Debtor, as applicable. For the avoidance of doubt, a Proof of Claim or Proof of Interest filed after the Bar Date or a request for payment of an Administrative Expense Claim filed after the Administrative Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim. "Allow" and "Allowing" shall have correlative meanings.

**1.7.** "*Assumed Contracts*" means those Executory Contracts and Unexpired Leases that are to be (i) designated by the Successful Bidder to be assumed by the Debtor and continue in force with the Reorganized Debtor in the event of a New Equity Transaction pursuant to and as set forth in any applicable New Equity Documents, the Bidding Procedures Order, or this Plan; (ii) designated by the Successful Bidder to be assumed by the Debtor and assigned to the Successful Bidder or its designee in the event of a Sale Transaction pursuant to and as set forth in any applicable Sale Documents, the Bidding Procedures Order, or this Plan; or (iii) designated by the Debtor to be assumed by the Debtor and/or assigned to the Liquidation Trust or Wind Down Debtor, as applicable, pursuant to and as set forth in any applicable Definitive Documents, the Plan Supplement, or this Plan.

**1.8.** "*Assumed Liabilities*" has the meaning set forth in any Sale Documents or New Equity Documents (or other such similar term as may be used in such Sale Documents or New Equity Documents).

6

**1.9.**    **"*Assumption and Assignment Notice*"** has the meaning provided in the Bidding Procedures Order.

**1.10.**    "***Auction***" means an auction (if any), conducted by the Debtor pursuant to the terms and conditions of the Bidding Procedures, to solicit bids for a Sale Transaction or New Equity Transaction.

**1.11.**    "***Avoidance Actions***" means any and all avoidance, recovery, subordination, or other claims, actions or remedies that may be brought by or on behalf of the Debtor or the Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under chapter 5, and section 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws, other than any such claims, actions, or remedies against a Released Party.

**1.12.**    "***Ballot***" means the form distributed by the Debtor or the Claims Agent to Holders of impaired Claims entitled to vote on this Plan on which the acceptance or rejection of this Plan is to be indicated.

**1.13.**    "***Bankruptcy Code***" means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

**1.14.**    "***Bankruptcy Court***" means the United States Bankruptcy Court for the Southern District of Texas, or any other court exercising competent jurisdiction over the Chapter 11 Case or any proceeding therein.

**1.15.**    "***Bankruptcy Rules***" means (a) the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States under section 2075 of title 28 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case, (b) the Local Rules, and (c) any chambers rules of the Bankruptcy Court.

**1.16.**    "***Bar Date***" means the applicable date established by the Bankruptcy Court under the Bar Date Order by which Proofs of Claim and Interests must be filed.

**1.17.**    "***Bar Date Order***" means the *Order Updating Deadlines for the Filing of Proofs of Claim, Including Requests for Payment Under Section 503(b)(9); (II) Approving the Form and Manner for Filing Proofs of Claim; (III) Approving the Form and Manner of Notice Thereof, Including Section 503(b)(9) Requests; and (IV) Granting Related Relief* [ECF No. 111].

**1.18.**    "***Bidding Procedures***" means procedures pursuant to the Bidding Procedures Order governing the submission and evaluation of bids to purchase all or substantially all of the Debtor's assets pursuant to a Sale Transaction or the New Equity pursuant to a New Equity Transaction.

**1.19.**    "***Bidding Procedures Order***" means the *Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, and the Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Approving Certain Bidding Procedures,*

7

*Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof*, Court approving the Bidding Procedures [ECF No. 66].

1.20.   **"*Blue Sky Laws*"** means any state or local laws, rules, or regulations of any governmental authority of any state of the United States governing the registration, qualification, or offering of securities.

1.21.   "***Business Day***" means any day other than a Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or a day on which banks are not open for general business in New York, New York.

1.22.   "***Cash***" means the legal currency of the United States and equivalents thereof.

1.23.   **"*Cash Collateral Budget*"** means the "Budget" or "Supplemental Budget," as applicable, as such terms are defined in the Final Cash Collateral Order.

1.24.   "***Cash Collateral Motion***" means the *Emergency Motion of Debtor for Interim and Final Orders (I) Authorizing the Debtor to Use Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; and (III) Granting Related Relief* [ECF No. 15].

1.25.   "***Causes of Action***" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws).

1.26.   "***CEI***" means Citigroup Energy Inc.

1.27.   "***Chapter 11 Case***" means the case under chapter 11 of the Bankruptcy Code to be commenced by the Debtor on the Petition Date in the Bankruptcy Court.

1.28.   "***Citibank***" means Citibank, N.A., as first lien administrative and collateral agent and second lien collateral agent under the Credit Documents.

1.29.   "***Claim***" means any "claim" as defined in section 101(5) of the Bankruptcy Code against the Debtor or property of the Debtor, including any Claim arising after the Petition Date.

1.30.   "***Claims Agent***" means Kurtzman Carson Consultants, LLC d/b/a Verita Global in its capacity as noticing, claims and solicitation agent for the Debtor pursuant to *the Order Authorizing the Employment and Retention of Kurtzman Carson Consultants, LLC dba Verita Global as Claims, Noticing, and Solicitation Agent* [ECF No. 6].

8

**1.31.** "***Claims Objection Deadline***" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other deadline as may be specifically fixed by the Plan Administrator, or by an order of the Bankruptcy Court for objecting to such Claims, including any order of the Bankruptcy Court extending any deadline to object to Claims under this Plan.

**1.32.** "***Claims Register***" means the official register of Claims maintained by the Claims Agent.

**1.33.** "***Class***" means a category of Claims or Interests established under Article III of this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**1.34.** "***Collateral***" means any property, wherever located, or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim.

**1.35.** "***Collateral Agreements***" means all agreements, instruments, and documents by or among any of the Debtor, the Prepetition Secured Parties, Holdings, and any other party, that provide for, evidence, implement, or perfect a Lien or other security interest in property of the Debtor to secure the payment or performance of the Prepetition Secured Obligations.

**1.36.** "***Combined Disclosure Statement and Plan***" means this combined disclosure statement and chapter 11 plan, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as the same may be altered, amended, or modified from time to time.

**1.37.** "***Conditional Approval and Procedures Order***" means the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation Procedures and Solicitation Packages, (III) Scheduling a Combined Hearing, (IV) Establishing Procedures for Objecting to the Plan, (V) Approving the Form, Manner, and Sufficiency of Notice of The Combined Hearing, and (VI) Granting Related Relief* [ECF No. 138].

**1.38.** "***Confirmation Date***" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**1.39.** "***Confirmation Hearing***" means a hearing to be held by the Bankruptcy Court regarding confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.40.** "***Confirmation Order***" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as may be amended, modified, or supplemented from time to time, which shall be in form and substance reasonably acceptable to CEI.

**1.41.** "***Credit Documents***" means, collectively, the Senior Secured Promissory Note, the Energy Hedge Agreements, and the Collateral Agreements.

9

**1.42.** "*Cure Amount*" has the meaning set forth in <u>Section 11.3</u> of this Plan.

**1.43.** "*Cure Dispute*" has the meaning set forth in <u>Section 11.3</u> of this Plan.

**1.44.** "*D&O Liability Insurance Policies*" means, collectively, all insurance policies (including any "tail policies" and all agreements, documents, or instruments related thereto) issued at any time to or providing coverage to the Debtor for current or former directors', managers', and officers' liability.

**1.45.** "*Debtor*" means Shannon Wind, LLC.

**1.46.** "*Definitive Documents*" means (a) this Combined Disclosure Statement and Plan; (b) the Confirmation Order; (c) the Conditional Approval and Procedures Order; (d) the Plan Supplement (as it may be amended); (e) the Liquidation Trust Agreement; (f) the Sale Documents and any and all other documentation required to consummate or close the Sale Transaction, if applicable; (g) the New Equity Documents and any and all other documentation required to implement, issue, and distribute the New Equity, if applicable; (h) the New Organizational Documents; and (i) any other agreements, documentation or instruments necessary or advisable to implement, consummate, or document the Restructuring Transactions, or any other transactions contemplated by the Plan (in each case, including all exhibits, schedules, amendments, modifications, supplements, appendices, annexes, instructions, and attachments thereto).

**1.47.** "*Disallowed*" means a finding or conclusion of law of the Bankruptcy Court in a Final Order, or provision in the Confirmation Order, disallowing a Claim or Interest.

**1.48.** "*Disbursing Agent*" means, as applicable, (a) the Debtor, solely with respect to distributions that are required to be made prior to or on the Effective Date as contemplated under the Plan, (b) the Plan Administrator with respect to any amounts to be distributed from the Liquidation Trust, or (c) the Entity designated by the Debtor or Plan Administrator, as applicable, who may be the Claims Agent, to make distributions under this Plan.

**1.49.** "*Disclosure Statement*" means the disclosure statement, as amended, supplemented or modified from time to time, that is embodied within this Combined Disclosure Statement and Plan and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

**1.50.** "*Disputed Claim*" means, as of any relevant date, any Claim, or any portion thereof: (a) that is not an Allowed Claim as of the relevant date; and/or (b) is otherwise disputed by the Debtor or the Plan Administrator, as applicable, in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled; or (c) for which a Proof of Claim has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtor or any party in interest has interposed a timely objection or request for estimation, which objection or request for estimation has not been withdrawn or determined by a Final Order as of the relevant date.

**1.51.** "*Distribution Date*" means: (a) with respect to Administrative Expense Claims, Priority Non-Tax Claims, Priority Tax Claims, Other Secured Claims, and U.S. Trustee Fees, the

10

date that is the latest of: (i) the Effective Date; (ii) the date such Claim would be due and payable in the ordinary course of business; and (iii) any date that is within thirty (30) days after such Claim becomes an Allowed Claim or otherwise becomes payable under this Plan (or, if such date is not a Business Day, on the next Business Day thereafter); (b) with respect to Fee Claims, the date (or as soon thereafter as reasonably practicable) that such Claims become Allowed Claims; and (c) with respect to all other Claims, the date when distributions shall be made under the Plan; provided, however, notwithstanding the designation of a date for distributions under this Plan, the Debtor and Plan Administrator reserve all rights to object to any Claims or Interests unless such Claims or Interests are Allowed in accordance with the terms of this Plan.

1.52.    "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions under the Plan, which date shall be the Confirmation Date.

1.53.    "*Effective Date*" means the date specified by the Debtor in a notice filed with the Bankruptcy Court as the date on which this Plan shall take effect, which date shall be the first Business Day on which all of the conditions set forth in Section 12.2 of this Plan have been satisfied or waived and no stay of the Confirmation Order is in effect.

1.54.    "*Energy Hedge Agreements*" has the meaning provided in Section 5.3 of this Combined Disclosure Statement and Plan.

1.55.    "*Energy Hedge Obligations*" means all obligations owing by the Debtor to the Prepetition Secured Parties under the Energy Hedge Agreements, including any early termination amounts, liquidated damages arising, tracking account obligations, and any additional fees, costs, and expenses (including advisory fees) owing under or in connection therewith.

1.56.    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.57.    "*Equity Interest*" means collectively, the shares (or any class thereof) of limited liability company interests, and any other equity, ownership, membership, or profits interests of the Debtor, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of capital stock (including common stock and preferred stock), limited liability company interests, or other equity, ownership, membership, or profits interests of the Debtor.

1.58.    "*Estate*" means the estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.59.    "*Excluded Assets*" has the meaning set forth in any Sale Documents or New Equity Documents (or other such similar term as may be used in such Sale Documents or New Equity Documents).

1.60.    "*Exculpated Party*" means the Debtor, to the maximum extent permitted by law.

1.61.    "*Exculpation*" means the exculpation provision set forth in Article XIII of the Plan.

11

**1.62.** "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

**1.63.** "*Existing Equity Interests*" means the Equity Interests in the Debtor existing as of the Effective Date.

**1.64.** "*Fee Claim*" means a Claim by a Professional Person for compensation, indemnification or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103(a) of the Bankruptcy Code in connection with the Chapter 11 Case, including in connection with final fee applications of such Professional Persons.

**1.65.** "*Final Cash Collateral Order*" means the *Final Order (I) Authorizing the Debtor to Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; and (III) Granting Related Relief* [ECF No. 67].

**1.66.** "*Final Order*" means an order, ruling or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Case (or by the clerk of such other court of competent jurisdiction on the docket of such court), which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure has been or may be filed with respect to such order or judgment; provided, further, that no order or judgment shall fail to be a Final Order solely because of the susceptibility of a Claim to a challenge under section 502(j) of the Bankruptcy Code.

**1.67.** "*General Unsecured Claim*" means any unsecured Claim, other than an Administrative Expense Claim, a Priority Non-Tax Claim, or a Priority Tax Claim, including, without limitation, Claims arising from the rejection of Executory Contracts and Unexpired Leases, and Claims arising from any litigation or other court, administrative or regulatory proceeding, including damages or judgments entered against, or settlement amounts owing by, the Debtor in connection therewith.

**1.68.** "*Governmental Bar Date*" means July 24, 2026, at 5:00 p.m., prevailing Central Time.

**1.69.** "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

**1.70.** "*GUC Recovery Contribution*" means the lesser of (a) $150,000.00 or (b) Cash sufficient to satisfy all General Unsecured Claims, which amount shall be funded from the

12

Debtor's Cash on hand and Restructuring Transaction Proceeds on the Effective Date and contributed to the Liquidation Trust.  The GUC Recovery Contribution is a contribution by the Prepetition Secured Parties to the Liquidation Trust from the proceeds of Collateral securing the Prepetition Secured Obligations.

      **1.71.**    "***Holder***" means any Entity or Person holding a Claim or Interest.

      **1.72.**    "***Interests***" means the Equity Interests.

      **1.73.**    "***Lien***" has the meaning set forth in section 101(37) of the Bankruptcy Code.

      **1.74.**    "***Liquidation Analysis***" means the liquidation analysis that will be included in the Plan Supplement.

      **1.75.**    "***Liquidation Trust***" shall mean the trust established under this Plan and the Liquidation Trust Agreement to hold legal and equitable title to the Liquidation Trust Assets.

      **1.76.**    "***Liquidation Trust Agreement***" shall mean the trust agreement in the form and substance reasonably acceptable to the Debtor, that, together with the terms of the Plan, establishes the Liquidation Trust and governs the powers, duties, and responsibilities of the Plan Administrator as trustee for the Liquidation Trust.  The Liquidation Trust Agreement shall be filed as part of the Plan Supplement.

      **1.77.**    "***Liquidation Trust Assets***" shall consist of the following: (i) all Retained Causes of Action, and proceeds thereof, belonging to the Debtor or its Estate that are not sold to a Successful Bidder pursuant to the Sale Documents or retained by the Reorganized Debtor pursuant to the New Equity Documents, as applicable; (ii) the GUC Recovery Contribution; (iii) the Net Restructuring Transaction Proceeds remaining, if any, after the distribution on account of the Prepetition Secured Obligations as provided in Section 4.3; (iv) all assets recovered by the Plan Administrator on behalf of the Liquidation Trust on or after the Effective Date through enforcement, resolution, settlement, collection, return, or otherwise; (v) all Excluded Assets; (vi) any proceeds of the foregoing; and (vii) any proceeds resulting from the Plan Administrator's investment of the Liquidation Trust Assets on or after the Effective Date.  For the avoidance of doubt, (a) all Causes of Action that are against Released Parties shall not be Liquidation Trust Assets, (b) the Professional Fee Escrow Account shall not be a Liquidation Trust Asset unless and until all Allowed Professional Fee Claims and Prepetition Secured Obligations are satisfied in full, and (c) the Wind Down Account shall be a Liquidation Trust Asset and the funds in such account shall be distributed as provided herein, including Sections 2.1, 4.1, and 8.7.

      **1.78.**    "***Liquidation Trust Expenses***" shall mean all reasonable legal and other fees and expenses incurred by the Plan Administrator on account of administration of the Liquidation Trust, including, without limitation, reasonable attorneys' fees and expenses, insurance costs, taxes, escrow expenses and all other costs of administering the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement.

**1.79.** "***Liquidation Trust Interests***" shall mean the non-transferable interests in the Liquidation Trust issued to the Liquidation Trust beneficiaries pursuant to this Plan and the Liquidation Trust Agreement.

**1.80.** "***Local Rules***" means the Bankruptcy Local Rules for the Southern District of Texas.

**1.81.** "***Net Restructuring Transaction Proceeds***" means the Debtor's Cash on hand as of the Effective Date, *plus* the Restructuring Transaction Proceeds, *less* (a) the Professional Fee Escrow Amount to be deposited in the Professional Fee Escrow Account, (b) the Wind Down Amount to be deposited in the Wind Down Account, and (c) the GUC Recovery Contribution to be contributed to the Liquidation Trust.

**1.82.** "***New Equity***" means, in the event the Successful Bid is for a New Equity Transaction, the membership interests in the Reorganized Debtor to be sold to the Successful Bidder under the terms of this Plan, the New Organizational Documents, the New Equity Documents, and the other applicable Definitive Documents.

**1.83.** "***New Equity Documents***" means one or more membership interest purchase agreements, subscription agreements, equity commitment agreements, or other agreements, instruments, pleadings, orders and related documents, including, without limitation, the applicable list of Assumed Contracts, pursuant to which the Debtor implements and consummates any New Equity Transaction.

**1.84.** "***New Equity Transaction***" means the sale of 100% of the New Equity to the Successful Bidder pursuant to the terms of this Plan, the New Organizational Documents, and the other applicable Definitive Documents.

**1.85.** "***New Organizational Documents***" means the new Organizational Documents of the Reorganized Debtor, to be entered into on the Effective Date, as part of the New Equity Transaction, including any necessary certificate of incorporation, limited liability company agreement, operating agreement, or similar agreements.

**1.86.** "***Non-Debtor Releasing Party***" means any Releasing Party that is not the Debtor.

**1.87.** "***Organizational Documents***" means, with respect to any Person other than a natural person, the documents by which such Person was organized or formed (such as a certificate of incorporation, certificate of formation, certificate of limited partnership, or articles of organization) or which relate to the internal governance of such Person (such as by-laws or a partnership agreement, or an operating, limited liability company or members agreement).

**1.88.** "***Other Priority Claim***" means any Claim other than an Administrative Expense Claim or a Priority Tax Claim that is entitled to priority of payment as specified in section 507(a) of the Bankruptcy Code.

**1.89.** "***Other Secured Claim***" means any Secured Claim against the Debtor other than the Prepetition Secured Obligations.

14

**1.90.** "*Person*" has the meaning set forth in section 101(14) of the Bankruptcy Code and also means any individual, corporation, partnership, association, indenture trustee, limited liability company, cooperative, organization, joint stock company, joint venture, estate, fund, trust, unincorporated organization, Governmental Unit or any political subdivision thereof, or any other Entity or organization of whatever nature.

**1.91.** "*Petition Date*" means the date on which the Debtor commenced the Chapter 11 Case.

**1.92.** "*Plan*" means this plan under chapter 11 of the Bankruptcy Code, that is embodied in this Combined Disclosure Statement and Plan, together with any amendments or modifications hereto as the Debtor may file hereafter in accordance with the terms of this Plan.

**1.93.** "*Plan Administrator*" means Accordion Partners, LLC, which shall act as the trustee of the Liquidation Trust and shall be responsible for reconciling Claims after the Effective Date, effectuating distributions from the Liquidation Trust Assets on account thereof, and providing all related services, including the services set forth in Article VIII of the Plan.

**1.94.** "*Plan Assumed Contracts List*" means the list or lists of Assumed Contracts that may be designated for assumption or assumption and assignment pursuant to the Plan, which may be included in preliminary form in the Plan Supplement.

**1.95.** "*Plan Documents*" means the documents, other than this Plan, to be executed, delivered, assumed, and/or performed in connection with the consummation of this Plan, including the documents to be included in the Plan Supplement and any and all exhibits to this Plan and the Disclosure Statement, each of which shall be in form and substance reasonably acceptable to CEI.

**1.96.** "*Plan Supplement*" means any compilation of documents and forms of documents (including term sheets), agreements, schedules, and exhibits to the Plan, each of which shall be in form and substance reasonably acceptable to CEI, including (i) the New Organizational Documents, (ii) the Schedule of Retained Causes of Action, (iii) the Restructuring Transactions Memorandum, (iv) the Liquidation Trust Agreement, (v) the Plan Assumed Contracts List, and (vi) any and all other documents necessary to effectuate the Restructuring Transactions or that are contemplated by the Plan, which shall be filed by the Debtor on or before the Plan Supplement Deadline, and additional documents, if any, filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

**1.97.** "*Plan Supplement Deadline*" means the deadline established by the Bankruptcy Court for the filing of the Plan Supplement.

**1.98.** "*Prepetition Secured Obligations*" means any Claim on account of the Energy Hedge Obligations and Senior Secured Promissory Note Obligations under or pursuant to the Credit Documents, including (i) prepetition accrued and unpaid principal, interest and fees and expenses (including professional fees) payable under the Credit Documents, and (ii) to the extent of the value of collateral securing such Prepetition Secured Obligations, postpetition interest and professional fees.

**1.99.** "*Prepetition Secured Parties*" means, collectively and individually, Citibank, as first lien administrative and collateral agent and second lien collateral agent under the Credit Documents, and CEI.

**1.100.** "*Priority Non-Tax Claim*" means any Claim, other than an Administrative Expense Claim, a Fee Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

**1.101.** "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.102.** "*Post-Closing Assumed Contracts List*" has the meaning provided in Section 11.2.

**1.103.** "*Pro Rata*" means, unless indicated otherwise, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

**1.104.** "*Professional Fee Claim*" means any Claim by a Professional Person for compensation for services rendered or reimbursement of expenses incurred by such Professional Person on or after the Petition Date through and including the Confirmation Date under sections 328, 330, 331, 503(b)(2), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (including transaction and success fees) to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional Person's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

**1.105.** "*Professional Fee Escrow Account*" means an account funded by the Debtor with Cash no later than the Effective Date in the amount equal to the Professional Fee Escrow Amount.

**1.106.** "*Professional Fee Escrow Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses the Professional Persons have incurred or will incur in rendering services in connection with the Chapter 11 Case prior to and as of the Effective Date, which shall be estimated pursuant to the method set forth in Article II of the Plan.

**1.107.** "*Professional Person(s)*" means all Persons (a) retained by order of the Bankruptcy Court in connection with the Chapter 11 Case, pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code, excluding any ordinary course professionals retained pursuant to an order of the Bankruptcy Court, or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.108.** "*Proof of Claim*" means a proof of Claim filed by a Holder of a Claim against the Debtor in the Chapter 11 Case.

**1.109.** "***Proof of Interest***" means a proof of Interest filed by a Holder of any Interest in the Debtor in the Chapter 11 Case.

**1.110.** "***Related Parties***" means collectively with respect to any Person or Entity, each of, and in each case solely in its capacity, such Person's or Entity's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory or subcommittee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, and any Person or Entity claiming by or through any of them, including such Related Parties' respective heirs, executors, estates, servants, and nominees.

**1.111.** "***Release Objection***" means an objection to the releases set forth in Article XIII of this Plan filed by any Holders of Claims or Interests prior to the deadline to object to confirmation of the Plan.

**1.112.** "***Released Parties***" means, collectively, and each solely in its capacity as such: (a) the Debtor, its Estate, and the Reorganized Debtor; (b) the Plan Administrator, including as trustee on behalf of the Liquidation Trust; (c) the Prepetition Secured Parties; (d) the CRO; (e) the Independent Manager; (f) Professional Persons retained by the Debtor; and (g) solely with respect to (b) through (f), each of such parties' Affiliates and Related Parties.

**1.113.** "***Releasing Parties***" means, collectively, and each solely in its capacity as such: (a) the Debtor, its Estate, and the Reorganized Debtor; (b) the Plan Administrator, including as trustee on behalf of the Liquidation Trust; (c) the Prepetition Secured Parties; (d) the CRO; (e) the Independent Manager; (f) the Successful Bidder; and (g) all Holders of Claims or Interests that (i) vote to accept or reject the Plan and do not timely make the Third-Party Release Opt-Out Election by checking the relevant box on their Ballots or submitting a Third-Party Release Opt-Out Form, thereby indicating such Holders' decision not to participate in the releases set forth in Article XIII of the Plan; (ii) are deemed to accept or reject the Plan and either do not timely make the Third-Party Release Opt-Out Election by submitting the Third-Party Release Opt-Out Form or do not file a Release Objection; (iii) do not vote to accept or reject the Plan, and either do not timely make the Third-Party Release Opt-Out Election by submitting the Third-Party Release Opt-Out Form or do not file a Release Objection; and (iv) all unimpaired creditors of the Debtor who either do not timely make the Third-Party Release Opt-Out Election by submitting the Third-Party Release Opt-Out Form or file a Release Objection.

**1.114.** "***Reorganized Debtor***" means on or after the Effective Date, the Debtor, as reorganized pursuant to this Plan pursuant to the New Equity Transaction, or any successors thereto, by merger, consolidation, reorganization or otherwise.

**1.115.** "***Restructuring Transactions***" means either (a) the New Equity Transaction or (b) the Sale Transaction, or (c) both the New Equity Transaction and the Sale Transaction, as the context requires.

**1.116.** "***Restructuring Transactions Memorandum***" means, solely in the event of the New Equity Transaction, a document to be included in the Plan Supplement that will set forth the material components of the Restructuring Transactions, including a summary of any transaction steps necessary to complete the Plan, which shall be in form and substance reasonably acceptable to CEI.

**1.117.** "***Restructuring Transaction Proceeds***" means all proceeds from consummation of the Sale Transaction or New Equity Transaction, as applicable, that are distributable or payable to the Estate, which proceeds shall consist of Cash.

**1.118.** "***Retained Causes of Action***" means all Causes of Actions, rights and claims described in the Schedule of Retained Causes of Action filed with the Plan Supplement.

**1.119.** "***Sale Documents***" means one or more asset purchase agreements, transition services agreements, other agreements, instruments, pleadings, orders and related documents, including, without limitation, the assignment and transfer of the applicable list of Assumed Contracts and bills of sale, pursuant to which the Debtor implements and consummates any Sale Transaction, which shall be in form and substance reasonably acceptable to CEI.

**1.120.** "***Sale Order***" means the order entered by the Bankruptcy Court authorizing and approving the Sale Transaction, each of which shall be in form and substance reasonably acceptable to CEI and the Successful Bidder.

**1.121.** "***Sale Process***" means the sale process conducted in accordance with the Bidding Procedures Order.

**1.122.** "***Sale Transaction***" means a sale of all or substantially all the assets of the Debtor, which may be through one or more sale of the assets of the Debtor, pursuant to the terms of this Plan, the Sale Documents, and the other applicable Definitive Documents.

**1.123.** "***Schedules***" means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial conformance with the official bankruptcy forms, as the same may have been amended, modified, or supplemented from time to time.

**1.124.** "***Schedule of Retained Causes of Action***" means the schedule of Retained Causes of Action, including any Retained Causes of Action that shall vest in the Reorganized Debtor or Liquidation Trust, as applicable, on the Effective Date, which will be contained in the Plan Supplement, which shall be in form and substance reasonably acceptable to CEI.

**1.125.** "***Secured Claim***" means a Claim: (a) that is secured by a valid, perfected and enforceable Lien on Collateral, to the extent of the value of the Claim Holder's interest in such Collateral as of the Confirmation Date; (b) to the extent that the Holder thereof has a valid right of setoff pursuant to section 553 of the Bankruptcy Code; or (c) otherwise Allowed pursuant to the Plan or order of the Bankruptcy Court as a secured claim.

18

**1.126.** "*Securities Act*" means the Securities Act of 1933, as amended.

**1.127. "*Senior Secured Promissory Note*"** means that certain Senior Secured Promissory Note in the principal amount of $5,000,000.00 executed by the Debtor in favor of CEI as energy hedge provider, and Citibank as first lien administrative and collateral agent.

**1.128.** "*Successful Bid*" means the bid(s), that the Debtor determines, in accordance with the Bidding Procedures, to be the highest and otherwise best offer for the benefit of the Estate under the Bidding Procedures, for either (i) all or substantially all of the Debtor's assets pursuant to a Sale Transaction or (ii) the New Equity to be acquired pursuant to a New Equity Transaction.

**1.129.** "*Successful Bidder*" means any Entity or Entities whose bid(s) for all or substantially all of the Debtor's assets or New Equity is determined to be the Successful Bid. For the avoidance of doubt, the Successful Bidder may be more than one Entity, submitting one or more bids, and if applicable, use of the term "Successful Bidder" herein may be read as "Successful Bidders." Where a Successful Bidder has consent rights (or is referenced) under the Plan, such consent rights (or reference) only apply to the extent such consent right (or reference) relates to the respective Successful Bidder's Restructuring Transaction.

**1.130. "*Supplemental Assumption and Assignment Notice*"** has the meaning provided in the Bidding Procedures Order.

**1.131.** "*Supplemental Plan Assumed Contracts List*" has the meaning set forth in Section 11.3 of this Plan.

**1.132.** "*Third-Party Release*" means the third-party release set forth in Article XIII of this Plan.

**1.133.** *"Third-Party Release Opt-Out Election"* means the election to be made by Holders of Claims by checking the relevant box on their Ballots or submitting a Third-Party Release Opt-Out Form.

**1.134. "*Third-Party Release Opt-Out Form*"** means the form to be submitted by Holders of Claims that do not receive or submit Ballots in accordance with the Solicitation Procedures Order.

**1.135.** "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

**1.136.** "*U.S. Trustee*" means the United States Trustee for Region 7.

**1.137.** "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

**1.138.** *"Wind Down"* means the administration and wind down of any remaining affairs of the Estate, as well as the dissolution and liquidation of the Wind Down Debtor's Estate, if applicable, after the Effective Date.

**1.139.** "*Wind Down Account*" means an account funded by the Debtor with Cash no later than the Effective Date, in the amount consistent with the Wind Down Budget, and administered thereafter by the Plan Administrator.

**1.140.** "*Wind Down Amount*" means, an amount funded from the Debtor's Cash on hand and Restructuring Transaction Proceeds on the Effective Date that is sufficient to fund (a) the payment in full of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims to the extent not otherwise assumed by the Successful Bidder or Reorganized Debtor under any Definitive Documents, (b) the costs to wind down the Estate and Chapter 11 Case and administer the Liquidation Trust in accordance with the Wind Down Budget.

**1.141.** "*Wind Down Budget*" means a budget, which shall be in form and substance reasonably acceptable to CEI, for the reasonable activities and expenses to be incurred by the Plan Administrator in winding down the Chapter 11 Case and administering the Liquidation Trust, which shall be set forth in the Plan Supplement, as it may be amended by the Debtor prior to the Effective Date.

**1.142.** "*Wind Down Debtor*" means, on or after the Effective Date, the Debtor if it is not a Reorganized Debtor pursuant to and under a New Equity Transaction.

### B.        *Interpretation; Application of Definitions and Rules of Construction.*

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein.  The use of "include" or "including" is without limitation, whether stated or not.  Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan.  Any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented.  References to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Equity Interests," "Holders of Interests," "Disputed Interests," and the like, as applicable.  Subject to the provisions of any contracts, certificates or articles of incorporation, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.  The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Any reference to an Entity as a Holder of a Claim or Interest includes that

20

Entity's successors and assigns.  Any reference to directors or board of directors includes managers, managing members or any similar governing body, as the context requires, and references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable limited liability company laws.

### C.       Appendices and Plan Documents.

All Plan Documents and appendices to this Plan are incorporated into this Plan by reference and are a part of this Plan as if set forth in full herein.  The documents contained in the exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  Holders of Claims and Interests may inspect a copy of the Plan Documents, once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or via the Claims Agent's website at https://veritaglobal.net/shannon/, or obtain a copy of any of the Plan Documents by a written request sent to the Claims Agent at the following address:

Shannon Wind Ballot Processing Center
c/o KCC dba Verita Global
222 N.  Pacific Coast Highway, Suite 300
El Segundo, CA 90245

### ARTICLE II.
### ADMINISTRATIVE EXPENSE CLAIMS,
### FEE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS

The Plan is the only plan for the Debtor.  All Claims and Interests, except Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims, are placed in the Classes set forth in Article III.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims have not been classified, and the Holders thereof are not entitled to vote on this Plan.

A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code.  However, a Claim or Interest is placed in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest and has not been paid, released or otherwise settled prior to the Effective Date.

### 2.1.    Administrative Expense Claims.

(a)       Time for Filing Administrative Expense Claims.

The Holder of an Administrative Expense Claim, other than (i) Fee Claims; or (ii) U.S. Trustee Fees that accrued on or before the Effective Date must file with the Bankruptcy Court and serve on the Plan Administrator proof of such Administrative Expense Claim no later than the Administrative Bar Date.  Such proof of Administrative Expense Claim must include at a

21

minimum: (1) the name of the Holder of the Administrative Expense Claim; (2) the asserted amount of the Administrative Expense Claim; (3) the basis of the Administrative Expense Claim; and (4) supporting documentation for the Administrative Expense Claim. **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED AND DISCHARGED.   IF   FOR   ANY   REASON   ANY   SUCH ADMINISTRATIVE EXPENSE CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.**

The Plan Administrator may settle Administrative Expense Claims in the ordinary course of business without further Bankruptcy Court approval.  The Debtor, the Wind Down Debtor, or the Plan Administrator, as applicable, may also choose to object to any Administrative Expense Claim no later than sixty (60) days following the filing of an Administrative Expense Claim (the "***Administrative Expense Claim Objection Deadline***"), subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court.  Unless the Debtor, the Wind Down Debtor, or the Plan Administrator, as applicable (or any other party with standing) object to a timely-filed and properly served Administrative Expense Claim, such Administrative Expense Claim will be deemed Allowed in the amount requested after expiration of the Administrative Expense Claim Objection Deadline (as may be extended).  In the event that the Debtor, the Wind Down Debtor, or the Plan Administrator object(s) to an Administrative Expense Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Expense Claim should be Allowed and, if so, in what amount.

(b)     Treatment of Administrative Expense Claims.

Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to a different treatment, on the applicable Distribution Date, or as soon thereafter as is reasonably practicable, the Holder of such Allowed Administrative Expense Claim shall receive Cash from the Wind Down Account in an amount equal to such Allowed Claim or such other treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code; provided, however, that, to the extent consistent with the Cash Collateral Budget, Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor, as debtor-in-possession, shall be paid in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such liabilities; provided, further, that (i) in the event of a New Equity Transaction, notwithstanding any provision of the Plan to the contrary, any Administrative Expense Claim that is designated in the New Equity Documents to be an Assumed Liability of the Reorganized Debtor, shall be assumed by and reinstated against the Reorganized Debtor and shall not be an obligation of the Debtor, its Estate, or the Liquidation Trust; and (ii) in the event of a Sale Transaction, any Administrative Expense Claim that is designated in the Sale Documents to be an Assumed Liability of the Successful Bidder shall be assumed by the Successful Bidder and shall not be an obligation of the Debtor, its Estate, or the Liquidation Trust.

22

For the avoidance of doubt, any Adequate Protection Superpriority Claims (as defined in the Final Cash Collateral Order) due and owing to the Prepetition Secured Parties shall be deemed satisfied by the distributions to the Prepetition Secured Parties provided in Section 4.3 of the Plan.

### 2.2.    *Fee Claims.*

(a)    Time for Filing Fee Claims.

Any Professional Person seeking allowance of a Fee Claim shall file with the Bankruptcy Court its final application for allowance of compensation for services rendered and reimbursement of expenses incurred on and prior to the Effective Date and in connection with the preparation and prosecution of such final application no later than forty-five (45) calendar days after the Effective Date or such other date as established by the Bankruptcy Court. Objections to such Fee Claims, if any, must be filed and served pursuant to the procedures set forth in the Confirmation Order.

(b)    Treatment of Fee Claims.

The Bankruptcy Court shall determine the Allowed amounts of Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and the Confirmation Order. The Plan Administrator shall pay Professional Fee Claims in Cash to such Professional Persons in the amount the Bankruptcy Court allows from funds held in the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court; provided that the Debtor's and the Wind Down Debtor's obligations to pay Allowed Professional Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow Account. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the Allowed amount of Professional Fee Claims owing to the Professional Persons, the Plan Administrator shall pay such amounts from the Liquidation Trust Assets within ten (10) Business Days after entry of the order approving such Professional Fee Claims.

No later than the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow Account with Cash on hand of the Debtor, including any Restructuring Transaction Proceeds, equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained by the Plan Administrator in trust solely for the Professional Persons and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full in Cash to the Professional Persons pursuant to one or more orders of the Bankruptcy Court. No Liens, Claims, or other types of interests of any kind shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. No funds held in the Professional Fee Escrow Account shall be property of the Estate of the Debtor, the Reorganized Debtor, the Liquidation Trust, or the Plan Administrator, as applicable. Notwithstanding the foregoing sentence, funding of the Professional Fee Escrow Account will not be reported as a disbursement from the Estate, and disbursements from the Professional Fee Escrow Account on account of payment of Allowed Professional Fee Claims will be reported as disbursements from the Estate on the relevant monthly operating report(s).

23

When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full in Cash to the Professional Persons pursuant to one or more orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall be remitted to the Plan Administrator and contributed to the Liquidation Trust without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.   Any further disbursements of such funds shall be reported in accordance with the Bankruptcy Rules.

The Professional Persons shall deliver to the Debtor a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtor (which estimate may include a cushion to cover unexpected or unknown fees) before and as of the Effective Date projected to be outstanding as of the anticipated Effective Date, and shall deliver such estimate no later than three (3) Business Days prior to the anticipated Effective Date.  For the avoidance of doubt, no such estimate shall be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of a Professional Person's final request for payment of Professional Fee Claims filed with the Bankruptcy Court, and such Professional Persons are not bound to any extent by the estimates.  If a Professional Person does not provide an estimate, the Debtor may estimate the unpaid and unbilled fees and expenses of such Professional Person for inclusion in the Professional Fee Escrow Amount.  The total aggregate amount so estimated to be outstanding as of the anticipated Effective Date shall be utilized by the Debtor to determine the amount to be funded to the Professional Fee Escrow Account; provided that the Plan Administrator shall use Liquidation Trust Assets to increase the amount of the Professional Fee Escrow Account to the extent fee applications are filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

Following the Effective Date, the Plan Administrator shall have authority with respect to matters related to Professional Fee Claim requests by Professional Persons, if any, acting at their direction in accordance with the terms of the Plan.

### 2.3.   *Priority Tax Claims.*

(a)   Time for Filing Priority Tax Claims.

The Holder of a Priority Tax Claim must file with the Bankruptcy Court and serve on the Wind Down Debtor, if applicable, the Plan Administrator, the Claims Agent, and the U.S. Trustee, proof of such Priority Tax Claim by the Governmental Bar Date.  Such proof of Priority Tax Claim must include at a minimum: (1) the name of the Holder of the Priority Tax Claim; (2) the asserted amount of the Priority Tax Claim; (3) the basis of the Priority Tax Claim; and (4) supporting documentation for the Priority Tax Claim. **FAILURE TO FILE AND SERVE SUCH PROOF OF PRIORITY TAX CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED AND DISCHARGED.  IF FOR ANY REASON ANY SUCH PRIORITY TAX CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.**

24

(b)      Treatment of Priority Tax Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, in exchange for full and final satisfaction, settlement, release, and the discharge of each Allowed Priority Tax Claim, either: (a) on the applicable Distribution Date, or as soon thereafter as is reasonably practicable, Cash from the Wind Down Account in an amount equal to such Claim; or (b) deferred Cash payments from the Wind Down Account following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the Holder of such Priority Tax Claim may be entitled calculated in accordance with section 511 of the Bankruptcy Code); provided that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid by the Plan Administrator from the Wind Down Account in the ordinary course of business as they become due; provided, further, that (i) in the event of a New Equity Transaction, notwithstanding any provision of the Plan to the contrary, any Priority Tax Claim that is designated in the New Equity Documents to be an Assumed Liability of the Reorganized Debtor, shall be assumed by and reinstated against the Reorganized Debtor and shall not be an obligation of the Debtor, its Estate, or the Liquidation Trust; and (ii) in the event of a Sale Transaction, any Priority Tax Claim that is designated in the Sale Documents to be an Assumed Liability of the Successful Bidder shall be assumed by the Successful Bidder and shall not be an obligation of the Debtor, its Estate, or the Liquidation Trust.  On the Effective Date, any Liens securing any Allowed Priority Tax Claims shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order or rule, or the vote, consent, authorization or approval of any Person.

**2.4.      *U.S. Trustee Fees and Related Reporting Obligations.***

All U.S. Trustee Fees that are due and owing as of the Effective Date shall be paid by the Debtor in full in Cash on the Effective Date.  The Debtor or the Plan Administrator shall file all monthly operating reports due prior to the Effective Date when they become due.  After the Effective Date, the Wind Down Debtor and/or the Reorganized Debtor, as applicable, shall file with the Bankruptcy Court separate reports when they become due.  After the Effective Date, the Wind Down Debtor and/or the Reorganized Debtor, as applicable, shall pay in Cash when due and payable the respective U.S. Trustee Fees allocated to such Wind Down Debtor's or Reorganized Debtor's operations and distributions.  For the avoidance of doubt, in the event of a New Equity Transaction, the Debtor, the Wind Down Debtor, the Liquidation Trust, and the Plan Administrator shall not be liable for any U.S. Trustee fees due or payable as a result of the Reorganized Debtor's operations and distributions following the Effective Date.

The Wind Down Debtor, the Reorganized Debtor and/or the Plan Administrator, as applicable, shall remain obligated to pay any applicable U.S. Trustee Fees until the earliest of the closure, dismissal, or conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code.

The U.S. Trustee shall not be treated as providing any release under the Plan.  U.S. Trustee Fees are Allowed.  The U.S. Trustee shall not be required to file any Proof of Claim or

25

any request for administrative expense for U.S. Trustee Fees.  The provisions of this paragraph shall control notwithstanding any other provision(s) in the Plan to the contrary.

**ARTICLE III.**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

### 3.1.    *Classification of Claims and Interests and Projected Recoveries.*

The following table designates the Classes of Claims against and Interests in the Debtor, and specifies which Classes are: (a) impaired or unimpaired by this Plan; (b) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code; or (c) deemed to accept or reject this Plan.  The table also provides a summary of projected distributions to Holders of Allowed Claims under the Plan.

| Class | Designation | Impaired | Entitled to Vote | Estimated Amount of Claims | Projected Recovery |
|---|---|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | No | No (deemed to accept) | $0.00 | 100% |
| Class 2 | Other Secured Claims | No | No (deemed to accept) | $0.00 | 100% |
| Class 3 | Prepetition Secured Obligations Claims[2] | Yes | Yes | $117,559,662.00 | 80-100% |
| Class 4 | General Unsecured Claims[3] | Yes | Yes | $35,000.00 to $790,000.00 | 19-100% |
| Class 5 | 510(b) Claims[4] | Yes | Yes | $0.00 | 0% |
| Class 6 | Existing Equity Interests[5] | Yes | Yes | N/A | $0.00 to UNKNOWN |

Except for the Claims addressed in <u>Article II</u> above (or as otherwise set forth herein), all Claims and Interests are placed in Classes as set forth above.  In accordance with section

---

[2] Disclosure is based on prepetition balance of Prepetition Secured Obligations Claims, including estimated professional fees, other recoverable expenses, and accrued interest.  Total amount of Prepetition Secured Obligations Claims is subject to final agreement by the Debtor and CEI, or order of the Bankruptcy Court, and may be greater than disclosed estimate depending upon allowance of postpetition professional fees, other recoverable expenses, and accrued interest consistent with section 506 of the Bankruptcy Code and the terms of the Plan.

[3] Disclosure is based upon scheduled unsecured claims, with lower end of range representing total of Claims that are not listed in the Schedules as contingent, unliquidated, or disputed and high end of range based on total of all Claims in the relevant Schedules.  The Debtor, Wind Down Debtor, and Plan Administrator reserve all objections to any filed or scheduled Claims.

[4] Class 5 is expected to be vacant and, pursuant to <u>Section 6.3</u> will likely be eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class.

[5] Class 6 is being solicited on the basis that a residual recovery to Existing Equity Interests is possible under the Plan depending upon the results of the Sale Process and total amount of Restructuring Transaction Proceeds.

26

1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims, as described in Article II.

If a controversy arises regarding whether any Claim is properly classified under the Plan for purposes of voting, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the Holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

**THE PROJECTED RECOVERIES SET FORTH ABOVE ARE FOR ILLUSTRATIVE PURPOSES ONLY AND ARE SUBJECT TO MATERIAL CHANGE.**

The chart above summarizes the projected distributions to holders of Allowed Claims against the Debtor under the Plan. Although every reasonable effort was made to be accurate, the projections of estimated recoveries are only estimates. Any estimates of Claims in this Combined Disclosure Statement and Plan may vary from the final amounts Allowed by the Bankruptcy Court. As a result of the foregoing and other uncertainties which are inherent in the estimates, any estimated recoveries in this Combined Disclosure Statement and Plan may vary from the actual recoveries received. In particular, projected recoveries are materially dependent upon the results of the Debtor's ongoing marketing and Sale Process and the final amount of the Restructuring Transaction Proceeds.

In addition, the ability to receive distributions under the Plan depends upon the ability of the Debtor to obtain confirmation of the Plan and meet the conditions to confirmation and effectiveness of the Plan, as discussed herein. The recoveries set forth above are projected recoveries only and may change based upon changes in the amount of Allowed Claims as well as other factors related to the implementation of the Plan. Reference should be made to the entire Combined Disclosure Statement and Plan for a complete description of the classification and treatment of Allowed Claims against the Debtor.

No representation or warranty, express or implied, is made as to the accuracy or completeness of the projected recoveries, and the Debtor expressly disclaims any obligation to update or revise such projections except as required by applicable law or order of the Bankruptcy Court.

The Debtor urges all Holders of Claims and Interests to read the Certain Risk Factors to be Considered Prior to Voting in Article VII of this Combined Disclosure Statement and Plan. Holders of Claims and Interests are encouraged to conduct their own independent analysis.

### 3.2.   *Unimpaired Classes of Claims.*

The following Classes of Claims are unimpaired and, therefore, deemed to have accepted this Plan and are not entitled to vote on this Plan under section 1126(f) of the Bankruptcy Code:

(a)      Class 1: Class 1 consists of all Priority Non-Tax Claims.

27

(b)      Class 2: Class 2 consists of all Other Secured Claims.

### 3.3.    *Impaired Classes of Claims and Interests.*

The following Classes of Claims are impaired and entitled to vote on this Plan:

(a)      Class 3: Class 3 consists of all Prepetition Secured Obligations Claims.

(b)      Class 4: Class 4 consists of all General Unsecured Claims.

(c)      Class 5: Class 5 consists of all 510(b) Claims.

(d)      Class 6: Class 6 consists of all Existing Equity Interests.

### 3.4.    *Separate Classification of Other Secured Claims.*

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on Collateral different than that securing any additional Other Secured Claims, shall be treated as being in a separate sub-Class for the purpose of receiving distributions under this Plan.

### ARTICLE IV.
### TREATMENT OF CLAIMS AND INTERESTS

### 4.1.    *Priority Non-Tax Claims (Class 1).*

(a)      Treatment: The legal, equitable and contractual rights of the Holders of Allowed Priority Non-Tax Claims are unaltered by the Plan.  In full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Priority Non-Tax Claim, except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a lesser treatment, on the applicable Distribution Date, each Holder of an Allowed Priority Non-Tax Claim shall receive (at the election of the Debtor or Plan Administrator): (i) Cash from the Wind Down Account in an amount equal to such Allowed Claim; or (ii) such other treatment that will render such Allowed Priority Non-Tax Claim unimpaired pursuant to section 1124 of the Bankruptcy Code.  Provided, that (i) in the event of a New Equity Transaction, notwithstanding any provision of the Plan to the contrary, any Priority Non-Tax Claim that is designated in the New Equity Documents to be an Assumed Liability of the Reorganized Debtor, shall be assumed by and reinstated against the Reorganized Debtor and shall not be an obligation of the Debtor, its Estate, or the Liquidation Trust; and (ii) in the event of a Sale Transaction, any Priority Non-Tax Claim that is designated in the Sale Documents to be an Assumed Liability of the Successful Bidder shall be assumed by the Successful Bidder and shall not be an obligation of the Debtor, its Estate, the Wind Down Debtor, or the Liquidation Trust.

(b)      Voting: Priority Non-Tax Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Priority Non-Tax Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan,

28

and the votes of such Holders will not be solicited with respect to such Allowed Priority Non-Tax Claims.

### 4.2.   *Other Secured Claims (Class 2).*

(a)   Treatment: The legal, equitable and contractual rights of the Holders of Allowed Other Secured Claims are unaltered by the Plan.   In full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Other Secured Claim, except to the extent that a Holder of an Allowed Other Secured Claim agrees to a different treatment, on the applicable Distribution Date each Holder of an Allowed Other Secured Claim shall receive: (i) Cash in an amount equal to such Allowed Claim; or (ii) such other treatment that will render such Other Secured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code; provided, however, that, to the extent consistent with the Cash Collateral Budget, Other Secured Claims incurred by a Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto, without further notice to or order of the Bankruptcy Court; provided, further, that (i) in the event of a New Equity Transaction, notwithstanding any provision of the Plan to the contrary, any Other Secured Claim that is designated in the New Equity Documents to be an Assumed Liability of the Reorganized Debtor, shall be assumed by and reinstated against the Reorganized Debtor and shall not be an obligation of the Debtor, its Estate, or the Liquidation Trust; and (ii) in the event of a Sale Transaction, any Other Secured Claim that is designated in the Sale Documents to be an Assumed Liability of the Successful Bidder shall be assumed by the Successful Bidder and shall not be an obligation of the Debtor, its Estate, the Wind Down Debtor, or the Liquidation Trust.

Each Holder of an Allowed Other Secured Claim shall retain the Liens securing its Allowed Other Secured Claim as of the Effective Date until full and final satisfaction of such Allowed Other Secured Claim is made as provided herein.   Upon the full payment or other satisfaction of each Allowed Other Secured Claim in accordance with the Plan, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person and the Holder of such Claims shall deliver to the Debtor, Reorganized Debtor, or Plan Administrator, as applicable, any Collateral or other property of the Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Claims that may be reasonably required to terminate any related financing statements, guaranties, or *lis pendens*, or similar interests or documents. Furthermore, upon full payment or other satisfaction of the foregoing Claims, on or after the Effective Date the Debtor, Reorganized Debtor, or Plan Administrator, as applicable, at its expense, may, in its sole discretion, take any action necessary to terminate, cancel, extinguish, or evidence the release of any and all guaranties, pledges, and other security interests with respect to such Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any guaranties, mortgages, deeds of trust, Liens, pledges, and other security interests, including, without limitation, UCC-3 termination statements.

(b) <u>Deficiency Claims</u>: To the extent that the value of the Collateral securing any Other Secured Claim is less than the Allowed amount of such Other Secured Claim, the undersecured portion of such Allowed Claim shall be treated for all purposes under this Plan as a General Unsecured Claim, only as applicable, and shall be classified and treated as a Class 4 Claim.

(c) <u>Voting</u>: The Other Secured Claims are not impaired Claims. In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Other Secured Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Allowed Other Secured Claims.

### 4.3. *Prepetition Secured Obligations Claims (Class 3).*

(a) <u>Treatment</u>:

(i) On the Effective Date, as provided in the Final Cash Collateral Order, the Prepetition Secured Obligations shall be Allowed under this Plan in the prepetition principal amount set forth in the Final Cash Collateral Order, plus accrued and unpaid prepetition interest, fees and expenses (including advisory fees) subject to reimbursement under the Credit Documents. In full and final satisfaction, compromise, settlement, release, and discharge of the Prepetition Secured Obligations, except to the extent that the Prepetition Secured Parties agree to less favorable treatment, on the Effective Date, the Prepetition Secured Parties shall receive the Net Restructuring Transaction Proceeds, in Cash, up to the Allowed amount of the Prepetition Secured Obligations, plus postpetition interest and professional fees to the extent of available Net Restructuring Transaction Proceeds; and

(ii) In the event the Prepetition Secured Obligations are not satisfied in full on the Effective Date from the Net Restructuring Transaction Proceeds, (x) first, the Plan Administrator shall distribute to the Prepetition Secured Parties the proceeds of any Collateral securing the Prepetition Secured Obligations that are Liquidation Trust Assets, if any, up to the Allowed amount of the Prepetition Secured Obligations; and (y) second, to the extent there is Cash available for distribution from the Liquidation Trust after satisfaction in full of all Allowed General Unsecured Claims, then such Cash shall be paid to the Prepetition Secured Parties up to the Allowed amount of the Prepetition Secured Obligations; <u>provided</u>, <u>however</u>, prior to making any distribution under this paragraph, the Plan Administrator must first ensure there is a sufficient reserve in the Liquidation Trust to satisfy all Liquidation Trust Expenses and the Wind Down Amount.

(b)     Voting: The Prepetition Secured Obligations are impaired Claims.  The Holder of such Claims are entitled to vote to accept or reject the Plan, and the vote of such Holder will be solicited with respect to such Prepetition Secured Obligations.

### 4.4.     *General Unsecured Claims (Class 4).*

(a)     Treatment: In full and final satisfaction, compromise, settlement, release, and discharge of each Allowed General Unsecured Claim against the Debtor, except to the extent that a Holder of a General Unsecured Claim agrees to less favorable treatment, on the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed General Unsecured Claim against the Debtor shall receive its Pro Rata share of the Liquidation Trust Interests entitling each holder of Allowed General Unsecured Claims to receive its Pro Rata share of distributions from the Liquidation Trust up to the full Allowed amount of such holder's General Unsecured Claim; provided, that (i) in the event of a New Equity Transaction, notwithstanding any provision of the Plan to the contrary, any General Unsecured Claim that is designated in the New Equity Documents to be an Assumed Liability of the Reorganized Debtor, shall be assumed by and reinstated against the Reorganized Debtor and shall not be an obligation of the Debtor, its Estate, or the Liquidation Trust; and (ii) in the event of a Sale Transaction, any General Unsecured Claim that is designated in the Sale Documents to be an Assumed Liability of the Successful Bidder shall be assumed by the Successful Bidder and shall not be an obligation of the Debtor, its Estate, the Wind Down Debtor, or the Liquidation Trust.

(b)     Voting: The General Unsecured Claims against the Debtor are impaired Claims.  Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited with respect to such General Unsecured Claims against the Debtor.

### 4.5.     *510(b) Claims (Class 5).*

(a)     Treatment: In full and final satisfaction, compromise, settlement, release, and discharge of each Allowed 510(b) Claim, except to the extent that a Holder of an Allowed 510(b) Claim agrees to less favorable treatment, and conditioned upon satisfaction in full in Cash of all Allowed Claims that are senior to 510(b) Claims in priority of payment pursuant to the Bankruptcy Code (after taking into account a sufficient reserve to satisfy all Liquidation Trust Expenses), each Holder of a 510(b) Claim against the Debtor shall receive its Pro Rata share of the remaining Cash available for distribution from the Liquidation Trust.

(b)     Voting: The 510(b) Claims are impaired Claims.  Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited with respect to such 510(b) Claims.

### 4.6.     *Existing Equity Interests (Class 6).*

(a)     Treatment: In full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Existing Equity Interest, except to the extent that a Holder of an Allowed Existing Equity Interest agrees to less favorable treatment, and conditioned upon satisfaction in full in Cash of all Allowed Claims that are senior to Existing Equity Interests in priority of payment pursuant to the Bankruptcy Code (after taking into account a sufficient

31

reserve to satisfy all Liquidation Trust Expenses) each Holder of an Existing Equity Interest Claim against the Debtor shall receive its Pro Rata share of the remaining Cash available for distribution from the Liquidation Trust.

(b)    Voting: The Existing Equity Interests are impaired Interests.  Holders of such Interests are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited with respect to such Existing Equity Interests.

**ARTICLE V.**
**BACKGROUND AND DISCLOSURES**

### 5.1.    *General Background.*

The Debtor owns a 204.1-megawatt ("*MW*") wind farm in Clay County, Texas (the "*Project*"), which consists of 119 General Electric 1.7-103 wind turbines.  The Project began commercial operations in December 2015.  The Project is interconnected with and delivers electric energy, capacity, and ancillary services, as applicable, into the Electric Reliability Council of Texas ("*ERCOT*") grid, pursuant to an interconnection agreement with Oncor Electric Delivery Co., and subject to market rules, curtailment, and systems conditions.

The Debtor does not have any employees.  Accordion Partners, LLC was hired as an independent contractor to provide professional restructuring and financial advisory services to the Debtor, with John Shepherd of Accordion Partners, LLC being appointed as Chief Restructuring Officer (the "*CRO*") of the Debtor.  Consolidated Asset Management Services ("*CAMS*") provides administrative and asset management services for the Project.  GE Vernova International LLC ("*GEV*") provides the Debtor operation, monitoring, and maintenance services with respect to the wind turbine generators.  Tenaska Power Services Co. ("*Tenaska*") acts as the exclusive qualified scheduling entity and energy manager for the Debtor.  Among other things, Tenaska manages all operational functions with ERCOT and markets all the Project's production.

The Project currently has full merchant exposure for its production.  Previously, the Debtor had a long-term hedge / fixed-price sale arrangement in place with CEI that functioned as a hedge against the ERCOT spot market (the "*Energy Hedge Agreement – Power*", as defined below).  Effective as of September 17, 2025, CEI terminated the Energy Hedge Agreement – Power with the Debtor due to the Debtor's failure to satisfy its obligations thereunder to CEI. The Debtor continues to sell Renewable Energy Certificates ("*RECs*") generated by power produced by the Project to CEI (the "*Energy Hedge Agreement – REC and Capacity*", as defined below).

The Debtor holds long-term control over the real estate encompassing the Project through multiple leases and an easement.

### 5.2.    *The Debtor's Corporate Structure.*

The Debtor is wholly owned by Shannon Wind Holdings, LLC ("*Holdings*").  The Class A "tax equity" interests in Holdings are owned by Citicorp North America, Inc.  and MidAmerican Wind Tax Equity Holdings, LLC. The Class B interests in Holdings are owned by

32

Shannon Partnership Holdings, LLC, which is ultimately owned by Lotus Infrastructure Partners (or its Affiliates, collectively, "***Lotus***"), a private equity firm that targets investments in energy infrastructure assets.

### 5.3.    *The Debtor's Prepetition Capital Structure.*

As of the Petition Date, the Debtor had $5.1 million in funded debt obligations, with an additional approximately $102.9 million owing to CEI under the Debtor's Energy Hedge Agreement - Power, exclusive of accrued and accruing professional fees, as summarized in the table below:

| Owed to CEI (000s) | |
| --- | --- |
| Energy Hedge Agreement - Power | 102,936 |
| Protective Advance Note | 5,154 |
| **Total Owed to CEI** | **108,090** |

On or about June 29, 2015, the Debtor and CEI entered into (i) that certain ISDA 2002 Master Agreement, along with various schedules and annexes thereto, and associated Power Confirmation (the "***Energy Hedge Agreement – Power***") and (ii) that certain ISDA 2002 Master Agreement (REC and Capacity Transactions), along with various schedules and annexes thereto (the "***Energy Hedge Agreement – REC and Capacity***" and, collectively with the Energy Hedge Agreement - Power, the "***Energy Hedge Agreements***").

The Energy Hedge Agreements are secured by substantially all assets of the Debtor, as well as a pledge of Holdings' membership interests in the Debtor.

Upon satisfaction of the obligations under the development construction credit agreement, the Debtor's obligations under the Energy Hedge Agreements became secured by a first priority lien against substantially all the Debtor's assets.

The Debtor's obligations under the Energy Hedge Agreement - Power and Protective Advance Note (as defined below) total approximately $108.1 million, calculated as set forth in the table above, not including accrued and unpaid fees and expenses under the Energy Hedge Agreements.

On September 29, 2025, CEI notified the Debtor of the occurrence of an event of default and termination under the REC ISDA.  While such notice was sent, CEI has not as of this date declared an early termination date under the REC ISDA, so amounts that may be owing under the REC ISDA are not determined as of the date hereof but are estimated to be approximately $1,800,000.00.

On or about November 5, 2025, the Debtor and CEI entered into that certain Senior Secured Promissory Note in the amount of $5,000,000.00 to fund the business and operations of the Debtor.

The obligations under the Senior Secured Promissory Note are secured by a first-priority lien against substantially all assets of the Debtor that is *pari passu* with the lien securing obligations under the Energy Hedge Agreements.

### 5.4.    *Events Leading to Chapter 11.*

(a)    *The Debtor's Energy Hedge Obligations*

Like many other renewable energy generators, the Debtor executed hedge agreements to lock in predictable cash flow and reduce merchant price risk.

The Debtor's Energy Hedge Agreements were executed in 2015 with CEI and generally required the Debtor to provide CEI a fixed quantity of electricity in exchange for a fixed price of $26.20 per megawatt-hour ("***MWh***").

As discussed above, the Debtor continues to sell RECs generated by power produced by the Project to CEI (the Energy Hedge Agreement – REC and Capacity), at the fixed rate of $0.75 per REC.

(b)    *Winter Storm Uri*

In February 2021, during Winter Storm Uri, Texas experienced extreme conditions, including freezing temperatures and dangerous weather, which prompted state and federal disaster declarations and caused widespread power outages.  The wind turbines at the Project suffered significant blade icing that impeded energy production during the winter storm.

As a result of the intense storm conditions and widespread outages, ERCOT and the Public Utility Commission of Texas ("***PUCT***") issued orders, the effect of which was to raise the market price of electricity to the regulatory ceiling of $9,000/MWh.  This price increase was purportedly intended to reflect the scarcity of supply, thereby incentivizing generators capable of adding supply to do so and large industrial users to reduce their demand.  The price change remained in place for approximately four days.

Because the Debtor was producing little or no energy, it could not fulfill its obligations to deliver electricity at the low, fixed hedge price.  Instead, under its hedge agreements, the Debtor was liable to purchase the required electricity at the price that was set at the regulatory ceiling of $9,000/MWh.

Facing the winter storm and actions by ERCOT and PUCT, the Debtor issued notices to CEI asserting a force majeure event that would excuse its obligations under the Energy Hedge Agreements.

Notwithstanding the notices from the Debtor, on or around March 11, 2021, CEI issued an invoice to Shannon Wind under the Energy Hedge Agreement – Power in the amount of $39,486,641.34, which was primarily calculated for alleged delivery shortfalls at or by reference to the imposed $9,000/MWh pricing during Winter Storm Uri.

34

The Debtor disputed CEI's invoice but did not have sufficient cash to satisfy the demand for payment.  Following the Debtor's failure to pay, CEI issued notices of default to the Debtor.

(c)     *Debtor Sues CEI*

Following CEI's demand and default notices under the Power Hedge Agreements, in April 2021, the Debtor and Holdings sued CEI in the District Court of Harris County, Texas.

In the state court litigation, the Debtor and Holdings alleged, among other things, that they were entitled to declaratory judgments that the Debtor was excused from performing its obligations under the Energy Hedge Agreements as a result of a force majeure event, CEI's $39 million invoice was not calculated properly, the invoice was an unenforceable penalty, there was no event of default under the Energy Hedge Agreements, and CEI's notice of default was not valid.  The Debtor also asserted a claim for breach of contract against CEI.

The Debtor and Holdings requested a temporary restraining order and injunction to stop any enforcement actions by CEI pending a resolution of the disputes raised in the litigation.

The state court granted the Debtor and Holdings a temporary restraining order but later denied their request for a preliminary injunction.  The state court ultimately dismissed the lawsuit against CEI in February 2023.  Similar challenges to the ERCOT and PUCT orders brought by other ERCOT energy providers were also unsuccessful.

(d)     *Additional Events of Default and Remedial Actions*

During the Texas state court litigation discussed above, CEI issued additional notices of default to the Debtor under the Power Hedge Agreements.  On or about April 13, 2022, CEI exercised remedies under its collateral documents to direct Citibank, as first lien collateral agent to, among other things, deliver an account stop notice to the Debtor and take other actions, which resulted in a cash sweep of the collateral accounts in the amount of approximately $14,000,000 in partial satisfaction of the outstanding amounts.

(e)     *Negotiations Among the Debtor and CEI*

CEI's notices of default to the Debtor, CEI, Citibank, and principals of Lotus engaged in negotiations to resolve the Debtor's obligations over the course of several years, including dozens of discussions and exchanges regarding amounts owed and proposals to satisfy the debt. However, the parties never reached agreement on an actionable plan.

(f)     *Appointment of CRO*

On or about September 16, 2025, CEI exercised certain remedies under its collateral documents to direct Citibank, as first lien collateral agent to, among other things, cause the Debtor to approve certain amendments to the Debtor's operating agreement, execute the engagement letter with Accordion and retain John Shepherd as CRO.

35

Since being retained, the CRO has been focused on the day-to-day operations of the Project, communicating with the Project's stakeholders, ensuring the Debtor has sufficient cash for operations while considering strategic and financial restructuring alternatives, including a potential sale of the Project.  As discussed above, the CRO approved a $5 million prepetition loan from CEI for interim liquidity.

Prior to the Petition Date, the CRO attempted to engage with CEI, Citibank and Lotus to facilitate a consensual resolution of the Debtor's liabilities.  Unfortunately, those efforts did not result in an agreement that provided a clear path forward for the Debtor.

(g)     *Appointment of Independent Manager*

On or about January 22, 2026, CEI exercised certain remedies under its collateral documents to direct Citibank, as first lien collateral agent to, among other things, cause Holdings, as sole member of the Debtor, to appoint Redbud New Energy, LLC (the "***Independent Manager***") as independent manager of the Debtor, with John D. Jones of Redbud New Energy, LLC designated to perform all duties and obligations to Debtor on behalf of the Independent Manager.

Mr.  Jones is an energy industry veteran with more than 30 years of experience in the development, acquisition, commercial execution, and financing of wind, solar, energy storage and natural gas fired independent power projects.  This includes experience with project-financed assets and matters involving hedging strategies, covenant compliance, and liquidity management in volatile commodity markets.

(h)     *Winter Storm Uri Litigation*

In the wake of the February 2021 Winter Storm Uri, more than 301,000 wrongful death, personal injury, and property damage lawsuits were filed against more than 220 energy companies and consolidated into a single multi-district litigation (the "***Winter Storm Uri MDL***").  As of the Petition Date, the Debtor was named as a defendant in numerous lawsuits that were consolidated in the Winter Storm Uri MDL.  The Debtor's bankruptcy counsel did not represent the Debtor in these cases, but based upon a review of summaries of filed complaints, there were more than 100 pending actions with hundreds of different named plaintiffs.

On March 27, 2026, the Texas Supreme Court issued an order declining to review the intermediate appellate court's decision dismissing all remaining claims against the hundreds of power generators in the Winter Storm Uri MDL.  The ruling brings the complaints against power generators to a close and should bar as a matter of law any claims against the Debtor in the Winter Storm Uri MDL.

(i)     *Litigation Claimant Procedures*

The Debtor disputes all pending litigation claims.  Nonetheless, to ease the administrative burden on its estate, and to avoid potential confusion that may arise from serving hundreds of separate claimants represented by counsel, the Debtor filed its *Emergency Motion for an Order (I) Approving Notice Procedures for Litigation Claimants; and (II) Approving Form and Notice*

36

*of Commencement of This Case* [ECF No. 13]  (the "***Litigation Notice Motion***") to approve procedures authorizing the Debtor to give notice to the Litigation Claimants through the Claimant Firms (as those terms are defined in the Litigation Notice Motion).  The Bankruptcy Court granted the Litigation Notice Motion by order dated January 28, 2026 [ECF No. 35].

### 5.5.    *The Chapter 11 Case.*

(a)    *Generally*

On the Petition Date, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  The commencement of a chapter 11 case creates an estate that is composed of all the legal and equitable interests of the debtor as of that date.  The Bankruptcy Code provides that a debtor is authorized to continue to operate its business and remain in possession of its property as a "debtor in possession." From the Petition Date, the Debtor has continued to operate its business and manage its properties as a debtor and debtor in possession.  No committees have been appointed in the Chapter 11 Case.

The filing of the Debtor's bankruptcy petition on the Petition Date triggered the immediate imposition of the automatic stay under section 362 of the Bankruptcy Code, which, with limited exceptions, enjoins all collection efforts and actions by creditors, the enforcement of Liens against property of the Debtor and both the commencement and the continuation of prepetition litigation against the Debtor.  With certain limited exceptions and/or modifications as permitted by order of the Bankruptcy Court, the automatic stay remains in effect from the Petition Date until the Effective Date of the Plan.

(b)    *"First Day" Motions and Related Applications*

On the Petition Date and the next day, the Debtor filed several "first day" motions and applications designed to ease the Debtor's transition into chapter 11, maximize the value of the Debtor's assets, and minimize the effects of the commencement of the Chapter 11 Case.  On January 28, 2026, the Bankruptcy Court entered orders providing various forms of first-day relief, including interim or final orders approving:

- *Debtor's Emergency Motion for Interim and Final Orders (I) Authorizing Debtor to (A) Maintain its Cash Management System and (B) Honor Certain Prepetition Obligations Related Thereto; (II) Waiving Certain Operating Guidelines; (III) Suspending Time to Comply with Section 345(b) of the Bankruptcy Code; and (IV) Granting Related Relief* [ECF No. 8]

- *Debtor's Emergency Motion for Interim and Final Orders (I) Authorizing Debtor to Pay (A) Critical Vendor Claims and (B) Lien Claims and (II) Granting Related Relief* [ECF No. 9]

- *Debtor's Emergency Motion for Interim and Final Orders (I) Authorizing Debtor to (A) Continue Insurance Policies and (B) Pay All Obligations with Respect Thereto; and (II) Granting Related Relief* [ECF No. 10]

- *Debtor's Emergency Motion for Entry of an Order Extending Time to File Schedules and Granting Related Relief* [ECF No. 11]

- *Emergency Motion of Debtor for Order (I) Approving Debtor's Proposed Form of Adequate Assurance of Payment to Utility Companies; (II) Establishing Procedures for Resolving Objections by Utility Companies; (III) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Service; and (IV) Granting Related Relief* [ECF No. 12]

(c)     *Authorization to Use Cash Collateral*

In addition to the other "first day" motions, the Debtor filed the Cash Collateral Motion on January 26, 2026, seeking authority to use the Prepetition Secured Parties' cash collateral pursuant to section 363 of the Bankruptcy Code and grant certain adequate protection to the Prepetition Secured Parties.  The Bankruptcy Court granted interim relief by order dated January 28, 2026 [ECF No.  29] and entered the Final Cash Collateral Order on February 18, 2026.

(d)     *Retention of Professional Advisors*

The Debtor has (a) employed Bradley Arant Boult Cummings LLP as its bankruptcy counsel [ECF No. 104], (b) employed Accordion as financial advisor and to provide the CRO [ECF No. 102]; and (c) employed Nomura Securities International, Inc. as investment banker [ECF No. 112].

(e)     *Bidding Procedures Order*

On February 13, 2026, the Debtor filed a motion seeking approval of bidding procedures for the solicitation of competitive bids for a Sale Transaction or New Equity Transaction [ECF No. 55].  The Bankruptcy Court entered the Bidding Procedures Order on February 18, 2026 [ECF No. 66].   The Bidding Procedures Order established the following deadlines the solicitation of bids and auction (all terms as defined in the Bidding Procedures):

| Event or Deadline[6] | Date and Time (all in prevailing Central time) |
|---|---|
| Indication of Interest Deadline | March 12, 2026 at 4:00 p.m. |
| Assumption and Assignment Notice Deadline | March 23, 2026 at 4:00 p.m. |
| Stalking Horse Bids Deadline | April 15, 2026 at 4:00 p.m. |
| Stalking Horse Designation Deadline | April 30, 2026 at 4:00 p.m. |

---

[6]     As provided in the Bidding Procedures Order, these deadlines may be extended by the Debtor with the consent of the Prepetition Secured Parties and in consultation with the Consultation Parties (as defined in the Bidding Procedures Order).

| Sale Objection Deadline | May 4, 2026 at 4:00 p.m. |
|---|---|
| Qualified Bid Deadline | May 15, 2026 at 4:00 p.m. |
| Supplemental Assumption and Assignment Notice Deadline | Later of the Sale Objection Deadline or fourteen (14) days after service of a Supplemental Assumption and Assignment Notice |
| Auction (if necessary) | May 18, 2026 at 9:00 a.m. |
| Designation of Successful Bidder and Backup | Later of one (1) business day after the conclusion of the Auction or May 20, 2026 |
| Supplemental Sale Objection Deadline | May 27, 2026 at 4:00 p.m. |
| Sale Hearing | June 3, 2026 at 9:00 a.m. |
| Sale Closing | No later than June 24, 2026 |

(f)      *Sale Process*

The Debtor and its professionals continue to actively market the Debtor's assets consistent with the schedule provided in the Bidding Procedures.  As of the date of this Combined Disclosure Statement and Plan, the Debtor is in active negotiations with multiple potential bidders and expects at least one of the potential bidders to pursue a stalking horse bid. Consistent with the Bidding Procedures, the Debtor will seek Bankruptcy Court approval of the stalking horse bid that the Debtor determines to be the highest and best qualified bid.  The terms of the stalking horse bid, if any, will be available on the docket for all interested parties and competing bidders to review.

(g)      *Schedules*

The Debtor filed its Schedules on March 12, 2026 [ECF Nos. 96 & 97], which are incorporated herein by reference.

(h)      *Claims Process and Bar Date Order*

On February 25, 2026, the Debtor filed its *Motion for Entry of an Order (I) Updating Deadlines for the Filing of Proofs of Claim, Including Requests for Payment Under Section 503(b)(9); (II) Approving the Form and Manner for Filing Proofs of Claim; (III) Approving the Form and Manner of Notice Thereof, Including Section 503(b)(9) Requests; and (IV) Granting Related Relief* [ECF No. 78].  On March 20, 2026, the Bankruptcy Court entered the Bar Date Order, establishing the following deadlines for filing Proofs of Claim [ECF No. 111]:

- **Claims Bar Date**: April 20, 2026, at 5:00 p.m., prevailing Central Time, as the last date and time for each claimant, other than a governmental unit, to file proofs of claim based on prepetition Claims, including requests for payment under section 503(b)(9) of the Bankruptcy Code (collectively, "***Proofs of Claim***")

- **Governmental Bar Date***:* Solely as to governmental units (as defined in section 101(27) of the Bankruptcy Code), July 24, 2026, at 5:00 p.m., prevailing Central

39

Time, as the last date and time for each governmental unit to file Proofs of Claim against the Debtor.

- **Rejection Damages Bar Date**.  Solely as to claims arising from the Debtor's rejection of executory contracts and unexpired leases, the later of (a) the Claims Bar Date or the Governmental Bar Date, as applicable, and (b) 5:00 p.m., prevailing Central Time, on the date that is 30 days following entry of the order approving the Debtor's rejection of the applicable executory contract or unexpired lease as the last date and time by which claimants holding claims based upon such rejection must file Proofs of Claim against the Debtor.

- **Amended Schedules Bar Date**.  In the event that the Debtor amends its Schedules, the later of (a) the Claims Bar Date or the Governmental Bar Date, as applicable, and (b) 5:00 p.m., prevailing Central Time, on the date that is 30 days from the date on which the Debtor serves notice of the amendment of the Schedules, as the last date and time by which claimants holding claims affected by the amendment must file Proofs of Claim against the Debtor

## ARTICLE VI.
## CONFIRMATION AND VOTING PROCEDURES

### 6.1.    *Confirmation Procedure.*

On April 22, 2026, the Bankruptcy Court entered the Conditional Approval and Procedures Order conditionally approving the Combined Disclosure Statement and Plan for solicitation purposes only and authorizing the Debtor to solicit votes to accept or reject the Plan. The Confirmation Hearing has been scheduled for **June 3, 2026 at 9:00 a.m. (prevailing Central Time)** to consider (a) final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (b) confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.  The Confirmation Hearing may be adjourned from time to time by the Debtor without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Bankruptcy Court.

### 6.2.    *Procedure for Objections.*

Any objection to final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or confirmation of the Plan must (i) be made in writing; (ii) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (iii) state with particularity the legal and factual basis and nature of any objection to the Combined Disclosure Statement and Plan; and (iv) be filed with the Bankruptcy Court, together with proof of service, and served so that they are received on or before **May 27, 2026 at 4:00 p.m.  (prevailing Central Time)** by the following parties: (a) the Debtor; (b) counsel to the Debtor: Bradley Arant Boult Cummings LLP, 600 Travis Street, Suite 5600, Houston, TX 77002, Attn: Jarrod Martin (jbmartin@bradley.com),  Michael  Riordan  (mriordan@bradley.com)  and  James  Bailey

(jbailey@bradley.com); (c) counsel to the Prepetition Secured Parties, Willkie Farr & Gallagher LLP, 600 Travis Street, Suite 2100, Houston, TX 77002, Attn: Jennifer Hardy (jhardy2@willkie.com); and (d) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, TX 77002 (C.Ross.Travis@usdoj.gov).  Unless an objection to the Combined Disclosure Statement and Plan is timely filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.

### 6.3.   *Requirements for Confirmation.*

The Bankruptcy Court will confirm the Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code.  Among other requirements, the Plan (a) must be accepted by all impaired Classes of Claims or Interests or, if rejected by an impaired Class, the Plan must not "discriminate unfairly" against and be "fair and equitable" with respect to, such Class; and (b) must be feasible.  The Bankruptcy Court must also find that: (i) the Plan has classified Claims and Interests in a permissible manner; (ii) the Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.  If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be presumed to have accepted the Plan.

### 6.4.   *Classification of Claims and Interests.*

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders.  In accordance with section 1123 of the Bankruptcy Code, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which pursuant to section 1123(a)(1) of the Bankruptcy Code need not be and have not been classified).  The Debtor is required, under section 1122 of the Bankruptcy Code, to classify Claims and Interests into Classes that contain Claims or Interests that are substantially similar to the other Claims or Interests in such Class.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest.  The Debtor believes that the Plan complies with such standard.  If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Plan if the holders of Claims or Interests affected do not consent to the treatment afforded them under the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent

41

that any portion of the Claim or Interest falls within the description of such other Classes. A Claim also is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

The Debtor believes that the Plan has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law. It is possible that a holder of a Claim or Interest may challenge the classification of Claims or Interests and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. If this occurs, the Debtor intends, in accordance with the terms of the Plan, to make such modifications to the Plan as may be necessary to permit its confirmation. Any such reclassification could adversely affect holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Plan.

EXCEPT AS SET FORTH IN THE PLAN, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION OF VOTES ON THE PLAN, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.

The amount of any impaired Claim that ultimately is Allowed by the Bankruptcy Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Bankruptcy Court with respect to each impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any impaired Class. Thus, the actual recovery ultimately received by a particular holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Allowed Claims in the applicable Class. Additionally, any changes to any of the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein and/or the actual Distribution received by creditors. The projected recoveries are based on information available to the Debtor as of the date hereof and reflect the Debtor's views as of the date hereof only.

The classification of Claims and Interests and the nature of distributions to members of each Class are summarized herein. The Debtor believes that the consideration, if any, provided under the Plan to holders of Claims reflects an appropriate resolution of their Claims considering the differing nature and priority (including contractual subordination, if any) of such Claims and Interests. The Bankruptcy Court must find, however, that several statutory tests are met before it may confirm the Plan. Many of these tests are designed to protect the interests of holders of Claims or Interests who are not entitled to vote on the Plan, or do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court.

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating

42

thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtor and the Plan Administrator, as applicable, reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### 6.5.  *Impaired Claims or Interests.*

Pursuant to section 1126 of the Bankruptcy Code, only classes of claims or interests that are impaired under a plan may vote to accept or reject such plan.  Under section 1124 of the Bankruptcy Code, a claim or interest is impaired under a plan if the holder's legal, equitable, or contractual rights are changed under such plan.  In addition, if the holders of claims or interests in an impaired Class do not receive or retain any property under a plan on account of such claims or interests, such Impaired Class is deemed to have rejected such plan under section 1126(g) of the Bankruptcy Code and, therefore, such holders are not entitled to vote on such plan.

Under the Plan, holders of Claims in Classes 3, 4, 5, and 6 are impaired and are entitled to vote on the Plan.  Holders of Claims in Classes 1 and 2 are unimpaired and, therefore, not entitled to vote on the Plan and are deemed to accept the Plan under section 1126(f) of the Bankruptcy Code.

### 6.6.  *Confirmation without Necessary Acceptances.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one impaired Class of Claims.

The Bankruptcy Code contains provisions for confirmation of a plan even if the Plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted the Plan.  The "cram down" provisions of the Bankruptcy Code are set forth in section 1129(b) of the Bankruptcy Code.  Under the "cram down" provisions, on the request of a plan proponent, the bankruptcy court will confirm a plan despite the lack of acceptance by an impaired class or classes if the bankruptcy court finds that: (a) the Plan does not discriminate unfairly with respect to each non-accepting impaired class; (b) the Plan is fair and equitable with respect to each non-accepting impaired class; and (c) at least one impaired class has accepted the Plan.

As used by the Bankruptcy Code, the phrases "discriminate unfairly" and "fair and equitable" have narrow and specific meanings unique to bankruptcy law.  A plan does not discriminate unfairly if claims or interests in different classes but with similar priorities and characteristics receive or retain property of similar value under a plan.  The Bankruptcy Code sets forth different standards for establishing that a plan is "fair and equitable" with respect to a dissenting class, depending on whether the class is comprised of secured or unsecured claims, or equity interests.  In general, section 1129(b) of the Bankruptcy Code permits confirmation notwithstanding non-acceptance by an impaired class if that class and all junior classes are treated in accordance with the "absolute priority" rule, which requires that the dissenting class be paid in full before a junior class may receive any value under the Plan on account of such junior claims or interests.

Specifically, with respect to unsecured claims, a plan is "fair and equitable" if either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to

43

the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan. With respect to equity interests, a plan is "fair and equitable" if either (x) each holder of an equity interest will receive or retain under the plan a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest; or (y) the holder of an interest that is junior to the non-accepting class will not receive or retain any property under the Plan on account of such interest.

The Debtor believes that the Plan satisfies the "unfair discrimination" and "fair and equitable" tests with respect to any non-accepting impaired Class. The priority scheme for distributions under the Plan follows the Bankruptcy Code's priority scheme. Furthermore, because of the Debtor's negotiations with CEI and Citibank, those parties have agreed to allow Restructuring Transaction Proceeds to be used under the Plan to fund distributions to General Unsecured Creditors and fund the Wind Down. CEI and Citibank have agreed to allocate recoveries in this manner to facilitate a smooth transaction and chapter 11 process and have conditioned this recovery on the Debtor's ability to consummate the Restructuring Transactions on the terms set forth in the Plan.

### 6.7. *Best Interests Test and Liquidation Analysis.*

With respect to each impaired Class of Claims and Interests, confirmation of the Plan requires that each holder of a Claim or Interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.

In determining whether this test is satisfied, the first step is to determine the dollar amount that would be generated from the liquidation of the Debtor's assets in a chapter 7 liquidation case. The gross amount of cash available in such a liquidation would be the sum of the proceeds from the disposition of the Debtor's assets and the cash held by the Debtor at the time of the commencement of the chapter 7 case. This gross amount would be reduced by the amount of any Allowed Claims secured by such assets, the costs and expenses of the liquidation, and such additional administrative expenses and priority claims that may result from the termination of the Debtor's business and the use of chapter 7 for the purposes of liquidation. Any remaining net cash would be allocated to creditors and shareholders of the applicable Debtor in strict accordance with the order of priority of claims contained in section 726 of the Bankruptcy Code.

The Debtor believes, as discussed in the Liquidation Analysis that will be included in the Plan Supplement, that confirmation of the Plan will provide each creditor and interest holder of the Debtor with a recovery that is not less than it would receive pursuant to a liquidation of the Debtor under chapter 7 of the Bankruptcy Code.

### 6.8. *Financial Feasibility.*

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor, or any successor to the debtor (i.e. that a plan is "feasible") unless the liquidation is

proposed in such plan.  In this case, the Plan contemplates consummation of the Restructuring Transactions with a distribution of the Restructuring Transaction Proceeds in the order of priorities carried out by a Plan Administrator subject to an adequately funded Wind Down Budget.  Thus, the Plan satisfies the feasibility requirements of the Bankruptcy Code.

### 6.9.    *Releases and Exculpation.*

The Plan proposes to release the Released Parties and exculpate the Exculpated Party. The Debtor's releases, third-party releases, and exculpation provisions included in the Plan are an integral part of the Debtor's overall restructuring efforts and were an essential element of the Debtor obtaining their continued support for the Debtor's restructuring efforts and the Plan.

The Released Parties and the Exculpated Party, including the CRO and Independent Manager, have made substantial and valuable contributions to the Debtor's restructuring through efforts to negotiate and implement the Plan, which, maximizes and preserves the value of the Debtor for all parties in interest, and further, optimizes recoveries and provides for the best possible conclusion of this Chapter 11 Case.  Similarly, the Prepetition Secured Parties have also contributed to the Debtor's restructuring efforts through consensual use of cash collateral, agreeing to the terms of the Plan, which includes using the proceeds of the Prepetition Secured Parties' collateral to fund distributions to General Unsecured Creditors.  The proposed releases and exculpations preserve value by enabling the Debtor to emerge swiftly from chapter 11 while giving finality to stakeholders that elect to give and receive consensual third-party releases.  This Chapter 11 Case could not be administered, and the Plan could not have been realized, but for the contributions of the Released Parties.

Based on the foregoing, the Debtor believes that the releases and exculpations in the Plan are necessary and appropriate and meet the requisite legal standards.  Moreover, the Debtor will present evidence at the Confirmation Hearing to demonstrate the basis for and propriety of the release and exculpation provisions.  The releases, exculpation, and injunction provisions are set forth in Article XIII hereof.

### 6.10.    *Acceptance of the Plan.*

The rules and procedures governing eligibility to vote on the Plan, solicitation of votes, and submission of Ballots are set forth in the Conditional Approval and Procedures Order.

In order for the Plan to be accepted by an impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in such Class must vote to accept the Plan. At least one voting Class must actually vote to accept the Plan.

IF YOU ARE ENTITLED TO VOTE ON THE PLAN, THE DEBTOR URGES YOU TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL THE BALLOT YOU RECEIVE. Please be sure to complete the Ballot properly and legibly and to identify the exact amount of your Claim and the name of the Holder.  If you are a Holder of a Claim entitled to vote on the Plan and you did not receive a Ballot, you received a damaged Ballot, or you lost your Ballot, or if you have any questions concerning the Plan or procedures for voting on the Plan, please contact the Claims Agent by (a) writing to Shannon Wind Ballot Processing Center, c/o KCC

dba Verita Global, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtor's restructuring hotline at (866) 967-1781 (U.S./Canada) or (310) 751-2681 (International); or (c) emailing the Claims Agent KCC Verita Global via https://www.veritaglobal.net/shannon/inquiry. Parties will also be able to download a copy of the Combined Disclosure Statement and Plan for no charge at https://www.veritaglobal.net/shannon.

**ARTICLE VII.**
**CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING**

THE PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE PLAN AND ASSOCIATED DOCUMENTS BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

**7.1.** *The Plan May Not Be Accepted.*

The Debtor can make no assurances that the requisite acceptances to the Plan will be received, and the Debtor may need to obtain acceptances to an alternative plan for the Debtor, or otherwise, that may not have the support of the creditors and/or may be required to liquidate the Estate under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to creditors as those proposed in the Plan.

**7.2.** *The Plan May Not Be Confirmed.*

Even if the Plan receives the requisite votes, there is no assurance that the Bankruptcy Court will confirm the Plan. The Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for confirmation have not been met. There can be no assurance that modifications to the Combined Disclosure Statement and Plan will not be required for Confirmation or that such modifications would not necessitate the resolicitation of votes. If the Plan or a modified plan is not confirmed, it is unclear what Holders of Claims or Interests ultimately would receive in a subsequent liquidation.

**7.3.** *Failure to Receive Bankruptcy Court Approval of the Compromises and Settlements Contemplated by the Plan.*

The Plan constitutes a settlement, compromise and release of all rights arising from or relating to the allowance, classification and treatment of all Allowed Claims and Interests and their respective distributions and treatments under the Plan, taking into account and conforming to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto. This settlement, compromise and release requires approval by the Bankruptcy Court. The Debtor cannot

46

guarantee that the Bankruptcy Court will approve the settlement contemplated in the Plan.  The Plan also provides for certain releases, injunctions and exculpations that may otherwise be asserted against the Debtor or other Released Parties.   The releases, injunctions, and exculpations may not be approved, in which case certain Released Parties may withdraw their support for the Plan.

### 7.4.   *Distributions to Holders of Allowed Claims under the Plan May Be Inconsistent with Projections.*

Projected distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for distribution under the Plan.  There can be no assurance that the estimated Claim amounts set forth in the Plan are correct or that the funds available for distribution upon consummation of the Restructuring Transactions will be as much as projected in this Combined Disclosure Statement and Plan.  The projected distributions are based on certain assumptions with respect to a variety of factors.  Both the actual amount of Allowed Claims in a particular Class and the funds available for distribution to such Class may differ from the Debtor's estimates.  If the total amount of Allowed Claims in a Class is higher than the Debtor's estimates, or the funds available for distribution to such Class are lower than the Debtor's estimates, the percentage recovery to holders of Allowed Claims in such Class will be less than projected.

### 7.5.   *Objections to Classification of Claims.*

Section 1122 of the Bankruptcy Code requires that the Plan classify Claims and Interests. The Bankruptcy Code also provides that the Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests of such Class.  The Debtor believes that all Claims and Interests have been appropriately classified in the Plan.   To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Debtor would seek to (i) modify the Plan to provide for whatever classification might be required for confirmation and (ii) use the acceptances received from any Holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such Holder ultimately is deemed to be a member.  Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required for approval of the Plan.  There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Plan based upon such reclassification.  Except to the extent that modification of classification in the Plan requires resolicitation, the Debtor will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Plan by any Holder of Claims pursuant to this solicitation will constitute a consent to the Plan's treatment of such Holder, regardless of the Class as to which such Holder is ultimately deemed to be a member.  The Debtor believes it would only be required to resolicit votes for or against the Plan if a modification adversely affects the treatment of the Claim or Interest of any Holder.

The Bankruptcy Code also requires that the Plan provide the same treatment for each Claim or Interest of a particular Class unless the Holder of a particular Claim or Interest agrees

47

to a less favorable treatment of its Claim or Interest.  The Debtor believes that the Plan complies with the requirement of equal treatment.  To the extent that the Bankruptcy Court finds that the Plan does not satisfy such requirement, the Bankruptcy Court could deny confirmation of the Plan.  Issues or disputes relating to classification or treatment of Claims or Interest could result in a delay in the confirmation and consummation of the Plan and could increase the risk that the Plan will not be consummated.

### 7.6.    *Failure to Consummate the Plan.*

The Plan provides for certain conditions that must be satisfied (or waived) prior to Confirmation and for certain other conditions that must be satisfied (or waived) prior to the Effective Date.  Importantly, the Plan requires the Debtor to close the Restructuring Transaction prior to the Effective Date.  As of the date of the Plan, the Debtor has not completed the marketing and competitive bid process for the Sale Transaction and New Equity Transaction and there is no assurance that the Debtor will receive an acceptable bid to purchase all or substantially all of the Debtor's assets pursuant to a Sale Transaction or the New Equity pursuant to a New Equity Transaction.  As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived).  Accordingly, there can be no assurance that the Plan will be confirmed by the Bankruptcy Court.  Further, if the Plan is confirmed, there is no absolute assurance that the Plan will be consummated.

### 7.7.    *Risks Associated with the Debtor's Business.*

There are numerous risks with the Debtor's business, that may affect the amount of bids submitted for the purchase of all or substantially all the Debtor's assets pursuant to a Sale Transaction or the New Equity pursuant to a New Equity Transaction.  These risks include, but are not limited to the following:

(a)    The Project's energy production depends on the availability and consistency of wind resources, which are inherently variable and difficult to predict. Actual wind conditions may differ materially from historical data and forecasts, resulting in lower-than-expected generation and revenues.

(b)    Changes in government policy and regulations (e.g., expiration of production tax credits) can significantly impact profitability or even Project viability.  Failure to maintain or comply with required permits could result in fines, operational limitations, or shutdowns.

(c)    The Debtor's operations are in a remote area where wind is strongest.  However, the Project may be subject to curtailment due to transmission congestion, system balancing requirements, negative pricing events, or grid reliability directives. Curtailment may occur without compensation or with limited compensation, which could materially reduce revenues.

(d)    The Debtor's wind turbines are complex machines exposed to harsh conditions.  Mechanical failures (including gearboxes and transformers), blade damage, or other issues can lead to downtime and costly repairs, reducing output and revenues.  Delays in planned

transmission upgrades can also reduce availability and a decrease in revenues. Availability guarantees under service agreements may be limited or subject to exclusions and offsets.

(e)       New technology may make turbines more efficient, which can make older installations less competitive over time.

(f)       Due to the Project's full merchant exposure, revenues may be exposed to fluctuations in wholesale electricity prices, capacity prices, and ancillary services markets. Such prices are influenced by numerous factors outside the Debtor's control, including fuel prices, renewable penetration, regulatory changes, and macroeconomic conditions.

(g)       Revenues may depend on the performance of counterparties under operation and maintenance contracts and other commercial contracts. The failure of a counterparty to perform its obligations, including due to insolvency or financial distress, could result in revenue loss or increased replacement costs.

(h)       Wind projects may be subject to environmental regulations and mitigation requirements. Compliance with such requirements may increase costs or limit operations. New or more stringent environmental regulations could be imposed in the future.

(i)       The Project typically relies on long-term land leases and an easement. Disputes with landowners, title defects, or failure to renew or maintain such agreements could impair operations. Land use restrictions, zoning changes, or local opposition may also affect the Project.

(j)       Wind farms may face opposition from local communities or other stakeholders relating to visual impact, noise, or environmental concerns. Such opposition could result in delays, increased costs, litigation, or operational restrictions.

(k)       The Project depends on key agreements, including an operations and maintenance services agreement, interconnection agreement, and offtake arrangements. Termination, default, or unfavorable amendments of such agreements could adversely affect the Project.

(l)       Weather variability—like hurricanes, icing, or lightning—can damage the Debtor's assets and long-term climate shifts may also change wind patterns, affecting energy output.  Insurance coverage may not be available on commercially reasonable terms or may be insufficient to cover all losses from natural disasters, extreme weather events, fire, or other casualties, leading to financial exposure.

### 7.8.    *Extended Stay in Chapter 11.*

Implementing the Plan would be of short duration and would not be unduly disruptive to the Debtor's business, but the Debtor cannot be certain that this will be the case.  Although the Plan is designed to minimize the length of the Chapter 11 Case, it is impossible to predict with certainty the amount of time that the Debtor may spend in bankruptcy, and the Debtor cannot be certain that the Plan would be confirmed.  Even if the Plan is confirmed on a timely basis, the Chapter 11 Case could itself have an adverse effect on the Debtor's business.  For example, and

without limitation, there is a risk, due to uncertainty about the Debtor's future that vendors and other business partners could terminate their relationship with the Debtor or require financial assurances or trade terms which are materially different from what the Debtor enjoys today.

If the Debtor is unable to obtain confirmation of the Plan on a timely basis, because of a challenge to the Plan or a failure to satisfy the conditions to the effectiveness of the Plan, the Debtor may be forced to operate in bankruptcy for an extended period while it tries to develop a different reorganization plan that can be confirmed.  A protracted bankruptcy case would increase both the probability and the magnitude of all adverse effects of bankruptcy, including those described herein.  Furthermore, the Debtor could lose the support of the Prepetition Secured Parties and risk termination of the use of cash collateral pursuant to the terms of the Final Cash Collateral Order, which would further decrease the likelihood of a successful reorganization.

### 7.9.   *Allowance of Claims May Substantially Dilute the Recovery to Holders of Claims under the Plan.*

There can be no assurance that the estimated Claim amounts set forth in the Plan are correct, and the actual allowed amounts of Claims may differ from the estimates.  The estimated amounts are based on certain assumptions with respect to a variety of factors.  Should these underlying assumptions prove incorrect, the actual Allowed amounts of Claims may vary from those estimated herein, thereby materially reducing the recovery to the Holders of Claims under the Plan.  For example, litigation claimants may file proofs of claim in substantial amounts. Although the Debtor disputes all claims by litigation claimants, and may object to any such filed Claims, the Debtor cannot guarantee the outcome of any claim objections or the ultimate amount of Allowed Claims to be paid under the Plan.

### 7.10.   *Certain Tax Considerations.*

There are several material income tax considerations, risks and uncertainties associated with the Plan described herein.

THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE.  THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES.  ACCORDINGLY, HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

**ARTICLE VIII.**
**MEANS FOR IMPLEMENTATION**

### 8.1.   *Sources for Cash Distributions under this Plan.*

Cash distributions provided under the Plan shall be funded with the Debtor's Cash on hand as of the Effective Date, including Cash from operations, and the Restructuring Transaction

50

Proceeds in accordance with the terms of the Definitive Documents and the Plan.  Cash payments to be made pursuant to the Plan will be made by the Plan Administrator or the Disbursing Agent in accordance with Article IX.

### 8.2.    *Designation of the Successful Bid.*

Prior to the Confirmation Hearing, and consistent with the Bidding Procedures, the Debtor will file a notice with the Bankruptcy Court designating the Successful Bid and Successful Bidder (as well as the Backup Bidder, as defined in the Bidding Procedures) and whether the Successful Bid contemplates a New Equity Transaction or Sale Transaction.

### 8.3.    *New Equity Transaction.*

In the event that the Successful Bid proposes a New Equity Transaction, and conditioned upon Confirmation of the Plan, the New Equity Transaction will be consummated as a condition to the Effective Date.  In exchange for the Successful Bidder's payment of the Restructuring Transaction Proceeds to the Debtor, the membership interests in the Reorganized Debtor shall be sold to the Successful Bidder under the terms of this Plan, the New Organizational Documents, the New Equity Documents, and the other applicable Definitive Documents.

In the event of a New Equity Transaction, on the Effective Date, the Reorganized Debtor shall be authorized to and shall issue the New Equity to the Successful Bidder in accordance with the terms of the Plan without the need for any further corporate action.  All the New Equity, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable.  Each distribution and issuance of the New Equity under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the New Equity Documents and the other Definitive Documents.

In the event of a New Equity Transaction, except as otherwise provided in the Plan, the New Equity Documents, or the other Definitive Documents, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date: (a) all property of the Estate, including all Causes of Action that are designated to vest in the Reorganized Debtor (other than any Causes of Action that are Liquidation Trust Assets), and any property acquired by the Debtor prior to the Effective Date, in each case other than the Liquidation Trust Assets, shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances against the Debtor, the Estate, or the Debtor's property; and (b) except as provided in this Plan, the Liquidation Trust Assets shall vest in the Liquidation Trust, free and clear of all Liens, Claims, charges, setoff rights, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of the Reorganized Debtor's property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  For the avoidance of doubt, the Reorganized Debtor shall have no right, title, or interest in any of the (x) Professional Fee Escrow Amount to be deposited in the Professional Fee Escrow Account, (y) the Wind Down Amount to be deposited in the Wind Down Account, or (z) the GUC Recovery Contribution to be contributed to the Liquidation Trust.

Except with respect to consensual Liens and security interests granted by the Reorganized Debtor following the closing of the New Equity Transaction, to the extent that any Holder of a Secured Claim that is to be satisfied or discharged in full or in part pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Plan Administrator or the Reorganized Debtor, that are necessary to cancel and/or extinguish such Liens and/or security interests.

After the Effective Date, the Reorganized Debtor may present Bankruptcy Court order(s) or assignment(s) suitable for filing in the records of every county or governmental agency where the property vested in the Reorganized Debtor in accordance with the foregoing paragraph is or was located, which provide that such property is conveyed to and vested in the Reorganized Debtor. The Bankruptcy Court order(s) or assignment(s) may designate all Liens, Claims, encumbrances, or other interests which appear of record and/or the property being transferred, assigned, and or vested free and clear of such Liens, Claims, encumbrances, or other interests. The Plan and Confirmation Order shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished and no notice, other than by the Plan, shall be given prior to the presentation of such Bankruptcy Court order(s) or assignment(s). Any Person having a Lien, Claim, encumbrance, or other interest against any of the property vested in the Reorganized Debtor in accordance with the foregoing paragraph shall be conclusively deemed to have consented to the transfer, assignment and vesting of such property to or in the Reorganized Debtor free and clear of all Liens, Claims, charges or other encumbrances by failing to object to confirmation of the Plan, except as otherwise provided in the Plan or Confirmation Order.

Notwithstanding any provision of the Plan to the contrary, any Lien or Claim that is designated in the New Equity Documents to be an Assumed Liability of the Reorganized Debtor, shall be assumed by and reinstated against the Reorganized Debtor and shall not be an obligation of the Debtor, its Estate, or the Liquidation Trust.

### 8.4.    *Exemption from Registration Requirements.*

The offering, issuance, and distribution of the New Equity pursuant to the Plan and/or any and all Definitive Documents otherwise entered into in accordance with the terms of the Plan are intended to be exempt from, among other things, the registration requirements of the Securities Act and any other applicable U.S. federal, state, or local laws, including Blue Sky Laws, pursuant to section 1145(a) of the Bankruptcy Code or, to the extent such exemption is unavailable, pursuant to one or more other available exemptions from registration under the Securities Act, including section 4(a)(2) thereof and Regulation D promulgated thereunder, and comparable exemptions under applicable state or foreign securities laws. The availability of any such exemption shall be subject to satisfaction of applicable legal requirements, and the Debtor makes no representation or warranty as to the availability of any particular exemption. Except as otherwise provided in the Plan or the governing certificates or instruments, any and all such New Equity so issued under the Plan (a) is not expected to constitute "restricted securities" (as defined under the Securities Act) to the extent issued pursuant to section 1145(a) of the Bankruptcy Code, and (b) may be freely tradable and transferable under the Securities Act by the recipients

thereof that are not, and have not been within 90 days of such transfer, an "affiliate" (as defined in Rule 144(a)(1) under the Securities Act) of the Debtor or the Reorganized Debtor, in each case, subject to (x) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code and the restrictions on transfer imposed on underwriters pursuant to section 1145 of the Bankruptcy Code, (y) compliance with applicable securities laws and any rules and regulations, including those of the United States Securities and Exchange Commission or U.S. state or local securities laws, if any, applicable at the time of any future transfer of such securities or instruments, and (z) any applicable restrictions in the Plan or in the New Organizational Documents of the Reorganized Debtor and any contractual or other transfer restrictions applicable thereto. To the extent any New Equity is issued in reliance on an exemption other than section 1145(a) of the Bankruptcy Code, such New Equity shall constitute "restricted securities" within the meaning of the Securities Act and may not be offered, sold, exchanged, assigned, or otherwise transferred without registration under the Securities Act or pursuant to an available exemption from registration, and in each case in compliance with applicable state or foreign securities laws (including Blue Sky Laws).

Notwithstanding anything to the contrary in the Plan, no Entity shall have any right to require, and the Debtor and the Reorganized Debtor shall have no obligation to provide, any legal opinion, comfort letter, or similar assurance regarding the validity, enforceability, or tax or securities law treatment of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the issuance of the New Equity is exempt from registration under the Securities Act or any applicable Blue Sky Laws.

### 8.5.    *Sale Transaction.*

In the event that the Successful Bid proposes a Sale Transaction, the Sale Transaction will be consummated pursuant to the terms of the Sale Order and as a condition to the Effective Date. In exchange for the Successful Bidder's payment of the Restructuring Transaction Proceeds to the Debtor, the Debtor's assets shall be sold to the Successful Bidder under the terms of the Sale Order, the Sale Documents, this Plan, and the other applicable Definitive Documents.

In the event of a Sale Transaction, except as otherwise provided in the Sale Order, the Plan, the Sale Documents, or the other Definitive Documents, or any agreement, instrument, or other document incorporated herein or therein, upon the closing of the Sale Transaction: (a) all property of the Estate, including all Causes of Action that are designated to be sold and assigned to the Successful Bidder, other than the Liquidation Trust Assets, shall vest in the Successful Bidder, free and clear of all Liens, Claims, charges, or other encumbrances against the Debtor, the Estate, or the Debtor's property, all as more particularly provided in the Sale Order; and (b) except as provided in this Plan, the Liquidation Trust Assets shall vest in the Liquidation Trust, free and clear of all Liens, Claims, charges, setoff rights, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Plan Administrator may operate the Wind Down Debtor's business and may use, acquire, or dispose of the Wind Down Debtor's property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. For the avoidance of doubt, the Wind Down Debtor shall have no right, title, or interest in any of the (x) Professional Fee Escrow Amount to be deposited in the Professional Fee Escrow Account, (y) the Wind Down Amount to be deposited

53

in the Wind Down Account, or (z) the GUC Recovery Contribution to be contributed to the Liquidation Trust.

Notwithstanding any provision of the Plan to the contrary, any Lien or Claim that is designated in the Sale Documents to be an Assumed Liability of the Successful Bidder, shall be assumed by the Successful Bidder and shall not be an obligation of the Debtor, its Estate, or the Liquidation Trust.

The provisions of this Section 8.5 are without limitation or waiver of the Sale Order and the terms of such Sale Order are incorporated herein by reference.

### 8.6.   *Authority to Effectuate Restructuring Transactions*

Following entry of the Confirmation Order and subject to any applicable limitations set forth in the Definitive Documents, or as soon as reasonably practicable thereafter, the Debtor, the Reorganized Debtor (as applicable), and the Plan Administrator may take all actions as may be necessary or appropriate to effectuate the Restructuring Transactions (including any transaction described in, approved by, contemplated by or necessary to effectuate this Plan or the Restructuring Transactions), and as may be set forth in the Restructuring Transactions Memorandum, including: (a) the execution and delivery of appropriate agreements or other documents of reorganization containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of this Plan; (c) the filing of appropriate certificates of incorporation, merger, migration, consolidation, or other Organizational Documents with the appropriate governmental authorities pursuant to applicable law; (d) the execution, delivery, and filing, if applicable, of the New Organizational Documents; (e) such other transactions that are required to effectuate the Restructuring Transactions, including any mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; and (f) all other actions that the Debtor, Reorganized Debtor, or Plan Administrator, as applicable, reasonably determines are necessary or appropriate, including making filings or recordings that may be required by applicable law.  For the purposes of effectuating this Plan, none of the Restructuring Transactions contemplated herein shall constitute a "change of control" or "assignment" (or terms with similar effect) under, or any other transaction or matter that would result in a violation, breach, or default under, or increase, accelerate, or otherwise alter any obligations, rights or liabilities of the Debtor, the Estate, the Liquidation Trust, the Reorganized Debtor, or the Successful Bidder under, or result in the creation or imposition of a Lien upon any property or asset of the Debtor, the Estate, the Liquidation Trust, the Reorganized Debtor, or the Successful Bidder pursuant to, any agreement, contract, or document of the Debtor, the Estate, the Liquidation Trust, Reorganized Debtor, or the Successful Bidder, and any consent or advance notice required under any agreement, contract, or document shall be deemed satisfied by confirmation of the Plan.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions and the Plan.

**8.7.**     ***Plan Administrator and Liquidation Trust.***

(a)     <u>Plan Administrator</u>.

Upon the Effective Date, (a) from available Cash on hand and the Restructuring Transaction Proceeds, the Debtor shall fund (i) the Professional Fee Escrow Account, (ii) the Wind Down Account, and (iii) the GUC Recovery Contribution to be contributed to the Liquidation Trust, and (b) the Plan Administrator shall be appointed to reconcile Claims against the Debtor, and effectuate distributions on account thereof from the Professional Fee Escrow Account, the Wind Down Account, or the Liquidation Trust Assets, as applicable, and conduct all related services pursuant to the Plan and the Liquidation Trust Agreement.  The Plan Administrator, as a representative of the Debtor's Estate appointed under section 1123(b)(3)(B) of the Bankruptcy Code, shall have all the rights and powers to implement the provisions of the Plan pertaining to the Plan Administrator, including the right to (a) employ professionals to assist in fulfilling the Plan Administrator's responsibilities, including pursuing Causes of Action that are Liquidation Trust Assets, (b) make distributions from the Liquidation Trust Assets as contemplated in the Plan, (c) establish and administer any necessary reserves from the Liquidation Trust Assets for Disputed General Unsecured Claims and for expenses of the Liquidation Trust that may be required or anticipated in excess of the Wind Down Account, and (d) object to Claims and prosecute, settle, compromise, withdraw, or resolve in any manner approved by the Bankruptcy Court such Claims.  The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  The reasonable costs and expenses incurred by the Plan Administrator in performing the duties set forth in the Plan and the Liquidation Trust Agreement shall be paid from the Wind Down Account and, to the extent there are insufficient funds in such account, from the Liquidation Trust Assets.  The Wind Down Account shall be property of the Liquidation Trust, to be administered and used solely for purposes of paying the expenses of the Wind Down as provided herein.  Any funds in the Wind Down Account in excess of the amount to satisfy Allowed Claims that are payable from the Wind Down Account and the costs of the Wind Down shall be distributed to the Liquidation Trust and distributed as provided elsewhere herein.  The Reorganized Debtor, if applicable, shall provide the Plan Administrator with reasonable access to all relevant books and records so as to enable the Plan Administrator to carry out its duties.

(b)     <u>Liquidation Trust</u>.

On the Effective Date, the Liquidation Trust will be formed with the primary purpose of liquidating the Liquidation Trust Assets and making distributions to Holders of Allowed General Unsecured Claims on account of their Liquidation Trust Interests.  The Liquidation Trust will be deemed created and effective without any further action by the Bankruptcy Court or any party. The Liquidation Trust will have no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust.  Upon the transfer of the Liquidation Trust Assets as more fully set forth in the Liquidation Trust Agreement, the Debtor and its Estate will have no reversionary or further interest in or with respect to the Liquidation Trust Assets.

The Plan Administrator shall sign the Liquidation Trust Agreement and cause the Liquidation Trust to accept, on behalf of the holders of the Liquidation Trust Interests, the Liquidation Trust Assets; provided, however, that the Plan Administrator, on behalf of the Liquidation Trust, may abandon or otherwise not accept any assets that the Plan Administrator believes, in good faith, have no value to the Liquidation Trust.  Any assets so abandoned or otherwise not accepted by the Liquidation Trust shall not vest in the Liquidation Trust.  As of the Effective Date, all assets vested in the Liquidation Trust and all assets dealt with in the Plan shall be free and clear of all Liens, Claims, rights of setoff, and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order.

(c)     Certain Powers and Duties of the Liquidation Trust and Plan Administrator.

The Plan Administrator shall be the exclusive trustee of the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3) and shall continue to have all the rights and powers granted to the Plan Administrator as set forth in this Plan and applicable non-bankruptcy law.  The powers, rights, and responsibilities of the Plan Administrator shall be specified in the Liquidation Trust Agreement and shall include the authority and responsibility to: (a) receive, manage, invest, supervise, and protect the Liquidation Trust Assets; (b) pay taxes or other obligations incurred by the Liquidation Trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of the Liquidation Trust Assets; (d) calculate and implement distributions of Liquidation Trust Assets; (e) prosecute, compromise, and settle, in accordance with the specific terms of the Liquidation Trust Agreement, the Causes of Action that are Liquidation Trust Assets; (f) resolve issues involving Claims after the Effective Date; and (g) resolve issues regarding Professional Fee Claims and satisfy Allowed Professional Fee Claims from the Professional Fee Escrow Account and, if there are insufficient funds in the Professional Fee Escrow Account, the Liquidation Trust Assets.

All expenses incurred by the Liquidation Trust and the Plan Administrator shall be the sole responsibility of and paid by the Liquidation Trust, including from the Wind Down Account, and otherwise in accordance with the Liquidation Trust Agreement.

In no event later than three months after the Effective Date, and on a quarterly basis thereafter until all Cash held by the Liquidation Trust has been released or paid out in accordance with the Plan, the Plan Administrator shall file with the Bankruptcy Court a report setting forth the amounts, recipients, and dates of all Distributions made by the Plan Administrator under the Plan through each applicable reporting period.

The Plan Administrator shall not be liable for any action it takes or omits to take that it believes in good faith to be authorized or within its rights or powers unless it is ultimately and finally determined by a court of competent jurisdiction that such action or inaction was the result of fraud, gross negligence or willful misconduct.

The Plan Administrator may be removed by the Bankruptcy Court upon application for good cause shown.  In the event of the resignation or removal, liquidation, dissolution, death or incapacity of the Plan Administrator, the Bankruptcy Court shall designate another Person to

become Plan Administrator and thereupon the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of its predecessor.

       (d)      <u>Administration of the Wind Down Debtor</u>.

On or as soon as reasonably practicable after the Effective Date, in the event of a Sale Transaction, the Plan Administrator shall be authorized to commence the Wind Down and administer the Wind Down Debtor until such time as the Plan Administrator determines to dissolve and/or wind down the Wind Down Debtor under applicable law; <u>provided</u> that, notwithstanding such dissolution, the Plan Administrator shall remain authorized to continue the Wind Down, including filing any necessary documents with the appropriate authorities, including any tax returns, and to facilitate the closing of the Chapter 11 Case as to the Debtor.

**8.8.** ***U.S. Federal Income Tax Treatment of the Liquidation Trust for the Liquidation Trust Assets; Tax Reporting and Tax Payment Obligations.***

For U.S. federal income tax purposes, it is intended that the Liquidation Trust be classified as a "liquidating trust" under Treasury Regulation Section 301.7701-4(d). Accordingly, for U.S. federal income tax purposes, it is intended that the beneficiaries of the Liquidation Trust be treated as if they had received a distribution from the Estate of an undivided interest in each of the Liquidation Trust Assets (to the extent of the value of their respective interests therein) and then contributed such interests to the Liquidation Trust.

       (a)      <u>Liquidation Trust Assets Treated as Owned by Beneficiaries of Liquidation Trust</u>.

For all U.S. federal income tax purposes, all parties shall treat the transfer of Liquidation Trust Assets (net of any applicable liabilities) to the Liquidation Trust for the benefit of the beneficiaries thereof as (a) a transfer by the Debtor of the Liquidation Trust Assets directly to the beneficiaries of the Liquidation Trust (to the extent of the value of their respective interests in the Liquidation Trust Assets), followed by (b) the transfer of the Liquidation Trust Assets by the beneficiaries of the Liquidation Trust (to the extent of the value of their respective interests in the Liquidation Trust Assets) to the Liquidation Trust in exchange for the Liquidation Trust Interests. Accordingly, for U.S. federal income tax purposes, the Liquidation Trust shall be treated as a grantor trust, and the beneficiaries of the Liquidation Trust shall be treated as the grantors of the Liquidation Trust and the owners of the assets thereof.

       (b)      <u>Tax Reporting</u>.

The Plan Administrator shall be responsible for filing all U.S. federal, state, local and foreign tax returns, including, but not limited to, any documentation related thereto, for the Liquidation Trust. The Plan Administrator shall file all tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with the Plan. Within a reasonable time following the end of the taxable year, the Plan Administrator shall send to each holder of a beneficial interest appearing on its record during such year, a separate statement setting forth such holder's share of items of income, gain, loss, deduction or

credit and each such holder shall report such items on their U.S. federal income tax returns. The Plan Administrator shall allocate the taxable income, gain, loss, deduction or credit of the Liquidation Trust with respect to each holder of a Liquidation Trust Interest to the extent required by the Internal Revenue Code and applicable law.

As soon as reasonably practicable after the Effective Date, the Plan Administrator shall make a good faith valuation of the Liquidation Trust Assets, and such valuation shall be used consistently by all parties for all U.S. federal income tax purposes. The Liquidation Trust Agreement will require consistent valuation by all parties, including the Debtor, the Reorganized Debtor, the Plan Administrator, and each holder of a Liquidation Trust Interest, for all U.S. federal income tax and reporting purposes of any property held by the Liquidation Trust. The Plan Administrator also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidation Trust that are required by any taxing authority. The Plan Administrator may request an expedited determination of the tax obligations of the Liquidation Trust under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Liquidation Trust for all taxable periods through the dissolution of the Liquidation Trust.

The Liquidation Trust shall comply with all withholding and reporting requirements imposed by any U.S. federal, state, local, or foreign taxing authority, and all Distributions made by the Liquidation Trust shall be subject to any such withholding and reporting requirements.

The Liquidation Trust Agreement will provide that termination of the Liquidation Trust will occur no later than three (3) years after the Effective Date; provided, however if the Bankruptcy Court approves an extension based upon a finding that such an extension is necessary for the Liquidation Trust to complete its liquidating purpose, the term of the Liquidation Trust may be extended one or more times for a finite period not to exceed six months (and such extensions shall not exceed a total of four extensions unless the Plan Administrator receives a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidation Trust as a grantor trust for U.S. federal income tax purposes). The Liquidation Trust Agreement will also limit the investment powers of the Plan Administrator in accordance with Revenue Procedure 94-45 and will require the Liquidation Trust to distribute at least annually to each holder of a beneficial interest of a Liquidation Trust Interest, any net income plus all net proceeds from the sale of Liquidation Trust Assets, except that the Liquidation Trust may retain an amount of net income or net proceeds as is reasonably necessary to maintain the value of the Liquidation Trust Assets or to meet claims and contingent liabilities.

(c)    Tax Payment Obligations.

The Liquidation Trust shall be responsible for payment of any taxes imposed on the Liquidation Trust or the Liquidation Trust Assets. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Liquidation Trust Assets is insufficient to pay the portion of any such taxes attributable to the Liquidation Trust Assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidation Trust as a result of the resolutions of such Disputed Claims.

58

### 8.9.   *Indemnification Provisions.*

Subject to the occurrence of the Effective Date, to the fullest extent permitted by applicable law, the obligations of the Debtor as of the Effective Date to indemnify, defend, reimburse, or limit the liability of the CRO, the Independent Manager, current attorneys and other current professionals of the Debtor, and their respective Affiliates, respectively, against any Claims or Causes of Action under any indemnification provisions or applicable law, shall survive Confirmation, shall be assumed by the Debtor (but not the Reorganized Debtor in the event of a New Equity Transaction, for the avoidance of doubt) and assigned to the Liquidation Trust, which shall be deemed to have assumed the obligation, and will remain in effect after the Effective Date if such indemnification, defense, reimbursement, or limitation is owed in connection with an event occurring before the Effective Date.

### 8.10.   *Exemption from Certain Transfer Taxes and Recording Fees.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to or in connection with the Plan (including, if applicable, the Sale Transaction), including: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtor or the Reorganized Debtor; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan (including, if applicable, the Sale Transaction), including, without limitation, any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any U.S.  federal, state or local document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate U.S. federal, state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Unless the Bankruptcy Court orders otherwise, all sales, transfers, and assignments of owned and leased property approved by the Bankruptcy Court on or before the Effective Date shall be deemed to have been in furtherance of, or in connection with, this Plan.

### 8.11.   *Cancellation of Existing Securities and Agreements.*

Except for the purpose of evidencing a right to distribution under this Plan, and except as otherwise set forth in this Plan or in the Restructuring Transactions Memorandum, on the Effective Date, all agreements, including all intercreditor agreements, instruments, and other documents directly or indirectly evidencing, related to or connected with any Claim, and any rights of any Holder in respect thereof, shall be deemed cancelled, discharged and of no force or effect without further act or action under any applicable agreement, law, regulation, order, or rule.  The holders of or parties to such cancelled instruments, securities and other documentation

59

will have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan. Notwithstanding anything to the contrary herein, the Credit Documents shall continue in effect solely to the extent necessary to permit Holders of the Prepetition Secured Obligations Claims to receive distributions under this Plan on account of such Claims.

On the Effective Date, except as otherwise specifically provided for in this Plan (including in the Restructuring Transactions Memorandum): (i) the obligations of the Debtor under any certificate, share, note, bond, agreement, indenture, purchase right, option, warrant, call, put, award, commitment, registration rights, preemptive right, right of first refusal, right of first offer, co-sale right, investor rights, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of or ownership interest in the Debtor that are specifically reinstated pursuant to this Plan, if any) shall be cancelled, terminated and of no further force or effect solely as to the Debtor, without further act or action, and the Debtor and the Reorganized Debtor, as applicable, shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, calls, puts, awards, commitments, registration rights, preemptive rights, rights of first refusal, rights of first offer, co-sale rights, investor rights, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of or ownership interest in the Debtor that are specifically reinstated pursuant to this Plan, if any) shall be automatically and fully released and discharged.

### 8.12.   *Management.*

(a)      In the event of a New Equity Transaction, subject to the terms of the applicable New Organizational Documents, on the Effective Date, the manager(s) of the Reorganized Debtor shall consist of those individuals identified in the Plan Supplement to be filed with the Bankruptcy Court at or before the Confirmation Hearing.  Commencing on the Effective Date, the manager(s) of the Reorganized Debtor shall serve pursuant to the terms of the applicable New Organizational Documents, and may be replaced or removed in accordance therewith.

(b)      In the Event of a Sale Transaction, following the Effective Date, the Plan Administrator shall be the sole manager of the Wind Down Debtor.  The manager of the Debtor prior to the Effective Date shall have no continuing obligations to the Reorganized Debtor or Wind Down Debtor on and after the Effective Date and each such manager shall be deemed to have resigned or shall otherwise cease to be a manager of the Debtor on the Effective Date.

### 8.13.   *D&O Liability Insurance Policies*

In accordance with the Plan, (i) on the Effective Date, the Debtor shall be deemed to have assumed all of the Debtor's D&O Liability Insurance Policies (including, without limitation, any

"tail policy" and all agreements, documents, or instruments related thereto, which "tail policy" shall not be otherwise terminated or reduced) in effect prior to the Effective Date pursuant to sections 105 and 365(a) of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court; (ii) confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies and, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtor under the Plan as to which no Proof of Claim or Proof of Interest need be filed and such indemnity obligations shall be liabilities of the Liquidation Trust; (iii) the Wind Down Debtor and Plan Administrator, as applicable, shall retain the ability to supplement such D&O Liability Insurance Policies as the Plan Administrator may deem necessary; and (iv) for the avoidance of doubt, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the assumption of each of the unexpired D&O Liability Insurance Policies.  The D&O Liability Insurance Policies shall constitute Liquidation Trust Assets, provided that, for the avoidance of doubt, the D&O Liability Insurance Policies shall maintain coverage for those insureds currently covered by such policies for the remaining term of such policies and runoff or tail coverage after the Effective Date to the fullest extent permitted by such policies.

For the avoidance of doubt, on and after the Effective Date, the Wind Down Debtor and/or Plan Administrator shall be authorized to purchase a directors' and officers' liability insurance policy for the benefit of its members, trustees, officers, and managers in the ordinary course of business.

### 8.14.  *Corporate Action.*

(a)     On the Effective Date, the New Organizational Documents and any other applicable amended and restated corporate Organizational Documents of the Reorganized Debtor, shall be deemed authorized in all respects.  On the Effective Date, all actions contemplated by this Plan (including any transaction described in, or contemplated by, the Restructuring Transactions Memorandum) and the Restructuring Transactions shall be deemed authorized and approved in all respects, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court.

(b)     Any action under the Plan to be taken by or required of the Debtor or the Reorganized Debtor, including the adoption or amendment of certificates of formation, incorporation and by-laws, the issuance of securities and instruments, or the selection of officers or managers shall be authorized and approved in all respects, without any requirement of further action by any of the Debtor's or the Reorganized Debtor's equity holders, members, managers, boards of managers, or similar body, as applicable.

(c)     On or (as applicable) before the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized and, as applicable, directed to issue, execute, deliver, acknowledge, file, and/or record, as applicable, such securities, documents, contracts, instruments, releases and other agreements and take such other action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, in the name of and on behalf of the Debtor and the Reorganized Debtor, as applicable, without the necessity of any further Bankruptcy Court, limited liability company,

61

board, member, or shareholder approval or action. In addition, the selection of the persons who will serve as the initial officers and managers of the Reorganized Debtor as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of managers, or equity holders of the Reorganized Debtor.

(d)    The authorizations, approvals and directives contemplated by this Section 8.14 shall be effective notwithstanding any requirements under non-bankruptcy Law.

### 8.15.   *Ability to Seek and Obtain Discovery*

From and after the Effective Date, the Plan Administrator shall have the ability to seek and obtain examination (including document discovery and depositions) under Bankruptcy Rule 2004 against any Person or Entity in furtherance of the Plan and the purpose of the Liquidation Trust, and the Bankruptcy Court shall retain jurisdiction to order examinations (including examinations under Bankruptcy Rule 2004) against any Person or Entity, and to hear all matters with respect to the same.

### 8.16.   *Cash Investments in the Liquidation Trust.*

Funds in the Liquidation Trust shall be invested in demand and time deposits in banks or other savings institutions, or in other temporary, liquid investments, such as Treasury bills, consistent with the liquidity needs of the Liquidation Trust as determined by the Plan Administrator, in accordance with Bankruptcy Code section 345, unless the Bankruptcy Court otherwise requires; provided, however, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

### 8.17.   *Dissolution of the Liquidation Trust.*

The Plan Administrator shall be discharged and the Liquidation Trust shall be terminated, at such time as: (a)(i) all of the Liquidation Trust Assets have been liquidated; (ii) all duties and obligations of the Plan Administrator under the Liquidation Trust Agreement have been fulfilled; and (iii) all Distributions required under the Liquidation Trust Agreement have been made; or (b) as otherwise provided in the Liquidation Trust Agreement. Upon dissolution of the Liquidation Trust, any remaining Liquidation Trust Assets shall be transferred by the Plan Administrator to the Holders of Allowed Existing Equity Interests pursuant to Section 4.6.

### 8.18.   *Control Provisions.*

To the extent there is any inconsistency between this Plan as it relates to the Liquidation Trust and the Liquidation Trust Agreement, the terms of the Plan shall control.

### 8.19.   *Limitation of Liability; Indemnification*

The Plan Administrator and each of its respective designees, employees, agents, representatives or professionals shall not be liable for the act or omission of any other member, designees, agent or representative of the Plan Administrator, nor shall they be liable for any act

or omission taken or omitted to be taken in their respective capacities, other than acts or omission resulting from willful misconduct, gross negligence, or fraud. The Plan Administrator shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee. The Plan Administrator may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, which consultation may act as a defense for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons. Notwithstanding such authority, the Plan Administrator shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidation Trust shall indemnify and hold harmless the Plan Administrator and its designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of the Plan; provided, however, that no such indemnification will be made to such persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

### 8.20.   *Preservation of Causes of Action*

In accordance with section 1123(b)(3) of the Bankruptcy Code, but subject in all respects to Article XIII, the Reorganized Debtor, or with respect to any Causes of Action that are Liquidation Trust Assets (including, for the avoidance of doubt, the Avoidance Actions), the Plan Administrator, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any Avoidance Actions not otherwise released under the Plan and any other actions specifically enumerated in the Schedule of Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor or with respect to any Causes of Action that are Liquidation Trust Assets (including, for the avoidance of doubt, the Avoidance Actions), the Plan Administrator, may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor or the Liquidation Trust, as applicable.

**No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtor, the Reorganized Debtor, or with respect to any Causes of Action that are Liquidation Trust Assets, the Plan Administrator, as applicable, will not pursue any and all available Causes of Action against it. The Debtor, the Reorganized Debtor, or with respect to any Causes of Action that are Liquidation Trust Assets, the Plan Administrator, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. For the avoidance of doubt, all of the Debtor's and the Estate's Causes of Action shall vest in the Liquidation Trust upon the Effective Date unless otherwise specifically identified as sold to a Successful Bidder pursuant to the Sale Documents or retained by the Reorganized**

**Debtor pursuant to the New Equity Documents, as applicable, or as otherwise specifically provided in the Schedule of Retained Causes of Action.**

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, including, pursuant to Article XIII hereof, the Debtor, Reorganized Debtor, or with respect to any Causes of Action that are Liquidation Trust Assets, Plan Administrator, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the confirmation of the Plan or Consummation.  For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Section 8.20 include any claim or Cause of Action released pursuant to Article XIII.

In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that the Debtor may hold against any Entity shall vest in the Reorganized Debtor, except for Causes of Actions that are Liquidation Trust Assets (including, for the avoidance of doubt, the Avoidance Actions), which shall vest in the Liquidation Trust in accordance with the Plan.  The Reorganized Debtor, or with respect to any Causes of Action that are Liquidation Trust Assets (including, for the avoidance of doubt, the Avoidance Actions), the Plan Administrator, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third-party or further notice to or action, order, or approval of the Bankruptcy Court.  The Plan Administrator shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action that are Liquidation Trust Assets, and to decline to do any of the foregoing, without the consent or approval of any third-party or further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE IX.
## DISTRIBUTIONS

### 9.1.    *Distributions.*

The Disbursing Agent shall make all distributions to the applicable Holders of Allowed Claims in accordance with the terms of this Plan and the Liquidation Trust Agreement.  Following the transfer of the Liquidation Trust Assets to the Liquidation Trust, the Plan Administrator shall make continuing efforts to liquidate all Liquidation Trust Assets in accordance with the Plan and the Liquidation Trust Agreement, provided that the timing of all Distributions made by the Plan Administrator to Liquidation Trust Beneficiaries shall be in accordance with the Liquidation Trust Agreement and the Plan.

**9.2.** *No Postpetition Interest on Claims.*

Except with respect to the Prepetition Secured Obligations Claims, as provided in Section 4.3, and unless otherwise specifically provided for in the Confirmation Order or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

**9.3.** *Date of Distributions.*

Unless otherwise provided herein, any distributions under this Plan and deliveries to be made hereunder shall be made on the applicable Distribution Date; provided that the Plan Administrator may utilize periodic Distribution Dates to the extent that use of a periodic Distribution Date does not delay payment of the Allowed Claim more than thirty (30) days. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**9.4.** *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various lists of Holders of Claims in each of the Classes, as maintained by the Debtor, or its agents, shall be deemed closed and there shall be no further changes in the record as to the Holders of any of the Claims after the Distribution Record Date. Neither the Debtor nor the Disbursing Agent shall have any obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date. Additionally, with respect to payment of any Cure Amounts or any Cure Disputes in connection with the assumption and/or assignment of the Debtor's Executory Contracts and Unexpired Leases, neither the Debtor nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease, even if such non-Debtor party has sold, assigned or otherwise transferred its Claim for a Cure Amount.

**9.5.** *Disbursing Agent.*

(a)    Powers of Disbursing Agent. The Disbursing Agent shall be empowered to: (i) effectuate all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (ii) make all applicable distributions under this Plan or payments contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court (including any order issued after the Effective Date), pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b)    Expenses Incurred by the Disbursing Agent on or After the Effective Date. Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable and documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims

(including reasonable attorney and other professional fees and expenses) of the Disbursing Agent shall be paid in Cash and will not be deducted from distributions under this Plan made to Holders of Allowed Claims by the Disbursing Agent.  The foregoing fees and expenses shall be paid in the ordinary course, upon presentation of invoices to the Plan Administrator and without the need for approval by the Bankruptcy Court.  In the event that the Disbursing Agent and the Plan Administrator are unable to resolve a dispute with respect to the payment of the Disbursing Agent's fees, costs and expenses, the Disbursing Agent may elect to submit any such dispute to the Bankruptcy Court for resolution.

(c)     Bond.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidation Trust.  Furthermore, any such Entity required to give a bond shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

(d)     Cooperation with Disbursing Agent.  The Plan Administrator shall use all commercially reasonable efforts to provide the Disbursing Agent with the amount of Claims and the identity and addresses of Holders of Claims, in each case, that are entitled to receive distributions under this Plan, as set forth in the Debtor's books and records.  The Wind Down Debtor and Plan Administrator, as applicable, will cooperate in good faith with the Disbursing Agent to comply with the withholding and reporting requirements outlined in Section 9.13 of this Plan.

**9.6.     *Delivery of Distribution.***

Subject to the provisions contained in this Article IX, with respect to distributions required to be made to Holders of Allowed Claims by the Plan Administrator under this Plan, the Disbursing Agent will, subject to Bankruptcy Rule 9010, make all distributions under this Plan or payments to any Holder of an Allowed Claim as and when required by this Plan at: (a) the address of such holder on the books and records of the Debtor or its agents; or (b) the address in any written notice of address change delivered to the Debtor or the Disbursing Agent, including any addresses included on any filed Proofs of Claim or transfers of Claim filed with the Bankruptcy Court.  In the event that any distribution under this Plan to any such Holder is returned as undeliverable, no distribution or payment to such Holder shall be made unless and until the Disbursing Agent has been notified of the then current address of such Holder, at which time or as soon as reasonably practicable thereafter such distribution under this Plan shall be made to such Holder without interest; provided, however, that such distributions under this Plan or payments shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the later of ninety (90) days from: (i) the Effective Date; and (ii) the first Distribution Date after such Holder's Claim is first Allowed.

**9.7.     *Unclaimed Property.***

Ninety (90) days from the later of: (i) the Effective Date, and (ii) the first Distribution Date after such Holder's Claim is first Allowed, all unclaimed property, wherever located, or interests in property distributable hereunder on account of such Claim shall revert to the Debtor

and become a Liquidation Trust Asset, and any Claim or right of the Holder of such Claim to such property, wherever located, or interest in property shall be discharged and forever barred. The Plan Administrator and Disbursing Agent, if applicable, shall have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the Debtor's books and records, and the Proofs of Claim filed against the Debtor, as reflected on the Claims Register maintained by the Claims Agent.

### 9.8.    *Satisfaction of Claims.*

Unless otherwise specifically provided herein, any distributions under this Plan and deliveries to be made on account of Allowed Claims hereunder shall be in complete settlement, satisfaction and discharge of such Allowed Claims.

### 9.9.    *Manner of Payment Under Plan.*

Except as specifically provided herein, at the option of the Plan Administrator, any Cash payment to be made hereunder may be made by a check or wire transfer.

### 9.10.    *De Minimis Cash Distributions.*

The Plan Administrator and the Disbursing Agent, if applicable, shall have no obligation to make a distribution that is less than $50.00 in Cash.

### 9.11.    *Distributions on Account of Allowed Claims Only.*

Notwithstanding anything herein to the contrary, no distribution under this Plan shall be made on account of a Claim until such Claim becomes an Allowed Claim.

### 9.12.    *No Distribution in Excess of Amount of Allowed Claim.*

Notwithstanding anything herein to the contrary, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution under this Plan of a value in excess of the Allowed amount of such Claim.

### 9.13.    *Withholding and Reporting Requirements.*

In connection with this Plan and all distributions under this Plan hereunder, the Plan Administrator, the Disbursing Agent and any Claims Agent shall comply with all withholding and reporting requirements imposed by any U.S. federal, state, provincial, local or foreign tax law, and all distributions under this Plan hereunder shall be subject to any such withholding and reporting requirements. The Plan Administrator, the Disbursing Agent and any Claims Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including requiring a Holder of a Claim to submit appropriate tax and withholding certifications. Notwithstanding any other provision of this Plan: (a) each Holder of an Allowed Claim that is to receive a distribution under this Plan under this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations on account of such distribution; and (b) no distributions under this Plan shall be

67

required to be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Plan Administrator, the Disbursing Agent or the Claims Agent, as applicable, for the payment and satisfaction of such tax obligations or has, to their satisfaction, established an exemption therefrom.

**9.14.** *Claims Paid or Payable by Third Parties*

(a)      Claims Paid by Third Parties

The Debtor or Plan Administrator, as applicable, shall reduce in full an Allowed Claim, and such Claim shall be Disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor, the Liquidation Trust, or the Plan Administrator; provided that the Debtor or Plan Administrator, as applicable, shall provide 21 days' notice to the Holder prior to any disallowance of such Claim during which period the Holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Court. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and thereafter receives payment from a party that is not the Debtor, the Liquidation Trust, or the Plan Administrator on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the Debtor, the Liquidation Trust, or the Plan Administrator, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the Petition Date. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Debtor, the Liquidation Trust, or the Plan Administrator, as applicable, annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

(b)      Claims Payable by Insurers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim shall be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Court.

If an applicable insurance policy has a self insured retention ("**SIR**") or a deductible, the Holder of an Allowed Claim that is payable pursuant to such insurance policy, upon the Allowance of such Claim, shall have an Allowed General Unsecured Claim against the Debtor up to the amount of the SIR or deductible amount that may be established upon the liquidation of the Claim, and such Holder's recovery from the Debtor, shall be solely in the form of its distribution on account of such Allowed General Unsecured Claim under this Plan.  Such SIR shall be considered satisfied pursuant to this Plan through allowance of the General Unsecured Claim solely up to the amount of the applicable SIR or deductible, if any; provided, however,

that nothing herein obligates the Debtor, Wind Down Debtor, or any of their successors or assigns to satisfy any SIR under any insurance policy, including any D&O Liability Insurance Policies. Any recovery on account of the Claim in excess of the SIR or the deductible established upon the liquidation of the Claim shall be recovered solely from the Debtor's insurance coverage, if any, and only to the extent of available insurance coverage and any proceeds thereof. For the avoidance of doubt, nothing herein or in the Confirmation Order shall modify or impair any of the Debtor's insurers' rights to be reimbursed or paid in the ordinary course according to the terms of the applicable insurance policy, including, without limitation, with respect to any amounts owed to such insurers under an applicable SIR. Nothing in this Plan shall be construed to limit, extinguish, expand, or diminish the insurance coverage that may exist or shall be construed as a finding that liquidated any Claim payable pursuant to an insurance policy. Nothing herein relieves any Entity from the requirement to timely file a Proof of Claim by the applicable Bar Date.

(c)     Applicability of Insurance Policies

Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE X.
## PROCEDURES FOR RESOLVING CLAIMS

**10.1.** *Claims Process.*

Except as otherwise required by order of the Bankruptcy Court, Holders of Claims must file Proofs of Claim with the Claims Agent or the Bankruptcy Court and shall be subject to the Bankruptcy Court claims process as set forth in this Plan and/or Confirmation Order.

**10.2.** *Objections to Claims.*

Other than with respect to Fee Claims, only the Plan Administrator and Wind Down Debtor, as applicable, shall be entitled to object to Claims on and after the Effective Date, except that nothing herein shall be understood to waive the Reorganized Debtor's, Plan Administrator's, or the Wind Down Debtor's right to argue that a Claim filed against the Debtor has been discharged under the Plan. Any objections to Claims (other than Administrative Expense Claims) shall be served and filed on or before the later of: (a) one hundred eighty (180) days following the later of (x) the Effective Date and (y) the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a Holder of such Claim; and (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) hereof. From and after the Effective Date, either the Plan Administrator or the Wind Down Debtor, as applicable, may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

**10.3.**   *Payments and Distributions with Respect to Disputed Claims.*

If an objection to a Claim is filed as set forth in Section 10.2, except as otherwise agreed by (i) the Plan Administrator or (ii) the Wind Down Debtor, as applicable, if any portion of a Claim (other than a Fee Claim) is a Disputed Claim, no payment or distribution (partial or otherwise) provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**ARTICLE XI.**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**11.1.**   *Assumption and Assignment Procedures in the Bidding Procedures Order.*

Pursuant to the Bidding Procedures Order, the Bankruptcy Court approved certain Assumption and Assignment Procedures for the assumption and assignment of Executory Contracts and Unexpired Leases to a Successful Bidder.   The Debtor's service of any Assumption and Assignment Notice or Supplemental Assumption and Assignment Notice on counterparties to any Executory Contracts and Unexpired Leases proposed to be assumed or assumed and assigned shall be deemed sufficient notice of any such proposed assumption or assumption and assignment pursuant to the terms of the Plan.

Any counterparty to an Executory Contract or Unexpired Lease that fails to raise a timely objection to any Assumption and Assignment Notice or Supplemental Assumption and Assignment Notice shall be deemed to have waived any objection to the designated Cure Amount, adequate assurance of future performance, or any other objection to the assumption or assumption and assignment of the relevant Executory Contract or Unexpired Lease pursuant to the Bidding Procedures Order or this Plan.

**11.2.**   *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

(a)   Sale Transaction. On the Effective Date, in the event a Sale Transaction is consummated, to the extent assumption has not already occurred pursuant to the Sale Order, the Assumed Contracts to be assumed and assigned in connection with such Sale Transaction will be deemed assumed and assigned to the applicable Successful Bidder in accordance with the Bidding Procedures Order, Sale Order, and applicable Sale Documents.   Except as otherwise provided in the Sale Order, following the closing of a Sale Transaction, the Debtor or Plan Administrator, as applicable, shall file a notice with the Bankruptcy Court identifying the Assumed Contracts that were assumed and assigned to the applicable Successful Bidder at the closing of the Sale Transaction (the "***Post-Closing Assumed Contracts List***"), which may be supplemented or amended in the event of any omission.   Only those Executory Contracts or Unexpired Lease identified on the Post-Closing Assumed Contracts List shall be deemed assumed and assigned to the Successful Bidder as of the closing of the Sale Transaction.

On the Effective Date, in the event of a Sale Transaction, except as otherwise provided herein, any Executory Contract or Unexpired Lease (i) not previously assumed, (ii) not assumed and assigned in accordance with any Sale Documents or the Sale Order, (iii) not previously rejected pursuant to an order of the Bankruptcy Court, or (iv) subject of a pending motion to

70

reject, assume or assume and assign, will be deemed rejected by the Debtor as of the Effective Date except any Executory Contract or Unexpired Lease identified on the Plan Assumed Contracts List or Supplemental Plan Assumed Contracts List.

(b)     New Equity Transaction. On the Effective Date, in the event of a New Equity Transaction, except as otherwise provided herein, any Executory Contracts and Unexpired Leases (i) not previously assumed, or (ii) not previously rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected as of the Effective Date except any Executory Contract or Unexpired Lease previously identified on the Assumption and Assignment Notice or Supplemental Assumption and Assignment Notice or identified on the Plan Assumed Contracts List or Supplemental Plan Assumed Contracts List.

Following the Effective Date, the Reorganized Debtor or Plan Administrator, as applicable, shall file a notice with the Bankruptcy Court identifying the Assumed Contracts that were assumed by the Reorganized Debtor, assumed by the Wind Down Debtor (if applicable), or assumed and assigned to the Liquidation Trust  (the "***Post-Effective Date Assumed Contracts List***"), which may be supplemented or amended in the event of any omission.  Only those Executory Contracts or Unexpired Leases identified on the Post-Effective Date Assumed Contracts List shall be deemed as being assumed by the Reorganized Debtor, assumed by the Wind Down Debtor (if applicable), or assumed and assigned to the Liquidation Trust, as applicable, and as of the Effective Date.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions, assumptions and assignments, or rejections of the Debtor's Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date or, as to assumed Executory Contracts and Unexpired Leases, on such later date as may be identified on the Assumed Contracts List.  Each Executory Contract and Unexpired Lease that has not been assumed or assumed and assigned pursuant to Bankruptcy Court order, the Bidding Procedures, the Sale Documents, the New Equity Documents, or this Plan, shall be deemed rejected as of the Effective Date.  To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease or the execution of any other Restructuring Transaction (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  For the avoidance of doubt, confirmation of the Plan shall not, except as otherwise provided herein or in the Restructuring Transactions Memorandum, be deemed an assignment of any Executory Contract or Unexpired Lease of the Debtor, notwithstanding any change in name, organizational form, or jurisdiction of organization of the Debtor in connection with the occurrence of the Effective Date.

Notwithstanding anything to the contrary herein, the Debtor reserves the right to amend or supplement the Plan Assumed Contracts List in its discretion prior to the Effective Date (or such later date as may be permitted by this Plan or the Confirmation Order); provided that the Debtor shall give prompt notice of any such amendment or supplement to any affected

71

counterparty and such counterparty shall have a reasonable opportunity to object thereto on any grounds.

### 11.3.   *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Notwithstanding anything to the contrary herein, in the event of a Sale Transaction, the terms of the Assumption and Assignment Procedures, Bidding Procedures Order, any Sale Documents, and any Sale Order shall govern the cure of defaults, assumption and assignment, and compliance with section 365 of the Bankruptcy Code with respect to any Executory Contracts or Unexpired Leases assumed and assigned pursuant to such Sale Documents and Sale Order.

In the event of a New Equity Transaction, except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such Executory Contract or Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan, any monetary defaults arising under such Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the appropriate amount (the "***Cure Amount***") in full in Cash by the Debtor, Reorganized Debtor, or Plan Administrator (as shall be designated in the Plan Supplement, Definitive Documents, or any other notice filed with the Bankruptcy Court) either (i) on the Effective Date or as soon as reasonably practicable thereafter, or (ii) in the event of a Cure Dispute, within thirty (30) days after the date on which such Cure Dispute has been resolved (either consensually or through judicial decision).

With respect to all Executory Contracts and Unexpired Leases to which the Debtor is a party that were not previously identified in the Assumption and Assignment Notice or any Supplemental Assumption and Assignment Notice under the Bidding Procedures Order, the Debtor shall file the Plan Assumed Contracts List, setting forth the Cure Amount, if any, for each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to Section 11.1 of this Plan, and serve such Plan Assumed Contracts List on each applicable counterparty.  **Any party to an Executory Contract or Unexpired Lease to which a Debtor is a counterparty that fails to object to the applicable Cure Amount listed on the Plan Assumed Contracts List within fourteen (14) calendar days of the filing thereof, shall be forever barred, estopped and enjoined from disputing the Cure Amount set forth on the Plan Assumed Contracts List (including a Cure Amount of $0.00) and/or from asserting any Claim against the applicable Debtor or Reorganized Debtor arising under section 365(b)(1) of the Bankruptcy Code except as set forth on the Plan Assumed Contracts List.**

If, prior to the Effective Date, the Debtor identifies additional Executory Contracts and Unexpired Leases to which the Debtor is a counterparty that might be assumed or assumed and assigned by the Debtor pursuant to the Plan, the Debtor will promptly file a supplemental Assumed Contracts List ("***Supplemental Plan Assumed Contracts List***") and serve such Supplemental Assumed Contracts List on each applicable counterparty.  Each applicable counterparty shall have fourteen (14) calendar days of the filing thereof to object to the applicable Cure Amount set forth on the Supplemental Assumed Contracts List.

In the event of a dispute relating to the Plan Assumed Contracts List or Supplemental Plan Assumed Contracts List (each, a "***Cure Dispute***") regarding: (i) the Cure Amount; (ii) the

ability of the Debtor, Successful Bidder, Reorganized Debtor, Wind Down Debtor, or Plan Administrator, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or assumed and assigned; or (iii) any other matter pertaining to the proposed assumption or assumption and assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving such Cure Dispute and approving the assumption or assumption and assignment.  To the extent a Cure Dispute relates solely to the Cure Amount, the Debtor may assume and/or assume and assign the relevant contract or lease prior to the resolution of the Cure Dispute; provided that the Successful Bidder (in the event of a proposed assumption by the Reorganized Debtor or assumption and assignment to the Successful Bidder), Wind Down Debtor (in the event of assumption by the Debtor for the benefit of the Wind Down Debtor), or Plan Administrator (in the event of assumption and assignment to the Liquidation Trust) reserves Cash in an amount sufficient to pay the full amount asserted as the required cure payment by the non-Debtor party to such contract or lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court).

**11.4.**   *Claims Based on Rejection of Executory Contracts and Unexpired Leases.*

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases under this Plan must be filed with the Claims Agent within thirty (30) days after the date of the effectiveness of the rejection of the applicable Executory Contract or Unexpired Lease.  **Any Proofs of Claim arising from the rejection of the Executory Contracts and Unexpired Leases that are not timely filed shall be subject to disallowance by further order of the Bankruptcy Court upon objection on such grounds.**  All Allowed Claims arising from the rejection of Executory Contracts or Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with Article IV, except to the extent such Allowed Claim, or a portion of such Allowed Claim, arising from the rejection of an Executory Contract is secured, in which case such Allowed Claim, or such portion of such Allowed Claim, shall be an Other Secured Claim and treated in accordance with Article IV.

**11.5.**   *Reservation of Rights.*

Neither the exclusion nor inclusion of any contract or lease in the Plan Assumed Contracts List, Supplemental Plan Assumed Contracts List, or the Assumption and Assignment Notice or any Supplemental Assumption and Assignment Notice under the Bidding Procedures Order, as applicable, nor anything contained in the Plan or Definitive Documents, nor the Debtor's delivery of a notice of proposed assumption or assumption and assignment and proposed Cure Amount to any contract or lease counterparties, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor, Reorganized Debtor, Plan Administrator, or Liquidation Trust has any liability thereunder.

If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor, Reorganized Debtor, or Plan Administrator, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.  If there is a dispute

73

regarding a Debtor's, Reorganized Debtor's, Plan Administrator's, or Liquidation Trust's liability under an assumed Executory Contract or Unexpired Lease, the Reorganized Debtor or Plan Administrator, as applicable, shall be authorized to move to have such dispute heard by the Bankruptcy Court pursuant to Article XIV.

### 11.6.  *Insurance Policies.*

All of the Debtor's insurance policies (including all D&O Liability Insurance Policies) and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, the Debtor shall be deemed to have assumed for the benefit of the Estate and the Liquidation Trust all insurance policies and any agreements, documents, and instruments related thereto that have not been previously rejected or the subject of a motion to reject.  Following the Effective Date, the Plan Administrator shall have all rights to enforce the terms of any of the Debtor's insurance policies.

### 11.7.  *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### 11.8.  *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

### ARTICLE XII.
### CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

### 12.1.  *Conditions Precedent to Confirmation.*

Confirmation of this Plan is subject to the satisfaction or waiver of the following conditions:

(a)   the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in a manner consistent in all material respects with the Plan;

(b)     entry of the Conditional Approval and Procedures Order;

(c)     entry of the Confirmation Order;

(d)     the Debtor's designation of a Successful Bid and Successful Bidder pursuant to the Bidding Procedures Order; and

(e)     the Successful Bid set forth in the applicable Sale Documents or New Equity Documents shall not have been terminated in accordance with their terms.

### 12.2.   *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date is subject to the satisfaction or waiver of the following conditions:

(a)     the Confirmation Order having become a Final Order in the Chapter 11 Case, which shall not have been stayed, reversed, vacated, amended, supplemented or otherwise modified;

(b)     no court of competent jurisdiction or other competent governmental or regulatory authority having issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the Restructuring Transactions or consummation of the Plan;

(c)     each of the applicable Definitive Documents having been executed, delivered, acknowledged, and/or filed, as applicable, by the Entities and Persons intended to be parties thereto and effectuated and remain in full force and effect, and any conditions precedent related thereto or contained therein having been satisfied before or contemporaneously with the occurrence of the Effective Date or otherwise waived in accordance with such applicable Definitive Documents;

(d)     in the event of the New Equity Transaction, each of the offers, issuances, sales, and/or deliveries of New Equity in connection with the New Equity Transaction shall be exempt from the registration and prospectus delivery requirements of the Securities Act, no proceeding by any Governmental Unit or other Entity or Person that alleges that any such offer, issuance, sale and/or delivery is not exempt from the registration and prospectus delivery requirements of the Securities Act shall be pending on the Effective Date, and no such proceeding shall be threatened in writing or instituted by any Governmental Unit on or prior to the Effective Date;

(e)     all of the actions set forth in the Restructuring Transactions Memorandum, as applicable, having been completed and implemented;

(f)     in the event of a New Equity Transaction, the New Equity Documents, as applicable, not having been terminated in accordance with their terms;

(g)     in the event of a Sale Transaction, the Sale Documents, as applicable, not having been terminated in accordance with their terms;

(h)     in the event of a Sale Transaction, the Sale Order having become a Final Order in the Chapter 11 Case, which shall not have been stayed, reversed, vacated, amended, supplemented or otherwise modified;

(i)     there not having been instituted or threatened to be instituted any action, proceeding, application, claim, counterclaim, or investigation (whether formal or informal) by any Governmental Entity (x) making illegal, enjoining, or otherwise prohibiting the consummation of the Restructuring Transactions contemplated herein and in the Definitive Documents or (y) imposing a material award, claim, injunction, fine or penalty that, in each case, both (1) is not dischargeable, as determined by the Bankruptcy Court in the Confirmation Order, and (2) has a material adverse effect on the financial condition or operations of the Reorganized Debtor, taken as whole;

(j)     the Debtor having obtained all authorizations, consents and regulatory approvals, if any, required to be obtained, and having filed all notices and reports, if any, required to be filed, including with any Governmental Unit, by the Debtor in connection with this Plan's effectiveness, in each case, as may be required by a Governmental Unit;

(k)     in the event of the New Equity Transaction, the New Equity to be issued and/or delivered on the Effective Date having been validly issued by the Reorganized Debtor, having been fully paid and non-assessable, and being free and clear of all taxes, Liens, Claims, Interests, and other encumbrances, pre-emptive rights, rights of first refusal, subscription rights and similar rights, except for any restrictions on transfer as may be imposed by (i) applicable securities Laws and (ii) the New Organizational Documents of the Reorganized Debtor;

(l)     all requisite filings with any Governmental Unit and third parties having become effective, and all such Governmental Unit and third parties having approved or consented to the Restructuring Transactions, to the extent required;

(m)     any and all requisite regulatory approvals, and any other authorizations, consents, rulings, or documents required to implement and effectuate the Restructuring Transactions having been obtained;

(n)     the Liquidation Trust shall be established and validly existing and the Liquidation Trust Agreement shall have been executed; and

(o)     the following documents being in full force and effect substantially contemporaneous with the consummation of the Restructuring Transactions, and not having been, as applicable, stayed, modified, reversed, vacated, subject to any pending appeal, and/or terminated prior to the Effective Date: (i) the New Organizational Documents, if applicable; (ii) any Sale Order, if applicable; (iii) to the extent not included in the foregoing, all documents needed to effectuate the Restructuring Transactions; and (iv) all other documents necessary to consummate a transaction of the type contemplated by this Plan to the extent not otherwise listed above.

**12.3.** *Satisfaction and Waiver of Conditions Precedent.*

Except as otherwise provided herein, any actions taken on the Effective Date shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.  Any of the conditions set forth in Section 12.1 and Section 12.2 of this Plan may be waived in whole or part upon agreement by the Debtor and the Prepetition Secured Parties, and as the case may be, without notice and a hearing, and the Debtor's benefits under any "mootness" doctrine, but only to the extent applicable, shall be unaffected by any provision hereof.  The failure to assert the non-satisfaction of any such conditions shall not be deemed a waiver of any other rights hereunder, and each such right shall be deemed an ongoing right that may be asserted or waived (as set forth herein) at any time or from time to time.

**12.4.** *Effect of Failure of Conditions.*

If all of the conditions to effectiveness have not been satisfied (as provided in Section 12.1 and Section 12.2 hereof) or duly waived (as provided in Section 12.3 hereof) and the Effective Date has not occurred on or before the first Business Day that is more than 30 days after the Confirmation Date, or by such later date as set forth by the Debtor, in consultation with the Prepetition Secured Parties, in a notice filed with the Bankruptcy Court prior to the expiration of such period, then this Plan shall be null and void in all respects.  If the Confirmation Order is vacated pursuant to this Section 12.4, this Plan shall be null and void in all respects, the Confirmation Order shall be of no further force or effect, no distributions under this Plan shall be made, the Debtor and all Holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and upon such occurrence, nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims against or Interests in the Debtor; (b) prejudice in any manner the rights of the Holder of any Claim against or Interest in the Debtor; or (c) constitute an admission, acknowledgment, offer or undertaking by of the Debtor or any other Person with respect to any matter set forth in the Plan.

**12.5.** *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, the Debtor and inure to the benefit of and be binding on such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is impaired under this Plan and whether or not such Holder has accepted this Plan.

The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen days after entry of the order shall be waived by the Confirmation Order. The Confirmation Order shall take effect immediately and shall not be stayed pursuant to the Bankruptcy Code, Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062 or otherwise.

**12.6.**   *Substantial Consumption.*

Substantial consummation of this Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

# ARTICLE XIII.
## RELEASE, INJUNCTION, AND RELATED PROVISIONS

**13.1.**   *Discharge of Claims and Termination of Equity Interests; Compromise and Settlement of Claims, Equity Interests, and Controversies.*

**Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Equity Interests and Claims of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against the Debtor, the Reorganized Debtor or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim is Allowed; or (3) the Holder of such Claim or Equity Interest has accepted the Plan.  Except as otherwise provided herein, any default by the Debtor with respect to any Claim that existed immediately prior to or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.  For the avoidance of doubt, (i) nothing in this Section 13.1 shall affect the rights of Holders of Claims to seek to enforce the Plan, including the distributions to which Holders of Allowed Claims are entitled under the Plan, and (ii) notwithstanding any other Plan provision to the contrary, in the event a Sale Transaction is consummated, the Debtor shall not receive a discharge, pursuant to section 1141(d)(3) of the Bankruptcy Code.**

**In consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair,**

78

equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle any Claims against the Debtor and its Estate, as well as claims and Causes of Action against other Entities.

13.2.   *Releases by the Debtor.*

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor) and their respective assets and properties (the "Debtor Release") from any and all claims, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtor, including, without limitation, (i) the Chapter 11 Case, this Combined Disclosure Statement and Plan, the Definitive Documents, the New Equity Transaction, the Sale Transaction, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between the Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Combined Disclosure Statement and Plan, the Plan Supplement, the Definitive Documents, any Sale Documents, any New Equity Documents,  or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Case; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtor or the Reorganized Debtor; (vii) any actions taken against the Debtor or any of its Affiliates prior to the Effective Date to recover on any Claim against the Debtor or any Equity Interest in the Debtor; and/or (viii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan, in each case, that the Debtor would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, the Debtor, its Estate or the Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; provided, however, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (x) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party; and/or (y) the rights of the Debtor, Reorganized Debtor, Wind

79

Down Debtor, or Plan Administrator to enforce this Plan, any New Equity Documents, any Sale Documents, and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Restructuring Transactions or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release. Notwithstanding the foregoing, nothing in this Section 13.2 shall or shall be deemed to prohibit the Debtor, Reorganized Debtor, Wind Down Debtor, or Plan Administrator from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non- compete obligation owed to the Debtor or the Reorganized Debtor.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; and (2) all Retained Causes of Action set forth in the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtor and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after consideration of the likelihood of success of any Claims released by the Debtor; and (6) a bar to any of the Debtor, its Estate, the Reorganized Debtor, the Wind Down Debtor, or the Plan Administrator from asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.

13.3.   *Third-Party Release.*

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any Affiliates, heirs, executors, administrators, successors,

80

assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third-Party Release") from any and all Claims, Interests, Causes of Action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to the Debtor, including, without limitation, (i) the Chapter 11 Case, this Combined Disclosure Statement and Plan, the Definitive Documents, the New Equity Transaction, the Sale Transaction, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between the Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of this Combined Disclosure Statement and Plan, the Plan Supplement, the Definitive Documents, any Sale Documents, any New Equity Documents,  or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Case; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtor or the Reorganized Debtor; (vii) any actions taken against the Debtor or any of its Affiliates prior to the Effective Date to recover on any Claim against the Debtor or any Equity Interest in the Debtor; and/or (viii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (x) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party; and/or (y) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Documents, any New Equity Documents, and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or

81

agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; or (2) any retained Causes of Action, including, without limitation, as set forth on the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtor and its Estate; (6) fair, equitable, and reasonable; (7) given and made after consideration of the likelihood of success of any Claims released pursuant to the Third-Party Release and after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.

For the avoidance of doubt, neither the Third-Party Release nor any other provision of this Section 13.3 shall apply to any Person or Entity that makes the Third-Party Release Opt-Out Election.

13.4. *Exculpation.*

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan, the Exculpated Party shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to: the administration of the Chapter 11 Case, commencement of the Chapter 11 Case, pursuit of confirmation and consummation of the Plan, making distributions under the Plan, the Disclosure Statement, the New Equity Transaction, the Sale Transaction, the Sale Process, the Sale Order, or the solicitation of votes for, or confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtor; or the transactions or documentation in furtherance of any of the foregoing; or any other postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor, the approval of the Disclosure Statement or confirmation or consummation of this Plan; provided, however, that the foregoing provisions of this Exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party; and/or (ii) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or Final

Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel, to the extent otherwise permitted under applicable non-bankruptcy law, concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions. The foregoing Exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this Section 13.4 shall or shall be deemed to prohibit the Debtor, the Reorganized Debtor, or the Plan Administrator from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtor or the Reorganized Debtor, in each case unless otherwise expressly provided for in this Plan. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Party from liability.

13.5.   *Injunction.*

Except as otherwise provided herein or for obligations issued pursuant hereto, all Persons or Entities that have held, hold, or may hold (i) Claims or Interests in or against the Debtor, its property, or the Estate, or (ii) any claims or Causes of Action that have been settled, released, discharged, or are subject to Exculpation pursuant to Article XIII, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Plan Administrator, the Liquidation Trust, the Wind Down Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Party: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, claims, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor, the Plan Administrator, the Liquidation Trust, the Wind Down Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Party on account of or in connection with or with respect to any such Claims, Interests, claims, or Causes of Action; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Plan Administrator, the Liquidation Trust, the Wind Down Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Party or the property or Estate of the Debtor, the Plan Administrator, the Liquidation Trust, the Wind Down Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Party on account of or in connection with or with respect to any such Claims, Interests, claims, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estate of the Debtor, the Plan Administrator, the Liquidation Trust, the Wind Down Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Party on account of or in connection with or with respect to any such Claims, Interests, claims, or Causes of Action unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in

83

**connection with or with respect to any Claims, Interests, claims, or Causes of Action released, discharged, exculpated, or settled pursuant to the Plan.**

13.6.    *Gatekeeper Provision.*

No party may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a Cause of Action of any kind against the Released Parties or the Exculpated Party that relates to, or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, a Cause of Action subject to Section 13.2, Section 13.3, or Section 13.4 related to the Chapter 11 Case and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Chapter 11 Case, the Combined Disclosure Statement and Plan (including, for the avoidance of doubt, the Plan Supplement), the Sale Order, the Definitive Documents, or any transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the pursuit of confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date without first (1) requesting a determination from the Bankruptcy Court, after notice and a hearing, that such Cause of Action represents a colorable claim against a Released Party or Exculpated Party, and is not a Claim that the Debtor released under the Plan, which request must attach the complaint or petition proposed to be filed by the requesting party; and (2) obtaining from the Bankruptcy Court specific authorization for such party to bring such Cause of Action against any such Released Party or Exculpated Party. Any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Cause of Action is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable Cause of Action.

13.7.    *Setoffs and Recoupment.*

Except as otherwise provided herein, the Debtor, Reorganized Debtor, Wind Down Debtor, or the Plan Administrator, as applicable, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy or non-bankruptcy law, or as may be agreed to by the Holder of an Allowed Claim, may set off or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any claims, rights, and Causes of Action of any nature that the applicable Debtor, Reorganized Debtor, Wind Down Debtor, or Liquidation Trust may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan, a Final

Order or otherwise); provided that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor, Reorganized Debtor, Wind Down Debtor, or the Plan Administrator, as applicable, of any such claims, rights, and Causes of Action.

### 13.8.   *Release of Liens.*

Except as otherwise provided in the Confirmation Order, herein or in any contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtor elects to reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns or the Wind Down Debtor, Liquidation Trust, or Plan Administrator, as applicable.  Any Holder of a Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtor, to release any Collateral or other property of the Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtor to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Reorganized Debtor, the Wind Down Debtor, or the Plan Administrator (at the expense of the Debtor, Reorganized Debtor, Wind Down Debtor, or Plan Administrator, as applicable) that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of Uniform Commercial Code termination statements, deposit account control agreement terminations, and any other applicable filings or recordings, and the Reorganized Debtor, the Wind Down Debtor, or the Plan Administrator, as applicable, shall be entitled to file Uniform Commercial Code terminations or to make any other such filings or recordings on such Holder's behalf.

### ARTICLE XIV.
### RETENTION OF JURISDICTION

Pursuant to sections 105 and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction, pursuant to 28 U.S.C.  §§ 1334 and 157, over all

matters arising in, arising under, or related to the Chapter 11 Case for, among other things, the following purposes:

(a)     To hear and determine applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the Cure Disputes resulting therefrom;

(b)     To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)     To hear and resolve any disputes arising from or relating to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004, or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(d)     To ensure that distributions under this Plan to Holders of Allowed Claims are accomplished as provided herein;

(e)     To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim;

(f)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(g)     To issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)     To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Combined Disclosure Statement and Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     To hear and determine all Fee Claims;

(j)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, the Sale Documents (if any), the New Equity Documents (if any), the Liquidation Trust Agreement, or any agreement, instrument, or other document governing or relating to any of the foregoing; provided that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement or other Definitive Documents that have a jurisdictional, forum selection or dispute resolution clause that refers disputes to a different court and any disputes concerning such documents contained shall be governed in accordance with the provisions of such documents;

(k)     To take any action and issue such orders, including any such action or orders as may be necessary after occurrence of the Effective Date and/or consummation of the Plan, as may be necessary to construe, enforce, implement, execute, and consummate this Plan,

including any release or injunction provisions set forth herein, or to maintain the integrity of this Plan following consummation;

(l)      To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     To hear and determine all disputes involving the existence, nature or scope of the discharge, releases and injunction provisions contained in the Plan;

(n)      To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)      To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)      To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Case, the Confirmation Hearing, the Administrative Bar Date, or the deadline for responding or objecting to a Cure Amount, for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

(q)      To recover all assets or property of the Debtor, assets or property of the Estate, and assets or property of the Liquidation Trust, wherever located; and

(r)      To enter a final decree closing the Chapter 11 Case.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, the provisions of this Article XIV shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XV.
## MISCELLANEOUS PROVISIONS

### 15.1.  *Termination of Professional Persons.*

On the Effective Date, in the event of a New Equity Transaction, the engagement of each Professional Person retained by the Debtor shall be terminated without further order of the Bankruptcy Court or act of the parties; provided, however, such Professional Persons shall be entitled to prosecute their respective Fee Claims and represent their respective constituents with respect to applications for allowance and payment of such Fee Claims, and the Plan Administrator and Liquidation Trust, as applicable, shall be responsible for the reasonable and documented fees, costs and expenses associated with the prosecution of such Fee Claims, which may be paid from the Professional Fee Escrow Account.  Nothing herein shall preclude the Reorganized Debtor or Plan Administrator from engaging a former Professional Person on and after the Effective Date, including in the same capacity as such Professional Person was engaged prior to the Effective Date.

87

**15.2.** *Amendments.*

Subject to the terms and conditions of this Plan, this Plan may be amended, modified, or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court.  In addition, after the Confirmation Date, so long as such action does not adversely affect the treatment of Holders of Allowed Claims and Allowed Interests pursuant to this Plan, the Debtor may make appropriate technical adjustments, remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan, and any Holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.  The Debtor may make technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court; provided, however, that, such technical adjustments and modifications are immaterial or do not adversely affect the treatment of Holders of Claims or Interests under the Plan.

**15.3.** *Revocation or Withdrawal of this Plan.*

The Debtor reserves the right to revoke or withdraw this Plan prior to the Effective Date and to file subsequent chapter 11 plans.  If the Debtor revokes or withdraws this Plan, in accordance with the preceding sentence, prior to the Effective Date, or if confirmation or consummation of the Plan does not occur, then: (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount of any Claim or Interest or Class of Claims or Interests), assumption, assumption and assignment, or rejection of Executory Contracts or leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any other Person or (iii) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtor or any other Person.

**15.4.** *Allocation of Distributions under this Plan Between Principal and Interest.*

To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall for U.S.  federal (and applicable state and local) income tax purposes be allocated first to the principal amount of the Claim and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts (but solely to the extent that such other amount is an allowable portion of such Allowed Claim).

**15.5.** *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make

88

it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 15.6.   *Governing Law.*

Except to the extent that the Bankruptcy Code or other U.S.  federal law is applicable, or to the extent a Plan Document or exhibit or schedule to the Plan provides otherwise, the rights, duties, and obligations arising under this Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof to the extent such principles would result in the application of the laws of any other jurisdiction.

### 15.7.   *Section 1125(e) of the Bankruptcy Code.*

The Debtor has, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtor acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, solicitation and/or purchase of the securities offered and sold under this Plan, and therefore is not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or offer, issuance, sale, or purchase of the securities offered and sold under this Plan.

### 15.8.   *Inconsistency.*

In the event of any inconsistency among the Plan, any exhibit to the Plan, or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.  In the event of a conflict between any provision of this Plan and the Confirmation Order, the Confirmation Order shall govern and control.

### 15.9.   *Time.*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

**15.10.** *Exhibits.*

All exhibits to this Plan (including, without limitation, all documents filed with the Plan Supplement and all exhibits and ancillary agreements thereto) are incorporated and are a part of this Plan as if set forth in full herein; provided, however, the Liquidation Analysis is provided solely for disclosure purposes and does not govern distributions under the Plan.

**15.11.** *Notices.*

All notices, demands, or requests in connection with the Plan shall be in writing (including by facsimile or electronic mail transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile or electronic mail transmission, when received and telephonically confirmed, addressed as follows:

(a)  if to the Debtor:

Shannon Wind, LLC
c/o Accordion
Attn: John Shepherd
1920 McKinney Ave, Suite 950
Dallas, TX, 75201

with copies to:

Bradley Arant Boult Cummings LLP
Jarrod B. Martin
Michael K. Riordan
600 Travis Street, Suite 5600
Houston, TX 77002
Telephone: (713) 576-0300
Facsimile: (713) 547-0301
Email: jbmartin@bradley.com
mriordan@bradley.com

(b)  if to the Plan Administrator:

Shannon Wind, LLC
c/o Accordion
Attn: John Shepherd, Plan Administrator
1920 McKinney Ave, Suite 950
Dallas, TX, 75201

(c)  if to the Prepetition Secured Parties:

Willkie Farr & Gallagher LLP
Jennifer Hardy
600 Travis Street, Suite 2100
Houston, TX 77002
Email: jhardy2@willkie.com

90

### 15.12.  *Filing of Additional Documents.*

On or before substantial consummation of the Plan, the Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 15.13.  *Reservation of Rights.*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtor with respect to this Plan shall be or shall be deemed to be, an admission or waiver of any rights of the Debtor with respect to any Claims or Interests prior to the Effective Date.

### 15.14.  *Tax Matters.*

The Plan Administrator shall be authorized to request an expedited determination under section 505(b) of the Bankruptcy Code for (i) all tax returns filed for, or on behalf of, the Debtor for any and all taxable periods ending after the Petition Date through, and including, the Effective Date, (ii) all tax returns filed for, or on behalf of, the Wind Down Debtor, if applicable, through the dissolution of the Wind Down Debtor, and (iii) all tax returns filed for, or on behalf of, the Liquidation Trust, through the dissolution of the Liquidation Trust.

In the event of a Sale Transaction, from and after the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for the Debtor reflecting all tax consequences relating to the activities of the Debtor, or the Wind Down Debtor as attributable to and for the account of the Debtor.

In the event of a New Equity Transaction, the Reorganized Debtor shall complete and file all final or otherwise required federal, state, and local tax returns for the Debtor reflecting all tax consequences relating to the activities of the Debtor as attributable to and for the account of the Debtor, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of the Reorganized Debtor for any tax incurred during the administration of the Debtor's Chapter 11 Case, as determined under applicable tax laws.

[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]

Respectfully submitted,

Dated: April 27, 2026                    **SHANNON WIND, LLC**


*/s/ John Shepherd*
Name: John Shepherd
Title:   Chief Restructuring Officer

**Exhibit B**
**Notice of Effective Date**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| SHANNON WIND, LLC, | Case No. 26-90124 (ARP) |
| Debtor.[1] | |

**NOTICE OF (I) ENTRY OF ORDER APPROVING THE DEBTOR'S AMENDED
COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN ON
A FINAL BASIS AND CONFIRMING THE PLAN AND
(II) OCCURRENCE OF THE EFFECTIVE DATE**

On [●], 2026, the Honorable Alfredo R. Perez, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") entered the *Order Approving the Debtor's Amended Combined Disclosure Statement and Chapter 11 Plan on a Final Basis and Confirming the Plan* [Docket No. [●]] (the "**Confirmation Order**") (i) approving, on a final basis, the disclosure statement (the "**Disclosure Statement**") contained in the *Amended Combined Disclosure Statement and Chapter 11 Plan* [Docket No. 141] (as the same may be altered, amended, or modified from time to time "**Combined Disclosure Statement and Plan**") and (ii) confirming the Plan.[2]

The Effective Date of the Plan occurred on [●], 2026.

The Holder of an Administrative Expense Claim, other than (i) Professional Fee Claims; or (ii) U.S. Trustee Fees that accrued on or before the Effective Date must file with the Bankruptcy Court and serve on the Plan Administrator proof of such Administrative Expense Claim no later than thirty (30) days after the Effective Date. Such proof of Administrative Expense Claim must include at a minimum: (1) the name of the Holder of the Administrative Expense Claim; (2) the asserted amount of the Administrative Expense Claim; (3) the basis of the Administrative Expense Claim; and (4) supporting documentation for the Administrative Expense Claim. Objections to any Administrative Expense Claim may be filed as set forth in the Plan. **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED AND**

---

[1] The last four digits of the Debtor's federal tax identification number are 3562. For the purpose of this chapter 11 case, the Debtor's address is 1920 McKinney Ave, Suite 950, Dallas, TX, 75201. Additional information regarding the Debtor's case can be found on the website of the Debtor's claims and noticing agent at https://www.veritaglobal.net/shannon.

[2] Unless otherwise defined, all capitalized terms shall have the meanings provided in the Confirmation Order or Combined Disclosure Statement and Plan, as applicable.

**DISALLOWED. IF FOR ANY REASON ANY SUCH ADMINISTRATIVE EXPENSE CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.**

Any Professional Person seeking allowance of a Professional Fee Claim shall file with the Bankruptcy Court its final application for allowance of compensation for services rendered and reimbursement of expenses incurred on and prior to the Effective Date and in connection with the preparation and prosecution of such final application no later than forty-five (45) calendar days after the Effective Date or such other date as established by the Bankruptcy Court. Objections to Professional Fee Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim.

Copies of the Combined Disclosure Statement and Plan and the Confirmation Order may be obtained free of charge by visiting the website maintained by Verita Global, LLC at https://www.veritaglobal.net/shannon. Parties may also obtain any documents filed in the Chapter 11 Cases for a fee via PACER at https://www.pacer.gov/. Please note that a PACER password and login are required to access documents via PACER.

The Plan and the provisions thereof are binding on the Debtor, the Wind Down Debtor, any holder of a Claim against, or Interest in, the Debtor and such holder's respective successors and assigns, whether or not such Claim or Interest is impaired under the Plan and whether or not such holder voted to accept or reject the Plan.

The Plan and the Confirmation Order contain other provisions that may affect your rights. You are encouraged to review the Plan and the Confirmation Order in their entirety.

Houston, Texas
Dated:

**BRADLEY ARANT BOULT CUMMINGS LLP**
Jarrod B. Martin (TX Bar No. 24070221)
Michael K. Riordan (TX Bar No. 24070502)
600 Travis Street, Suite 5600
Houston, Texas 77002
Telephone:  (713) 576-0300
Facsimile:  (713) 547-0301
Email:       jbmartin@bradley.com
              mriordan@bradley.com

-and-

James B. Bailey (TX Bar No. 24108289)
1819 Fifth Avenue N
Birmingham, Alabama 35203
Telephone: (205) 521-8000

2

Facsimile:   (205) 488-6913
Email:       jbailey@bradley.com

-and-

Alexandra E. Dugan (admitted *pro hac vice*)
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
Telephone:  (615) 252-4638
Facsimile:   (615) 252-6380
Email:       adugan@bradley.com

*Counsel to Shannon Wind, LLC as Debtor
and Debtor in Possession*

3